UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 23-10001-ADB |
| v. ) | |
| ) | |
| PATRICK BAXTER ) | |
| ) | |
| Defendant. ) | |

**THE UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this response in opposition to Defendant Patrick Baxter's Motion to Suppress Evidence. DE Nos. 45 and 46. Defendant argues that the affidavit in support of a search warrant to search his home lacked probable cause. Defendant's primary argument is that images of a prepubescent girls inserting objects into their vaginas (fingers, toothbrush, and an unknown object) is neither masturbation nor lascivious. That argument and the others advance by Defendant fail. For the reasons stated herein, the Defendant's motion should be denied without a hearing.

**STATEMENT OF FACTS**

On or about October 29, 2021, Federal Bureau of Investigation ("FBI") Special Agent Bryce Montoya submitted an affidavit in support of a search of the Defendant's residence located in Melrose, Massachusetts.[1] Magistrate Judge Judith G. Dein reviewed Special Agent Montoya's affidavit submitted in support of the application and found probable cause to believe that contraband, evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 2252A (possession and distribution of child pornography) would be found at the

---

[1] Citations to the search warrant affidavit will be referred to as: "SW Aff. ¶ __ ." The United States ordinarily would attach the Affidavit in support of the search warrant as an Attachment. In this case, the Court has allowed Defendant to file the Affidavit under seal. As a result, the United States will not include a copy of the Affidavit, but rely on the sealed Affidavit filed by Defendant.

Defendant's residence. Magistrate Judge Dein signed the search warrant on October 29, 2021, and the search warrant was executed by law enforcement on November 2, 2021.

In the affidavit in support of the search warrant, Special Agent Montoya provided a summary of his background and experience, including that he is presently assigned to the FBI Boston Child Exploitation and Human Trafficking Task Force, and that he has conducted numerous investigations into the production, attempted production, distribution, and possession of child pornography, to include executing federal search warrants and criminal complaints. SW Aff. ¶ 1 (Exhibit 1). Special Agent Montoya specified that that affidavit was being submitted for the limited purpose of securing a search warrant for the Melrose dwelling referred to in the affidavit as the "SUBJECT PREMISES," "including the contents of electronic storage devices located therein, for contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252A (possession and receipt of child pornography)." *Id*. at ¶ 2.

In the next section of the affidavit, Special Agent Montoya explains that Freenet is an "Internet-based peer-to-peer (P2P) network that allows users to anonymously share files, chat on message boards, and access websites within the network," and that "[l]aw enforcement agents have been investigating child pornography trafficking by Freenet users since at least 2011." *Id.* at ¶ 4.

Special Agent Montoya explained that "[a]nyone running the Freenet software may join and access the Freenet network. Each computer running Freenet connects directly to other computers running Freenet, which are called its 'peers.'[2] When installing Freenet, each user agrees to provide to the network a portion of the storage space on the user's computer hard drive, so that files uploaded by Freenet users can be distributed and stored across the network. Freenet users can upload files into the Freenet network and download files from the Freenet network." *Id.* at ¶ 6.

---

2 The number of peers is determined by the user's settings and is based on the quality and speed of the user's Internet connection.

When a user uploads a file into Freenet, the software breaks the file into pieces (called 'blocks') and encrypts each piece. The encrypted pieces of the file are then distributed randomly and stored throughout the Freenet network of peers.[3] The software also creates an index piece that contains a list of all of the pieces of the file and a unique key – a series of letters, numbers and special characters – that is used to download the file.[4]" *Id.* at ¶ 7.

The affidavit continues: "In order to download a file on Freenet, a user must have the key for the file. There are a number of ways that a Freenet user can download a file using a key. *Id.* at ¶ 8. When a user attempts to download a file via Freenet, Freenet downloads the piece of the file containing the index, which provides the information required to retrieve the individual pieces of the file. The Freenet software then requests all of the pieces of the file from the user's peers. Rather than request all of the file pieces from a single peer, requests for file pieces are divided up in roughly equal amounts among the user's peers. If a user's peer does not have the particular requested pieces in its storage, that peer will then divide up and ask its peers for the pieces, and so on." *Id.* at ¶ 9.

