UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| | * |
| v. | * |
| | * Criminal Action No. 1:23-cr-10001-ABD |
| PATRICK BAXTER, | * |
| | * |
| Defendant. | * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Currently before the Court is Defendant Patrick Baxter's ("Defendant") motion to suppress items seized from his home pursuant to a search warrant on November 2, 2021. [ECF No. 45]. For the reasons set forth below, the motion to suppress is **DENIED**.

I.  **BACKGROUND**

   A.  **Investigation**

On December 7, 2022, Defendant was charged with possession and receipt of child pornography under 18 U.S.C. § 2252A following a search of his home in Melrose, Massachusetts, which resulted in the seizure of a hard drive that contained 427 video files of purported child pornography, [ECF No. 1 at 1 ("Compl."); ECF No. 1-1 ¶¶ 4, 11].

The warrant to search Defendant's home issued on October 29, 2021, [ECF 1-1 ¶ 4], and was supported by the affidavit of Special Agent Bryce Montoya ("S.A. Montoya"), [ECF No. 1-2 ("Aff." or "Affidavit")]. As of the time of the Affidavit, S.A. Montoya had been a Special Agent with the FBI for more than three years, was assigned to the Violent Crimes Against Children unit

and had "conducted numerous investigations into the production, attempted production, distribution, and possession of child pornography." [Id. ¶ 1].

Evidence supporting the Affidavit was obtained using Freenet which is "an Internet-based peer-to-peer (P2P) network that allows users to anonymously share files, chat on message boards, and access websites within the network.  Law enforcement agents have been investigating child pornography trafficking by Freenet users since at least 2011." [Aff. ¶¶ 4–5, 17].

Freenet users can both upload and download files on the Freenet network.  [Aff. ¶¶ 6–7]. When a user uploads a file, it is "br[oken] [] into pieces (called 'blocks')," which are then encrypted and stored in different places on the Freenet network.  [Id. ¶ 7].  When the file is broken into blocks, the software creates a "unique key – a series of letters, numbers and special characters," that can be used thereafter to retrieve the separated blocks and download the full file.  See [id. ¶¶ 7, 9].

In order to download a file on Freenet, a user must have the unique key.  [Aff. ¶¶ 7–8]. Moreover, when a file is downloaded, although Freenet "attempts to hide the identity of [a file] requestor," investigators can "determine . . . the original requestor of [a] file," [id. ¶ 11]; see also [id. ¶¶ 17–22], and the IP address of each user is observable, [id. ¶ 12].

"Freenet does not provide a search function for its users whereby users would insert search terms to locate files." [Aff. ¶ 14].  Rather, in order to locate and download child pornography from Freenet, a user must know the unique key associated with a particular child pornography file.  [Id.].  The unique keys can be identified on Freenet message boards, websites within Freenet, or directly from other users.  [Id. ¶¶ 15–16].

2

Here, S.A. Montoya determined that a Freenet user with IP address 100.0.180.154 (the "IP Address") requested blocks of child pornography files on Freenet. [Aff. ¶ 23]. Specifically, on June 4, 2021 and July 2, 2021, a computer with that IP Address requested the following three videos from Freenet (the "Files"):

- June 4, 2021: "a video which is approximately 27 minutes and four seconds long. In the video, a prepubescent female child who appears to be approximately 8-10 years old can be seen in various stages of undress.  The child at times in the video has a social media filter on, which portrays the child as having cartoon ears and whiskers.  The child's genitals and anus are visible at various times in the video. The child can be seen inserting an unknown object into her vagina at one point of the video and can be seen manipulating her genitals and anus with her hand for the camera." [Id. ¶ 24].

- June 4, 2021: "a video which is approximately 9 minutes and 55 seconds long.  In the video, a prepubescent female child who appears to be approximately 8-10 years old can be seen in various stages of undress.  The child at times in the video has a social media filter on, which portrays the child as having cartoon ears and whiskers.  Multiple times throughout the video the child's genitals and anus are visible.  The child can be seen digitally penetrating her vagina and anus, as well as penetrating her vagina with a toothbrush." [Id. ¶ 25].

- July 2, 2021: "a video which is approximately 10 minutes and 45 seconds long. In this video, a pubescent female child who, based on slight breast development and hair present in her genital area appears to be approximately 12-15 years old can be seen in various stages of undress.  At times in the video, the child can be seen penetrating her vagina and anus with her fingers." [Id. ¶ 26].