The affidavit continues: "[A Freenet] user who wishes to locate and download child pornography from Freenet must identify the key associated with a particular child pornography file and then use that key to download the file. *Id.* at ¶ 14. Freenet users can identify those keys in a number of ways. For example, 'message boards' exist on Freenet that allow users to post textual messages and engage in online discussions involving the sexual exploitation of minors. Law enforcement agents have observed message boards labeled: 'pthc,' 'boy porn,' 'hussy,' 'pedomom,' 'kidfetish,' 'toddler_cp,' 'hurtcore,' and 'tor-childporn.' Typical posts to those

---

3 Because the pieces of files are encrypted, a Freenet user is unable to access the content of pieces that are stored on the user's computer hard drive, which are not in a readable format.
4 An example key is: CHK@0R6h6o8a~JbOGg8GmxGauRyqJPSwcHGmxGauLznw8Fey B0go,08agxRpNx~wc~rmZRfWQaSed3HTeKKkXAwvDRF2LUaU,AAMC--8/lolitaz49.avi.

3

message boards contain text, keys of child pornography files that can be downloaded through Freenet, and in some cases descriptions of the image or video file associated with those keys." *Id.* at ¶ 15.

Special Agent Montoya added: "A modified version of the Freenet software is available to sworn law enforcement officers to assist in conducting Freenet investigations… [t]his law enforcement version is nearly identical to Freenet, except that it allows a computer operated by a law enforcement officer to automatically log information about requests for pieces of files received directly from its peers. The types of information logged by a law enforcement computer are available to all standard Freenet users as part of Freenet's normal operation. This information includes but is not limited to: the IP addresses of the user's peers; the number of peers those peers report to have; a unique identifier assigned by the software (referred to as the computer's Freenet 'location'); the remaining number of times a request for a piece of a file may be forwarded; the date/time of requests received from a peer; and the digital hash value of a requested piece." *Id.* at ¶ 17.

"Law enforcement officers collect keys associated with suspected child pornography files that are being publicly shared and advertised on Freenet. Law enforcement only investigates Freenet users who request pieces of files associated with such keys collected by law enforcement. The keys collected by law enforcement have been obtained via publicly accessible sites, such as Freenet message boards and Freesites, as well as during the course of prior investigations into child pornography trafficking on Freenet. This investigation pertains to child pornography files with known keys, the content of which are further described below. Those files are referenced as 'files of interest.'" *Id.* at ¶ 19.

As explained in Special Agent Montoya's affidavit, law enforcement focused on

Defendant's residence only after the IP address from that residence downloaded a known image of child pornography from fellow Freenet users.

Special Agent Montoya's affidavit informed Judge Dein that he had "reviewed information obtained and logged by law enforcement Freenet computers related to IP address 100.0.180.154. Such information shows that a Freenet user with IP address 100.0.180.154 requested pieces of the child pornography files described below from a law enforcement Freenet computer." *Id.* at ¶ 23.

The Affidavit then provided a detailed description of the three videos downloaded on Freenet by a Freenet user with IP address 100.0.180.154.

On June 4, 2021, IP address 100.0.180.154 downloaded a video approximately 27 minutes and four seconds in length from Freenet described in the affidavit as:

> a prepubescent female child who appears to be approximately 8-10 years old can be seen in various stages of undress. The child at times in the video has a social media filter on, which portrays the child as having cartoon ears and whiskers. The child's genitals and anus are visible at various times in the video. The child can be seen inserting an unknown object into her vagina at one point of the video and can be seen manipulating her genitals and anus with her hand for the camera.

*Id.* at ¶ 24.