On August 23, 2021, in response to an FBI administrative subpoena/summons served on Verizon, investigators determined that the IP Address was associated with Defendant and his home address. [Aff. ¶ 30].

In applying for a search warrant, S.A. Montoya did not provide the video files to the Magistrate Judge. See [Aff. ¶ 24 n.6]. Rather, the affidavit stated the following:

> I am aware that the "preferred practice" in the First Circuit is that a magistrate judge view images that agents believe constitute child pornography by virtue of their lascivious exhibition of a child's genitals. United States v. Brunette, 256 F.3d 14, 17–19 (1st Cir. 2001) (affiant's "legal conclusion parroting the statutory definition [. . .] absent any descriptive support and without an independent review of the images" insufficient basis for determination of probable cause).  Here, however,

3

> the descriptions offered "convey to the magistrate more than [my] mere opinion that the images constitute child pornography." United States v. Burdulis, 753 F.3d 255, 261 (1st Cir. 2014) (distinguishing Brunette). The children described herein are approximately 8–15 years old – in all events, younger than eighteen. Furthermore, the descriptions of the files here are sufficiently specific as to the age and appearance of the alleged children as well as the nature of the sexual conduct pictured in each file, such that the Court need not view the files to find that they depict child pornography. See United States v. Syphers, 426 F.3d 461, 467 (1st Cir. 2005) ("The best practice for an applicant seeking a warrant based on images of alleged child pornography is for an applicant to append the images *or provide a sufficiently specific description of the images* to enable the magistrate judge to determine independently whether they probably depict real children.") (emphasis added); see also United States v. LaFortune, 520 F.3d 50, 56 (1st Cir. 2008) (similarly emphasizing Syphers court's use of "or" in describing the Brunette "best practice"). Where I have included such nonconclusory, sufficiently specific descriptions, this Court need not view the imagery to find that they depict child pornography. Nonetheless, the described imagery is available for review at the Court's request.

[Id.]. Based on the Affidavit, a warrant issued, Defendant's home was searched, and officers seized the evidence at issue in this motion. [ECF No. 1-1 ¶¶ 4–5].

**B.     Procedural History**

Following the issuance of the criminal complaint in December, 2022, [Compl. at 1], Defendant was indicted on January 5, 2023, [ECF No. 15], on two counts: Count I, possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2); and Count II, receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1).

On September 4, 2023, Defendant moved pursuant to Federal Rule of Criminal Procedure 12 to suppress evidence seized during the search of his home, on the grounds that the search violated the Fourth Amendment to the United States Constitution. [ECF No. 45]. The Government opposed on September 26, 2023. [ECF No. 50].

4

## II.     DISCUSSION

### A.     Legal Standard

The Fourth Amendment protects citizens against unreasonable searches and seizures, and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched . . . ." U.S. Const. amend. IV.

"A finding of probable cause 'demands proof sufficient to support a fair probability that a crime has been committed and that evidence of that crime is likely to be found within the objects to be searched.'" United States v. Sheehan, 70 F.4th 36, 44 (1st Cir. 2023) (quoting United States v. Coombs, 857 F.3d 439, 446 (1st Cir. 2017)). "When assessing whether such a finding is justified," courts in the First Circuit "look to the totality of the circumstances as they are set forth in the warrant application and its accompanying affidavit," id. (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)), "mindful that [t]he probable cause standard is not a high bar," id. (alteration in original) (internal quotation marks and citations omitted). "That standard requires only the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act." Id. (alteration in original) (internal quotation marks and citations omitted).

"Even so, '[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.'" Sheehan, 70 F.4th at 44–45 (quoting Gates, 462 U.S. at 239). "Information supporting probable cause for a warrant is often set forth in an affidavit provided by a law enforcement officer . . . ." United States v. Gifford, 727 F.3d 92, 98 (1st Cir. 2013). "An affidavit supporting a search warrant is presumptively valid," id., and "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts,'" Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "Thus, in

5

reviewing the issuance of a warrant," courts in the First Circuit look to "'ensure that the magistrate had a substantial basis for concluding that probable cause existed.'" Sheehan, 70 F.4th at 45 (quoting United States v. Joubert, 778 F.3d 247, 252 (1st Cir. 2015) (quoting Gates, 462 U.S. at 238–39)).