On June 4, 2021, the same IP address downloaded a video approximately 9 minutes and 55 seconds in length from Freenet described in the affidavit as:

> a prepubescent female child who appears to be approximately 8-10 years old can be seen in various stages of undress. The child at times in the video has a social media filter on, which portrays the child as having cartoon ears and whiskers. Multiple times throughout the video the child's genitals and anus are visible. The child can be seen digitally penetrating her vagina and anus, as well as penetrating her vagina with a toothbrush.

*Id.* at ¶ 25.

On July 2, 2021, the same IP address once again downloaded a video approximately ten

minutes and 45 seconds in length from Freenet described in the affidavit as:

> a pubescent female child who, based on slight breast development and hair present in her genital area appears to be approximately 12-15 years old can be seen in various stages of undress. At times in video, the child can be seen penetrating her vagina and anus with her fingers.

*Id.* at ¶ 26.

In addition to providing Magistrate Judge Dein with a detailed description of the three downloaded videos, Special Agent Montoya notified Magistrate Judge Dein that the videos were available for her viewing, including the following footnote in his affidavit:

> I am aware that the "preferred practice" in the First Circuit is that a magistrate judge view images that agents believe constitute child pornography by virtue of their lascivious exhibition of a child's genitals. *United States v. Brunette*, 256 F.3d 14, 17-19 (1st Cir. 2001) (affiant's "legal conclusion parroting the statutory definition […] absent any descriptive support and without an independent review of the images" insufficient basis for determination of probable cause). Here, however, the descriptions offered "convey to the magistrate more than [my] mere opinion that the images constitute child pornography." *United States v. Burdulis*, 753 F.3d 255, 261 (1st Cir. 2014) (distinguishing *Brunette*). The children described herein are approximately 8-15 years old – in all events, younger than eighteen. Furthermore, the descriptions of the files here are sufficiently specific as to the age and appearance of the alleged children as well as the nature of the sexual conduct pictured in each file, such that the Court need not view the files to find that they depict child pornography. *See United States v. Syphers*, 426 F.3d 461, 467 (1st Cir. 2005) ("The best practice for an applicant seeking a warrant based on images of alleged child pornography is for an applicant to append the images <u>*or provide a sufficiently specific description of the images*</u> to enable the magistrate judge to determine independently whether they probably depict real children.") (emphasis added); *see also United States v. LaFortune*, 520 F.3d 50, 56 (1st Cir. 2008) (similarly emphasizing *Syphers* court's use of "or" in describing the *Brunette* "best practice"). Where I have included such nonconclusory, sufficiently specific descriptions, this Court need not view the imagery to find that they depict child pornography. Nonetheless, the described imagery is available for review at the Court's request.

*Id.* at ¶ 24, footnote 6.

The next section of Special Agent Montoya's affidavit explains how the FBI determined that the IP address under investigation was traced to Defendant. Special Agent Montoya writes, in part: "On or about August 11, 2021, an FBI administrative subpoena/summons was served on Verizon for subscriber information relating to the use of the IP address on the … dates and times [the videos described in the affidavit were downloaded]. The subscriber information returned on or about August 23, 2021 included, among other information, the following:

> IP ADDRESS: 100.0.180.154
> Start Time: 2021-01-13 05:45:42Z
> Stop Time: Still connected on date of subpoena
> Account Creation Date: 12/09/16
> Customer Name: Patrick Baxter
> Account Address: 20 [street name removed by the undersigned to ensure privacy], Mel, MA 021760000
> UserID: res1hgt05
> UserName: chmeeee

*Id.* at ¶ 30.