Even if a warrant is defective for lack of probable cause, however, the Supreme Court has held that suppression is inappropriate where an officer's good faith reliance on a warrant is reasonable. United States v. Leon, 468 U.S. 897, 922 (1984). By good faith, the Supreme Court means where law enforcement acted in "objectively reasonable reliance" on a defective search warrant. Id. The government bears the burden of demonstrating good faith. See United States v. Vigeant, 176 F.3d 565, 571–73 (1st Cir. 1999).

Here, Defendant argues that S.A. Montoya's Affidavit was conclusory and insufficient to demonstrate probable cause, and that the search was not protected by the good faith exception. See generally [ECF No. 45]. The Court considers each issue in turn.

**B.  Probable Cause**

Defendant argues that S.A. Montoya's Affidavit was conclusory and insufficient to demonstrate probable cause because it did not establish that (1) the Files contained child pornography as defined under federal law, [ECF No. 46 at 7–9], (2) the Files depicted minors, [id. at 9–10], or (3) the user at the IP Address knowingly requested materials containing child pornography, [id. at 10–12].

1.  Child Pornography

"Child nudity alone does not make an image pornographic." Sheehan, 70 F.4th at 45. Rather, child pornography is defined as, among other things, a "visual depiction [that] involves the use of a minor engaging in sexually explicit conduct . . . ." 18 U.S.C. § 2256(8). In turn,

6

sexually explicit conduct includes, as relevant here, masturbation and/or the "lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2).

To determine whether a particular image is "lascivious," courts in the First Circuit apply the factors set forth in United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986), which are the following:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> 4) whether the child is fully or partially clothed, or nude;
>
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; [and]
>
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

Sheehan, 70 F.4th at 46 (alteration in original) (internal citations omitted).

Where an affidavit contains facts probative of child pornography, although a magistrate should "[o]rdinarily" conduct "an independent review of the images," it can also make an "assessment based on a reasonably specific description" of the material. See Brunette, 256 F.3d at 19 (finding the magistrate erred by "issu[ing] [a] warrant absent an independent review of the images, *or* at least some assessment based on a reasonably specific description") (emphasis added); see also Sheehan, 70 F.4th at 46 (affidavit must "provide a 'reasonably specific description' from which to assess probable cause" (quoting Brunette, 256 F.3d at 19)); id. at 48 ("The issue [] is whether [the warrant] provided a sufficient basis from which a neutral

magistrate could independently determine if the images that were the object of the search were lewd in nature.").

Regarding a reasonably specific description, in Brunette, the First Circuit found that the description of "a prepubescent boy lasciviously displaying his genitals" was a "bare legal assertion, absent any descriptive support," that was insufficient "without an independent review of the images" to establish probable cause. 256 F.3d at 17. Similarly, in Sheehan, the First Circuit found that "images of prepubescent penises that lacked pubic hair" was a "cursory description that . . . offered no detail as to the focus of the images, how the children were positioned in the images, or whether the images were sexually provocative in any other respect," and thus was not "a 'reasonably specific description' from which to assess probable cause." 70 F.4th at 46 (quoting Brunette, 256 F.3d at 19)).

In contrast, here, the Affidavit provided much more detail, describing that the Files at issue showed respectively, among other things, (1) an "approximately 8-10 year[] old . . . inserting an unknown object into her vagina at one point of the video and . . . manipulating her genitals and anus with her hand *for the camera*," [Aff. ¶ 24 (emphasis added)]; (2) an "approximately 8-10 year[] old . . . digitally penetrating her vagina and anus, as well as penetrating her vagina with a toothbrush," [id. ¶ 25]; and (3) "a pubescent female child who, based on slight breast development and hair present in her genital area appears to be approximately 12-15 years old . . . penetrating her vagina and anus with her fingers," [id. ¶ 26]. The Court finds that these descriptions are much more detailed than those in Sheehan and Brunette, and that they were more than enough for the Magistrate to determine, even without viewing the Files, that they depicted masturbation and/or lascivious conduct in light of the Dost factors.

2. <u>Minors</u>

Defendant next argues that the Affidavit relied "only on the assertion that Montoya believed that the people [depicted in the Files] were a certain age," without articulating the knowledge or "basis Montoya ha[d] for making those assertions." [ECF No. 46 at 9]. The Court disagrees.