As noted above, the search warrant was executed on November 2, 2021. Various items were seized from the Subject Premises, including a Samsung portable solid-state drive (SSD). Initial attempts to search the contents of the SSD were unsuccessful, as the device was encrypted. The SSD was sent to the FBI in Washington, D.C. for additional efforts to bypass the encryption. On or about October 17, 2022, the FBI in Boston was notified by their FBI counterparts that the SSD had been penetrated and searched. Approximately 427 video files containing child pornography were located on the SSD. On December 7, 2022, Defendant was charged by a criminal complaint authorized by Magistrate Judge Dein with possession and receipt of child pornography, in violation of 18 U.S.C. § 2252A. DE 1.

**DEFENDANT'S MOTION TO SUPPRESS**

On September 4, 2023, Defendant filed the instant Motion to Suppress alleging, among

7

other things, that Special Agent Montoya's affidavit in support of the search warrant of Defendant's residence did not establish probable cause and all items seized during the search must be suppressed, including the SSD, on which numerous images of child pornography were found. Specifically, Defendant alleges that the descriptions of the three videos described in Special Agent Montoya's affidavit were insufficient to provide Magistrate Judge Dein a basis to concluded that the videos portrayed child pornography. DE No. 45. Defendant relies primarily on *United States v. Sheehan*, 70 F.4th 36 (1st Cir. 2023)**,** a recent First Circuit decision excluding evidence obtained during a state search of a defendant's cell phone, and *United States v. Brunette*, 256 F.3d 14 ( 1st Cir. 2001). In *Sheehan*, the First Circuit held that the affidavit supporting a state search warrant did not provide the state magistrate with a sufficient description of the alleged child pornography for the state magistrate to conclude that the images were child pornography. In *Brunette*, the First Circuit found that a description of alleged child pornography was insufficient to provide probable cause for the issuance of a search warrant but did not suppress the images because the officers acted in good faith reliance on the warrant. Defendant's reliance on *Sheehan* and *Brunette* is misplaced. The facts now before this court are distinguishable from *Sheehan* and *Brunette*. The description of videos contained in Special Agent Montoya's affidavit provided Magistrate Judge Dein with sufficient specificity to allow Magistrate Judge Dein to independently conclude that they depicted child pornography.

**ARGUMENT**

    A. **The Search Warrant Affidavit Established Probable Cause**

"Child pornography" is defined under federal law as a "visual depiction of sexually explicit conduct" where "the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8). Federal law considers anyone under age 18 to

be a minor. 18 U.S.C. § 2256(1). "Sexually explicit conduct" includes "graphic sexual intercourse," "bestiality," "masturbation," "sadistic or masochistic abuse," or "graphic or simulated lascivious exhibition of the anus, genitals, or pubic region." 18 U.S.C. § 2256(2)(B).

In determining whether a visual depiction constitutes a "graphic or simulated lascivious exhibition of the anus, genitals, or pubic region," the First Circuit has adopted the factors set out in *United States v. Dost*, 636 F.Supp. 828, 832 (S.D. Cal. 1986). *See United States v. Amirault*, 173 F.3d 28, 31-32 (1st Cir. 1999). Those factors consist of the following:

> 1) Whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., a place or pose generally associated with sexual activity;
>
> 3) whether the child is depicted in an unnatural pose or in inappropriate attire, given the age of the child;
>
> 4) whether the child is fully or partially clothed or nude;
>
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; [and]
>
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

The First Circuit cautions that the *Dost* factors are not the entire universe of factors to be considered when assessing whether a visual depiction constitutes a lascivious exhibition of the anus, genitals, or pubic region. 70 F.4th at 58 n.4. ("[A]lthough we find these factors 'generally relevant' and useful for the guidance they provide, they are 'neither comprehensive nor necessarily applicable in every situation'" (quoting *Amirault*, 173 F.3d at 32)).

9

In situations where a court is presented with visual depictions of "lascivious exhibition of the anus, genitals, or pubic region," the *Dost* analysis must be done (with the understanding that other non-*Dost* factors may be considered) to determine if the visual depictions constitute child pornography. The *Dost* analysis need not be completed in situations where the visual depictions are of "graphic sexual intercourse," "bestiality," "masturbation," or "sadistic or masochistic abuse." Such images under federal law are per se child pornography.