S.A. Montoya, who had years of experience investigating child pornography crimes, [Aff. ¶ 1], estimated the age of the individuals in the Files based on his observations of the children depicted. With regards to the two with an estimated age of 8-10 years old, it does not take any special expertise or experience with children to establish probable cause to believe that a child that young is a minor. Although the other female was believed by S.A. Montoya to be slightly older, she too was young enough for him to be able to adequately conclude by observation that she was a minor and this conclusion was supported by specific articulated facts, including that she had "slight breast development and hair present in her genital area." [<u>Id.</u> ¶ 26]. The affidavit therefore provided a reasonable basis for the Magistrate Judge to reasonably believe that the individuals in the Files were under the age of 18, and thus minors. 18 U.S.C. § 2256(1).

3. <u>The IP Address</u>

Finally, Defendant argues that the Affidavit did not establish that the user at the IP Address knowingly requested materials containing child pornography because it did not (1) explain what the unique Freenet keys were, (2) say how investigators knew the requestor believed the key corresponded to a file containing child pornography, or (3) establish that investigators knew that the IP Address made the original request for the Files, and not some other Freenet user. [ECF No. 46 at 11].

In response, the Government argues that the Affidavit explained that the Freenet user at the IP Address requested files known by investigators to contain child pornography, and that it is

9

"ridiculous for Defendant to suggest that on three separate occasions his request for specific child pornography files resulted in his unknowing receipt of child pornography." [ECF No. 50 at 16].

The Court finds that the Affidavit provides a sufficient description of the investigation and Freenet's functionality, see [Aff. ¶¶ 8–23, 27–28], to determine based on "the totality of the circumstances" that there was a "fair probability" that the user at the IP Address was knowingly seeking out and receiving child pornography, see Sheehan, 70 F.4th at 44.  Accordingly, the Court finds that the Affidavit supported a finding of probable cause and that the search did not violate the Fourth Amendment.

### C.     The Good Faith Exception[1]

As explained above, under the good faith exception, even if a warrant is defective for lack of probable cause, suppression is inappropriate where an officer's good faith reliance on a warrant is reasonable.  Leon, 468 U.S. at 922.  That said, there are specifically enumerated circumstances in which the good faith exception does not apply, including when an affidavit supporting a warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  Id. at 923.

Here, Defendant argues that, in light of Sheehan, "agents cannot rely on Leon good faith" because they only "provide[d] a bare-bones affidavit with conclusory language [and] fail[ed] to provide the images to the magistrate to review," [ECF No. 46 at 13–14], making the warrant "so deficient in probable cause [] that no officer could reasonably rely upon it," see [id. (quoting Sheehan, 70 F.4th at 54)].

---

[1] Although the Court finds that the Affidavit was sufficient to support a finding of probable cause, and thus does not need to consider the good faith exception, it does so for completeness.

10

As an initial matter, the Affidavit is dated October 29, 2021, [Aff. at 28], and the search and seizure occurred on November 2, 2021, [ECF No. 1-1 ¶¶ 4–5], both long before the First Circuit's decision in Sheehan on June 8, 2023.  See generally 70 F.4th 36.

In any event, as explained above, unlike Sheehan, the Affidavit here provided sufficient descriptions of the Files to support a finding of probable cause.  See supra.  Moreover, the Affidavit explicitly states that

> the descriptions of the files here are sufficiently specific as to the age and appearance of the alleged children as well as the nature of the sexual conduct pictured in each file, such that the Court need not view the files to find that they depict child pornography. . . .  Where I have included such nonconclusory, sufficiently specific descriptions, this Court need not view the imagery to find that they depict child pornography.  Nonetheless, the described imagery is available for review at the Court's request.

[Aff. ¶ 24 n.6].  Where the Magistrate Judge was offered the opportunity to view the images if they felt they needed more information, [id.], and the warrant provided detailed descriptions of the Files that on their own were sufficient to support probable cause, see supra, officers' reliance on the warrant was in good faith, and suppression is inappropriate, see Leon, 468 U.S. at 922.

### III.  CONCLUSION

For the reasons described above, Defendant's motion to suppress, [ECF No. 45], is DENIED.

**SO ORDERED.**

October 30, 2023                                       /s/ Allison D. Burroughs
                                                       ALLISON D. BURROUGHS
                                                       U.S. DISTRICT JUDGE