The law in the First Circuit provides *two* avenues for judges to review and assess child pornography images in connection with search warrant affidavits: (1) a detailed, factual description of the images, *or* (2) in-person review of the images by a judge. *See Brunette*, 256 F.3d at 18 ("A judge cannot ordinarily make this determination without either a look at the allegedly pornographic images, or at least an assessment based on a detailed, factual description of them."); *United States v. Syphers*, 426 F.3d 461, 467 (1st Cir. 2005) ("The best practice is for an applicant seeking a warrant based on images of alleged child pornography to append the images *or* provide a sufficiently specific description of the images to enable the magistrate judge to determine independently whether they probably depict real children.") (emphasis added); *United States v. LaFortune*, 520 F.3d 50, 58 (1st Cir. 2008) (holding same as *Syphers*). Here, Special Agent Montoya provided a detailed, factual description of the images of child pornography. The descriptions were sufficient such that Magistrate Judge Dein was able to make a probable cause determination that the image probably depicted child pornography and subsequently issue the search warrant.

Importantly, in *Brunette*, the First Circuit provided that, in the situation where copies of the suspected child pornography images cannot be feasibly obtained and presented to the Court ,"a detailed description, including the focal point and setting of the image, and pose and attire of the

subject, will generally suffice to allow a magistrate judge to make a considered judgment." 256 F.3d at 20.  The descriptions provided by Special Agent Montoya in this case fit perfectly into the requirements set forth in *Brunette*.

Defendant argues that the *Sheehan* and *Brunette* decisions dictate that the evidence found on Defendant's SSD must be suppressed.  A review of *Sheehan* and *Brunette* make clear that not only do *Sheehan* and *Brunette* not support Defendant's argument, but the two decisions support Magistrate Judge Dein's determination that the descriptions of the videos in Special Agent Montoya's affidavit provided her with probable cause to issue the search warrant.

In *Brunette*, the First Circuit found that the description of alleged child pornography was insufficient for the magistrate judge to find probable cause.  The description in Brunette consisted of: "a prepubescent boy lasciviously displaying his genitals." 256 F.3d at 17. The First Circuit found that conclusory description insufficient to sustain probable cause noting: "nor did [the agent's] affidavit contain a description of [the images]; instead, he merely asserted that they met the statutory definition of child pornography… [t]his bare legal assertion, absent any descriptive support and without an independent review of the images, was insufficient to sustain the magistrate judge's determination of probable cause." *Id.* at 16-17.  Although the First Circuit found the description of alleged child pornography insufficient to sustain probable cause, it did not suppress the evidence gained through the search warrant.  The First Circuit found that the agents acted in good faith relying on the warrant and admitted the challenged evidence pursuant to the good faith exception articulated in *Leon*. *Id.* at 20.

In *Sheehan*, the First Circuit found that the description of alleged child pornography in the affidavit was insufficient to provide probable cause.  The *Sheehan* affidavit detailed that a state

11

trooper was searching Sheehan's mobile phone and observed pictures the trooper believed to be child pornography. The affidavit describes the pictures as follows:

"[t]he pictures consisted of images of prepubescent penises that lacked pubic hair."

*United States v. Sheehan*, 70 F.4th 36, 42 (1st Cir. 2023). The First Circuit set out the analysis of the issue in the following manner:

> Child nudity alone does not make an image pornographic. Instead, the images at issue must be 'lewd' (or in the federal context 'lascivious') in nature. In making this determination, the courts consider the following factors: 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; 4) whether the child is fully or partially clothed or nude; 5) whether the visual image suggests sexual coyness or a willingness to engage in sexual activity; [and] 6) whether the visual image is intended or designed to elicit a sexual response in the viewer.

*Id.* at 45-46 (citations omitted).

The First Circuit added: "It follows that the … affidavit's description of the images on Sheehan's phone could only have established probable cause by providing enough detail for the magistrate to determine – in light of those factors – that the images seen by the state trooper were sufficiently 'lewd' such that they were indicative of child pornography." *Id.* at 46. In the judgment of the First Circuit, the affidavit "failed to cross this threshold." *Id.* The First Circuit noted that "[the] cursory description that the state trooper saw 'images of prepubescent penises that lacked pubic hair' did little more than signify that the images contained child nudity. That description offered no detail as to the focus of the images, how the children were positioned in the images, or whether the images were sexually provocative in any other respect." *Id.*

In the case now before the Court, the descriptions of the three videos included in Special Agent Montoya's affidavit, with a combined duration of more than 47 minutes, were far more

descriptive than what was offered to the magistrate judge in *Brunette*, which merely recited that the images met the statutory definition of child pornography, or the "cursory" and inadequate description in the *Sheehan* state affidavit. The sole description of the images in the *Sheehan* case was: "prepubescent penises that lacked pubic hair." *Id.* at 42. According to the First Circuit, the *Sheehan* description was far too broad to conclude that the images constituted child pornography. That is not the case with the detailed descriptions included in Special Agent Montoya's affidavit. The description of the three videos satisfied Magistrate Judge Dein that there was sufficient probable cause for a search warrant. Special Agent Montoya's affidavit did offer Magistrate Judge Dein the opportunity to look at the images, but there was no need for Magistrate Judge Dein to look at the images, as the detailed description of the images in the affidavit was more than sufficient to establish probable cause.

> For example, below is Special Agent Montoya's description of the first video:
>
>> a prepubescent female child who appears to be approximately 8-10 years old can be seen in various stages of undress. The child at times in the video has a social media filter on, which portrays the child as having cartoon ears and whiskers. The child's genitals and anus are visible at various times in the video. The child can be seen inserting an unknown object into her vagina at one point of the video and can be seen manipulating her genitals and anus with her hand for the camera.
>
> SW Aff. ¶ 24-25.

Special Agent Montoya describes the age of the child "8 – 10 years old," and describes in vivid detail that the child is engaging in the sexual act of masturbation: "The child's genitals and anus are visible at various times in the video. The child can be seen inserting an unknown object into her vagina at one point of the video and can be seen manipulating her genitals and anus with her hand for the camera." *Id.* at ¶ 24. Special agent Montoya's description makes clear that the focal point of the image (video) is the child performing the sex act upon herself, as he writes "for the

13

camera." *Id.* This is a far cry from a mere description of a "prepubescent [penis] without pubic hair." *United States v. Sheehan*, 70 F.4th 36, 42 (1st Cir. 2023).

Defendant concedes that if the description of one of the videos describes a child masturbating, probable cause is established. Defendant's Memorandum in Support of His Motion (DE No. 46), pages 7 and 8. Even so, Defendant makes the untenable assertion that Special Agent Montoya's descriptions of the three videos do not describe masturbation. According to Defendant's flawed reasoning, a child "inserting an unknown object into her vagina… and manipulating her genitals and anus with her hand" [description of the first video], a child "digitally penetrating her vagina and anus, as well as penetrating her vagina with a toothbrush" [description of the second video], and a child "seen penetrating her vagina and anus with her fingers" [description of the third video] do not describe masturbation because "there is nothing presented to the magistrate to lead to any conclusion that the alleged minors were engaging in 'erotic stimulation' of their genitals… Indeed, Montoya's description of the materials makes it clear that the alleged children were doing anything remotely close to stimulating themselves." Def. Mot. Suppress 7.

Defendant's contention that the descriptions were inadequate and did not describe masturbation because the children were not described as "stimulating themselves" is absurd. Defendant would have this court adopt a new test for masturbation in child pornography cases This new test would find masturbation only if the child achieves orgasm or experiences sexual ecstasy. This Court should see the three videos for what they are: visual depictions of children masturbating.

Because the three videos described in Special Agent Montoya's affidavit describe masturbation in the clearest terms possible, the videos are child pornography even without a *Dost*

14

analysis. After making the unsupportable argument that the videos do not depict masturbation, Defendant argues neither do they depict lascivious displays of the anus, genitals, or pubic region. Defendant relies on a woefully misconstrued application of the *Dost* factors to support his argument.

Even assuming arguendo that the Court finds that the images do not constitute masturbation, an examination of the three videos under the *Dost* factors leads to the conclusion that they constitute lascivious exhibition of the anus, genitals. and pubic area.  As noted above in the description of the first video, the child masturbated "for the camera," and thus the focal point of the visual depiction is on the child's genitalia or pubic area (*Dost* factor 1); the pose of the children with their vaginas exposed and engaging in masturbation is "generally associated with sexual activity" (*Dost* factor 2); the children are partially clothed with exposed vaginas and anuses, which certainly qualify as unnatural poses and in inappropriate attire, considering the age of the children (*Dost* factors 3 and 4); the described images suggest sexual coyness or a willingness to engage in sexual activity and, in fact, the children are engaging in sexual activity in each of the three videos (*Dost* Factor 5); and the subject matter (prepubescent girls masturbating with their fingers, unknown objects, and a toothbrush) were intended and designed to elicit a sexual response in the viewer (*Dost* factor 6).

Defendant next argues that Special Agent Montoya's descriptions of the videos fail to establish that the individuals in the videos were minors.  The child in the first video was described as "appears to be approximately 8 -- 10 years old." SW Aff. ¶ 24.  The child in the second video is described with the same language. *Id.* at ¶ 25. The age of the child in the third video is described in the following manner: "a pubescent female child who, based on slight breast development and hair present in her genital area appears to be approximately 12-15 years old." *Id.* at ¶ 26. Defendant

claims that Special Agent Montoya failed to include any explanation as to how he derived these age estimates and that without such information Magistrate Judge Dein could not accept the age estimates as accurate.  Defendant fails to mention that Special Agent Montoya described physical attributes of the child in the third video ("slight breast development and hair present in her genital area") to explain his age range for the child.  A police officer need not be a qualified as an expert to opine on the age of a child in an image as the opinion is not plainly "scientific, technical or specialized."  In *United States v. Smith*, the Eleventh Circuit found that an officer's testimony that a photograph was of "very, very young girls" was not plainly "scientific, technical, or . . . specialized" and thus the officer was not required to be qualified as an expert under Rule 702. 459 F.3d 1276, 1297 n.18 (11th Cir. 2006).

Special Agent Montoya, an experienced child pornography investigator, described the girls in the first and second video as approximately 8 to 10 years old.  This is at least 8 years younger than age 18.  Magistrate Judge Dein was entitled to accept that representation.

Defendant's final argument is that the affidavit failed to establish that the Freenet user at IP address 100.0.180.154 knowingly requested or received child pornography.  As the detailed affidavit explained, the Freenet user at the pertinent IP address specifically requested identified child pornography files from other Freenet users.  It is only common sense that someone who is making a specific request knows what she or he is requesting.  Additionally, in the unlikely event that an unsuspecting Freenet user was surprised to receive child pornography, she or he would make certain that future requests for files were crafted in such a way to avoid receiving child pornography.  It is ridiculous for Defendant to suggest that on three separate occasions his request for specific child pornography files resulted in his unknowing receipt of child pornography.

Even assuming *arguendo* that the court determines the three descriptions of the videos in this case were insufficient to provide Magistrate Judge Dein with the probable cause necessary to issue the search warrant, the inquiry does not stop there. As the First Circuit noted in *Sheehan*, even in the absence of adequate descriptions, the totality of the information in an affidavit may provide probable cause. *United States v. Sheehan*, 70 F.4th 36, 47 (1st Cir. 2023). The other facts in the affidavit taken together provided probable cause for Judge Dein to conclude that evidence of possession and receipt would be found in the residence. The affidavit made clear that Freenet was used to trade in child pornography, and that the Freenet user at the particular IP address had on three occasions sought to download identified child pornography images.

### B. The *Leon* "Good Faith" Exception Applies to this Case

Even if this Court finds that the magistrate judge erred in issuing the search warrant, the defendant's motion must be denied. The search was justified by the good-faith exception enunciated in *United States v. Leon*, 468 U.S. 897 (1984), as the agents acted in objectively reasonable reliance on the warrant. Supreme Court precedent dictates that suppression is a remedy of last resort, to be used for the sole purpose of deterring future Fourth Amendment violations, and only when the deterrence benefits of suppression outweigh its heavy costs. *See Davis v. United States*, 564 U.S. 229, 237 (2011); *Herring v. United States*, 555 U.S. 135, 140-141 (2009). "The fact that a Fourth Amendment violation occurred – *i.e.,* that a search or arrest was unreasonable – does not necessarily mean that the exclusionary rule applies." 555 U.S. at 140.(citing *Illinois v. Gates*, 462 U.S. 213, 223 (1983)). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 144.

The good faith exception would apply to this case and the evidence derived from the warrant would be admissible. *See United States v. Raymonda*, 780 F.3d 105 (2nd Cir. 2015) ("[T]he exclusionary rule is designed not to redress minor overstatements or simple negligence by the police, but to deter deliberate, reckless, or otherwise inexcusable violations."); *see also Herring v. United States*, 555 U.S. 135 (2009) ("[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence. The error in this case does not rise to that level.").

Defendant heavily focuses on the First Circuit's suppression of evidence in *Sheehan*, along with the Court's finding that *Leon* did not apply to the circumstances in *Sheehan*. Once again, Defendant's reliance on *Sheehan* is misplaced.

In refusing to apply the *Leon* good faith exception in *Sheehan*, the First Circuit noted: "an officer cannot be said to have relied on a warrant in good faith when the supporting affidavit is 'so lacking in indicia of probable cause to render official belief in its existence entirely unreasonable.'" *United States v. Sheehan*, 70 F.4th 36, 51 (1st Cir. 2023) (citing *United States v. Leon*, 468 U.S. 897, 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975) (Powell, J. concurring in part)). The First Circuit found that the deficiencies in the *Sheehan* affidavit were so pronounced as to make officer reliance on it unreasonable.

The case now before the court is markedly distinguishable from *Sheehan*, which involved a local police officer and a state district court magistrate. The law enforcement officers armed with Judge Dein's approved search warrant had every reason to believe that the warrant was valid and supported by probable cause. The affidavit in support of the warrant was submitted to the court by an FBI agent well trained and experienced in child pornography investigations and related searches. Moreover, the descriptions of child pornography in the affidavit described children

between eight and 15-years-old masturbating with their fingers, unknown items, and a toothbrush. In fact, the description of the three videos in the affidavit did not include the conclusory word "masturbate" but described the action of inserting fingers and other items into children's vaginas. Even if a court determines that the descriptions were improperly vague, a law enforcement officer relying on the search warrant and its supporting affidavit cannot be said to have acted recklessly or unreasonably.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, the undersigned respectfully requests that this Court deny the Defendant's Motion to Suppress without a hearing.

Respectfully submitted,

JOSHUA S. LEVY
ACTING UNITED STATES ATTORNEY

By:   /s/ David G. Tobin
DAVID G. TOBIN
Assistant United States Attorney
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3392
david.tobin@usdoj.gov

**CERTIFICATE OF SERVICE**

  **I HEREBY CERTIFY** that I filed the foregoing document, the United States of America's Response in Opposition to the Defendant's Motion to Suppress with the Court and counsel via CM/ECF.

                /s/ David G. Tobin
                Assistant United States Attorney