UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
                                        )
UNITED STATES OF AMERICA                )
                                        )
v.                                      )        No. 23-CR-10001-ADB
                                        )        Leave to file granted on
PATRICK BAXTER,                         )        January 2, 2025
                 Defendant              )
                                        )
_____ )

## DEFENDANT'S MOTION FOR BAIL PENDING APPEAL

Now comes the defendant Patrick Baxter, by and through undersigned counsel, and

hereby moves, pursuant to 18 U.S.C. § 3143(b)(1) and § 3145(c), for this Honorable Court to

grant his continued release pending appeal in this matter.

## I.       THE BAIL PENDING APPEAL STANDARD

Under 18 U.S.C. § 3143(b)(1)(B), a court considering a defendant's request for release

pending appeal must make two determinations: (1) whether "the appeal raise[s] a substantial

question of law or fact" and (2) whether, "if that substantial question is determined favorably to

defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all

counts on which imprisonment has been imposed." *United States v. Bayko*, 774 F.2d 516, 522

(1st Cir. 1985). **In order to establish the existence of a substantial question, the**

**defendant need not show that he will "probably" win**. *United States v. Schwartz*, 86 F.

Supp. 3d 25, 29-30 (D. Mass. 2015) (emphasis added). **Rather, the statute requires only "a**

**close question or one that very well could be decided the other way."** *Bayko*, 774 F.2d at 522

(citation omitted) (emphasis added). "[L]ikely to result in reversal or an order for a new trial"

1

requires "that the claimed error not be harmless or unprejudicial." *Id.* at 523. The "likely to result" standard is to be applied "flexibly." *United States v. Colon-Munoz*, 292 F.3d 18, 20 (1st Cir. 2002).

## II.     MR. BAXTER DOES NOT POSE ANY FLIGHT OR SAFETY RISK

Mr. Baxter has faithfully complied with his conditions of release without issue for more than two years. Any risk posed by Mr. Baxter's release has been, and could readily continue to be, eliminated by the strict set of conditions in place, including (1) home detention, Dkt. 13 at 2, and (2) a limitation that Mr. Baxter use the internet only on one computer and only for the purpose of "searching for and applying for employment, and for communicating with counsel." Dkt. 34.

## III.    EXCEPTIONAL REASONS EXIST FOR MR. BAXTER'S CONTINUING RELEASE ON CONDITIONS

The defense acknowledges that, because of Mr. Baxter's convictions under 18 U.S.C. §§ 2252A & 2251, it must also demonstrate "exceptional reasons why . . . detention would not be appropriate." 18 U.S.C. § 3145(c); *see also* 18 U.S.C. §§ 3142(f)(1)(A), 3143(b)(2), & 3156(a)(4)(C) (otherwise requiring detention of defendants convicted of a "crime of violence," defined to include "any felony under chapter . . . 110"). This Court enjoys "full exercise of discretion" on that question. *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991). "[A] legal issue may be of such weight that it forms the basis of an exceptional reason against detention if a defendant's claim goes to the very fact that caused him to be subject to" otherwise "mandatory detention." *United States v. Vannoy*, No. 19-1798, 2020 WL 2614628, at *1 (6th Cir. Jan. 9, 2020) (unpublished) (citation omitted); *see also DiSomma*, 951 F.2d at 498 (affirming grant of bail pending appeal where "[t]he element of the crime called into question on

2

appeal [wa]s the element of the bail statute that bars release").  Here, for reasons set forth *infra*, the defense respectfully submits that Mr. Baxter's appeal will raise a number of substantial issues likely to result in reversal or a new trial on the very counts of conviction triggering the "exceptional reasons" requirement.  To the extent more is necessary, the defense respectfully submits that the following facts and circumstances, in combination with the substantial legal issues outlined below, constitute exceptional reasons for continued release: (1) Mr. Baxter's two-plus year record of perfect compliance with his release conditions; (2) his lack of any prior interactions with the criminal justice system whatsoever; (3) his two young children (ages 6 and 8) who will, of course, be profoundly impacted by Mr. Baxter's incarceration; and (4) the lack of evidence that Mr. Baxter distributed child pornography or engaged in any assaultive conduct. *See United States v. Mutte*, 383 F. App'x 716, 717 (10th Cir. 2010) (unpublished) (affirming finding of "exceptional reasons" because, among other things, defendant was "not a flight risk or a danger to any other person or the community," "he had been under constant supervision and fully compliant," and his "criminal act was aberrant in that he had not engaged in any such conduct since the charged" offense).

## IV.   MR. BAXTER'S APPEAL WILL RAISE SUBSTANTIAL ISSUES, WHICH, IF DECIDED IN MR. BAXTER'S FAVOR, WILL LIKELY RESULT IN REVERSAL OR AN ORDER FOR A NEW TRIAL ON ALL COUNTS OF CONVICTION

### A.   Insufficient Evidence to Support Conviction on Count 3

#### i.   Jury may have convicted based on images and/or videos that do not satisfy the legal definition of pornography

Count 3 charged Mr. Baxter with producing child pornography of his minor ▮▮▮▮ on "various dates in or about July 2019."  Dkt. 101 at 3.  At the government's request, the Court instructed the jury that there were multiple "images and videos taken on different dates"

3

underlying this count and that jurors "must be unanimous as to which image or images or video or videos [they found] that the government ha[d] proven beyond a reasonable doubt." Oct. 9, 2024 Tr. 80-81. No party requested a special verdict form, and the Court did not use one.

The law is clear that "child nudity alone does not make an image pornographic." *United States v. Sheehan*, 70 F.4th 36, 45 (1st Cir. 2023) (citing *United States v. Amirault*, 173 F.3d 28, 33 (1st Cir. 1999)). This follows from the bedrock principle that "nudity, without more is [First Amendment] protected expression." *New York v. Ferber*, 458 U.S. 747, 765 n.18 (1982). Accordingly, in order to convict, the jury was required to engage in a fact-intensive inquiry regarding each individual image and video, considering the so-called "*Dost* factors":

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; [and]

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Sheehan*, 70 F.4th at 46; *see also* Oct. 9, 2024 Tr. 79 (Court instructing on these factors).

Here, the images underlying Count 3 fell into three categories, taken on three separate days: (1) two videos depicting Mr. Baxter's ███ playing with her ███; (2) 16 photographs taken in a bedroom; and (3) two photographs in a bathroom. The defense respectfully submits

4

that analysis of these three categories under the *Dost* factors is materially different and that no reasonable jury could have found the two videos or the two photographs in a bathroom to be pornographic.

First, with respect to the videos, Mr. Baxter's ███ genital area was not the "focal point." *See Amirault*, 173 F.3d at 33 (finding image not to be lascivious for purposes of sentencing enhancement where, "[a]lthough the girl's pubic area is on clear display, there is no close-up view of the groin, and the genitals are not featured in the center of the composition"); *United States v. Johnson,* No. 10-CR-71, 2011 WL 2446567, at *7 (M.D. Fla. June 15, 2011) ("[W]here the image of the minor's pubic area happens to be captured, as opposed to being the focal point, courts hold that there is not sufficient evidence of the first *Dost* factor."). Second, the setting was not "sexually suggestive." While an image in a bedroom may, in other contexts, qualify as suggestive, the defense submits that is not the case where, as here, there are multiple other children playing together in a natural manner. *Cf. Johnson*, 2011 WL 2446567, at *8 (finding "bathroom and shower setting" to be "not sexually suggestive" where recording did "not focus on the minor's genitals or pubic area, and she was acting naturally when disrobing, showering and covering herself upon exiting the shower"). Third, Mr. Baxter's ███ is playing and not in any unnatural pose. Fourth, Mr. Baxter's ███ is nude in the video, but as noted previously, that in itself is not sufficient. Fifth, there is nothing in the videos suggesting "sexual coyness or a willingness to engage in sexual activity."

In applying the sixth *Dost* factor, the First Circuit has instructed "that it is a mistake to look at the actual effect of the photograph on the viewer, rather than upon the intended effect." *Amirault*, 173 F.3d at 34. Indeed, "[i]f [a defendant's] subjective reaction were relevant, a sexual

5

deviant's quirks could turn a Sears catalog into pornography." *Id.*; *see also United States v. Villard*, 885 F.2d 117, 125 (3d Cir. 1989) ("If we were to conclude that the photographs were lascivious merely because [the defendant] found them sexually arousing, we would be engaging in conclusory bootstrapping rather than the task at hand—a legal analysis of the sufficiency of the evidence of lasciviousness."). Accordingly, "in determining whether there is an intent to elicit a sexual response, the focus should be on the objective criteria of the photograph's design." *Amirault*, 173 F.3d at 34-35. "[T]he sixth *Dost* factor," thus, "rather than being a separate substantive inquiry about the photographs, is useful as another way of inquiring into whether any of the other five *Dost* factors are met." *Id.* at 35 (quoting *Villard*, 885 F.2d at 125). Here, in sum, the videos depict a nude child playing on a bed. That, without more, was not sufficient evidence to support a guilty verdict predicated upon the videos.

As the Court acknowledged in denying Mr. Baxter's post-trial Rule 29 motion, the two bathroom photographs also "arguably pose a closer call" than those taken in the bedroom. Dkt. 143 at 9 n.3. Although Mr. Baxter's ████ "is nude in the[ bathroom] photographs, her genitals are not central to the images." *Id.* Additionally, the child's father appears to be visible in one of the photographs. *See* Oct. 8, 2024 Tr. 165-66. While the Court still concluded that the jury could have reasonably found the bathroom photographs to be pornographic, it did so citing an unpublished out-of-circuit opinion relying upon the defendant's "lascivious intent." Dkt. 143 at 9 n.3 (citing *United States v. Vallier*, 711 F. App'x 786, 788 (6th Cir. 2018) (unpublished)). The defense respectfully submits that, focusing "on the objective criteria of the photograph's design" as required by First Circuit law, *Amirault*, 173 F.3d at 35, the bathroom photographs were not sufficient to support conviction.

To be sure, as the Court noted in denying Mr. Baxter's post-trial Rule 29 motion, the analysis of the bedroom photographs is materially different.  *See* Dkt. 143 at 9.  But, at trial, Mr. Baxter disputed that he took those photographs.  *See* Oct. 9, 2024 Tr. 28-29, 37.  Mr. Baxter, by contrast, admitted having taken a video of his ██████, testifying that, while he did not specifically recall, his "best guess" was that he "walked into the room" while the children "were all jumping around on the bed and it was kind of fun and [he] was going to take a video.  And [Mr. Baxter] did not realize that they, at that point, had taken their clothes off.  So [he] kind of walked into the room to say [he was] going to take a video, then [he] saw that the children weren't clothed, and [he] kind of pulled the camera away and turned it off and then probably just immediately deleted the video."  *Id.* at 37-38.  In these circumstances, there is a significant risk that the jury convicted Mr. Baxter for the legally insufficient videos that he admitted taking, rather than the photographs which he denied having taken.

The defense respectfully submits that, because neither the videos nor the bathroom photographs were sufficient to support conviction, and because "it is impossible to tell which ground the jury selected," the Count 3 conviction must be vacated.  *Yates v. United States*, 354 U.S. 298, 312 (1957).  The Supreme Court subsequently narrowed *Yates*, holding that it did not apply where there was factually insufficient evidence to connect the defendant to one of two charged conspiratorial objects.  *See Griffin v. United States*, 502 U.S. 46, 47-48 (1991).  But *Yates* continues to apply where one of several predicates for conviction "is protected by the Constitution . . . or fails to come within the statutory definition of the crime."  *Id.* at 59.  This is because "[j]urors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law."  *Id.*  Here, the defense respectfully submits that

the non-pornographic videos and bathroom photographs were protected by the First Amendment.
*See, e.g.*, *United States v. Brunette*, 256 F.3d 14, 17 n.1 (1st Cir. 2001) ("[T]he determination of
whether an image depicts child pornography is a quintessential First Amendment ruling . . . ."
(citation omitted)).  And, because the images were not lascivious, they were beyond the statutory
definition of the offense for which Mr. Baxter was convicted.  Moreover, it is impossible to tell
whether the jury relied upon the non-pornographic images in returning its guilty verdict.  The
risk that the jury relied upon such an invalid basis is enhanced by the fact that Mr. Baxter
admitted he took the videos, while disputing whether he took the photographs.  *See supra* page 7.
Accordingly, Mr. Baxter's conviction on Count 3 must be vacated.  *See United States v. Ellyson*,
326 F.3d 522, 531 (4th Cir. 2003) (vacating conviction where court could not determine whether
guilty verdict was based upon images of actual minors, as opposed to those which may have
been mere "virtual creations").  At the very least, the application of *Yates* to this issue constitutes
a close question that, if decided in Mr. Baxter's favor, would require a new trial.

ii.    **As-applied constitutional challenge under the Commerce Clause**

"[A] Rule 29 motion raising a general challenge to the adequacy of the evidence
preserves for de novo review the full range of challenges, whether stated or unstated."  *United
States v. Facteau*, 89 F.4th 1, 39 n.26 (1st Cir. 2023).  This necessarily includes an as-applied
constitutional challenge, which is based on the sufficiency of the evidence presented at trial.  *See
United States v. Seekins*, No. 21-10556, 2022 WL 3644185, at *2 (5th Cir. Aug. 24, 2022)
(unpublished) (referring to "as-applied constitutional challenge" and "sufficiency-of-the-
evidence argument" as "functionally identical"); *United States v. Hill*, 700 F. App'x 235, 237
(4th Cir. 2017) (unpublished) ("The interstate commerce element of [18 U.S.C.] § 844(i) requires

proof of a fact, and, in the ordinary course, it is subject to our review of the Government's evidence in accordance with a motion for a judgment of acquittal . . . ." (citation omitted)); *United States v. Morales-de Jesus*, 372 F.3d 6, 8 (1st Cir. 2004) (reviewing constitutional issue *de novo* where defendant "moved for a judgment of acquittal").

The First Circuit has recognized the potential viability of an as-applied challenge to 18 U.S.C. § 2251(a) on the grounds that "the conduct at issue, although covered by the language of the statute, was not within the sphere of activity identified by Congress as the basis for its exercise of power under the Commerce Clause." *Morales-de Jesus*, 372 F.3d at 18. "[T]he legislative history of the child pornography statutes reveals that Congress exercised its Commerce Clause power because of its concern about the extensive child exploitation industry: 'child exploitation has become a multi-million dollar industry, infiltrated and operated by elements of organized crime, and by a nationwide network of individuals openly advertising their desire to exploit children.'" *Id.* (citation omitted). Factors pertinent to such an as-applied challenge "could include the age of the minor, the relationship between the defendant and the minor, the nature of the allegedly sexually explicit conduct, and the nature of the visual depiction of that conduct." *Id.*

The defense respectfully submits that if there could ever be a successful as-applied challenge to § 2251(a), this is the case. Mr. Baxter and the victim ███████████████████ █████████████████████████████, and all of the conduct occurred during a family visit spanning several days. All of the photographs and videos were taken in Mr. Baxter's family home, and stored on a Samsung drive maintained at that location that at the time of the seizure was not even connected to the internet. The images included nude depictions of Mr. Baxter's

minor ██, some while at play with her ██ and others while she was getting ready for a

bath.  The minor was not posing nor aware of any salacious intent (if such intent existed), was

not paid, and suffered no injury other than through the existence of an image on an external drive

in her ██████ home.  There is no evidence that Mr. Baxter distributed or intended to

distribute the images in any fashion.  Simply put, this is not what Congress had in mind when it

created an offense targeting participants in the child exploitation "industry" and carrying a

mandatory minimum 15-year sentence.  The mere allegation that the images were "produced

using materials that moved in interstate commerce . . . may not meet the substantial effect

requirement" under the Commerce Clause.  *Id.* at 13.[1]

### B.    Inadmissible Testimony by Investigators

Because Mr. Baxter did not object to the below evidence at trial, the First Circuit will

review this claim under the plain error standard.  In order to establish plain error, the defense

must establish that "(1) an error occurred (2) which was clear or obvious and which not only (3)

affected [] substantial rights, but also (4) seriously impaired the fairness, integrity, or public

reputation of judicial proceedings."  *United States v. Vazquez-Rivera*, 665 F.3d 351, 357 (1st Cir.

2011) (citation omitted).

---

[1] The defense acknowledges that the First Circuit has, in *dicta*, suggested that the possibility of a
successful as-applied challenge under *Morales-de Jesus* "may be an increasingly narrow
one."  *Ortiz-Graulau v. United States*, 756 F.3d 12, 22 n.7 (1st Cir. 2014).  But the First Circuit
has never foreclosed the viability of such a challenge.  *Ortiz-Graulau* involved "repeated vaginal
and oral intercourse" with the minor victim and is therefore readily distinguishable from the
present case on its facts.  *Id.* at 22.

10

### i.   Testimony reflecting investigators' collective knowledge

The law is clear that government investigators may not testify based "on the overall investigation rather than [their] personal observations." *Id.* at 358 (citing Fed. R. Evid. 602, 701(a)). "While such a composite perspective is permissible in other non-trial contexts, those circumstances are not delimited by the trial-applicable Rule 701 requirement that lay opinion be based on personal perceptions." *Id.* at 359 (internal footnote omitted). The First Circuit has warned, in the related context of so-called "overview" testimony, that testimony based on collective knowledge "improperly exposes the jury to conclusory statements that are not based on the witness' personal knowledge, and which are unreliable because they often consist of inadmissible hearsay evidence derived from other government agents who participated in the investigation, but who were never brought to testify at trial." *United States v. Diaz-Arias*, 717 F.3d 1, 13 (1st Cir. 2013).

FBI Agent Bryce Montoya, the government's first trial witness, testified that he "received a lead from an FBI headquarters unit" stating "that a specific IP address" associated with Mr. Baxter's residence "was attempting to download child pornography." Oct. 8, 2024 Tr. 18-19. The government inaccurately responded, "[y]ou said the lead identified attempts to download child pornography from Freenet" (Montoya had not mentioned Freenet), and asked what Freenet was. *Id.* at 19. Montoya proceeded to testify, among other things, that, "specifically to obtain child pornography files, [Freenet] users have to identify a key for that file." *Id.* Montoya did not testify to having previously used Freenet, and he did not provide (nor was he asked to provide) any description of the basis for his knowledge regarding how child pornography was downloaded from Freenet. On cross-examination, Montoya testified that he had "observed

11

Freenet in [his] training," but acknowledged that he had no personal knowledge of the purported attempted downloads associated with Mr. Baxter's IP address.  *Id.* at 59.[2]

Montoya's statement that unidentified colleagues at the FBI had concluded that Mr. Baxter's IP address was attempting to download child pornography impermissibly relied "on the collective insight of other unknown investigators who" do not appear to have been "present at trial," in clear contravention of First Circuit precedent.  *Vazquez-Rivera*, 665 F.3d at 359. "[B]ecause the determination of whether" Mr. Baxter downloaded child pornography "could have been properly reached only by considering evidence available to the jury, Agent [Montoya's] testimony" that his non-testifying colleagues had reached that conclusion based on evidence not presented at trial "usurped the jury's role instead of being helpful to it."  *Id.* at 361.

Montoya was, to be sure, personally involved in the investigation giving rise to this prosecution.  But, notwithstanding the fact that he could testify properly to matters within his personal knowledge, his testimony on the foregoing points "clearly relied . . . on the overall investigation and the conclusions reached by other agents."  *Id.*  "It was the prosecution's burden" at trial "to lay a foundation that established the basis of Agent [Montoya's] knowledge or opinion in connection with all of h[is] testimony."  *Id.* (vacating convictions on plain error review).  Its failure to do so was clear and obvious error.

The government returned to this same topic in its cross-examination of Mr. Baxter, asking whether he was aware that the FBI "observed that someone in [Mr. Baxter's] home on three separate occasions had logged in or appeared to have logged into Freenet."  Oct. 9, 2024

---

[2] The government's technical expert, Officer Yu Kajita, testified that he had never used Freenet. *See* Oct. 8, 2024 Tr. 132-33.

Tr. 45-46.  The prosecutor further opined that the "dates were quite varied," namely, June 4, July 2, and August 10, 2021.  *Id.* at 46.  Neither Montoya nor any other witness had testified to a specific number of times that the FBI had observed someone at the address logging into Freenet, much less provided the specific dates.  Mr. Baxter, self-evidently, had no personal knowledge (as opposed to knowledge of the allegations against him through his participation in the criminal case) as to any observations made by the FBI.  The prosecutor nonetheless continued to press the point, asking Mr. Baxter whether he was aware that an individual in his home on those dates "was attempting to download specific known child pornography," and that "some of that specific known child pornography that was attempting to be downloaded in your house on those dates was found in the collection of child pornography on the" Samsung drive.  *Id.* at 46-47.  This line of questioning, presenting the defendant with hearsay allegations from non-testifying agents without any basis in the trial evidence, was improper.

The third and fourth prongs of the plain error standard require "a reasonable probability that, but for the error, the outcome of the proceeding would have been different."  *United States v. Canty*, 37 F.4th 775, 790 (1st Cir. 2022) (citation omitted).  That requirement is satisfied here. The government's case against Mr. Baxter was a circumstantial one.  There was child pornography located on a shared drive in the family home.  *See* Oct. 8, 2024 Tr. 62 (Montoya testifying that drive was found "on a coffee table" in the living room).  While there was evidence that Mr. Baxter used the drive, there was no direct evidence that he was responsible for downloading child pornography onto it.  *See* Oct. 9, 2024 Tr. 99 (defense counsel arguing in closing, "all of this evidence against Mr. Baxter is essentially circumstantial.  There is not a single witness that ever observed Mr. Baxter engaging in the receipt or viewing or possessing of

13

child pornography").  No child pornography was located on the laptop that the government
alleged child pornography had been transferred from.

The potential for prejudice is crystallized by the government's repeated emphasis of the
inadmissible testimony in closing argument.  *See* Oct. 9, 2024 Tr. 85 ("The FBI was able to
monitor Freenet use and determine that the users of a computer at a particular address in
Melrose, Massachusetts – that address being the defendant's house – attempted to download
child pornography from Freenet on more than one occasion.  In fact, I think you know now it
was on three very disparate and different dates that an individual in the defendant's house was on
Freenet attempting to download child pornography.  You also know that some of that child
pornography that was attempted to be downloaded was found on the defendant's password-
protected SSD."); *id.* at 90 ("Task Force Officer Kajita explained to you that the file paths for
those 116 Freenet downloads tells us that the videos had been downloaded from Freenet.  This
was no surprise.  Remember the FBI tip.  Somebody's in the house.  Somebody's accessing
Freenet.  Somebody you know now as the defendant is downloading child pornography from
Freenet.").  The purported observation by non-testifying FBI agents was used to discredit Mr.
Baxter's testimony.  *See id.* at 85 ("The defendant claims he had never heard of Freenet.  He
claims that he was not on Freenet on all those multiple occasions, he was not on Freenet on those
dates that the FBI noticed somebody at that residence.  So who was it?  Well, you know who it
was.  It was the defendant.  Who else could it be?").

The improper testimony was also prejudicial with respect to Count 3, the production
charge predicated upon photographs and videos of Mr. Baxter's ███.  This is because the
government used Mr. Baxter's purported child pornography possession to argue that Mr. Baxter

14

took the images and videos of his ███ with the requisite intent.  *See* Oct. 9, 2024 Tr. 91
(government arguing that Mr. Baxter stored those images "with the rest of his child pornography
collection"); *id.* at 92 ("Again, where does the defendant hide those images?  In the secure SSD
with the rest of his child pornography collection . . . ."); *id.* at 93 ("There was no doubt that the
defendant considered these two videos of [his ███] as sexually arousing.  He stored both videos
on the encrypted SSD with his other child pornography."); *id.* at 111-12 ("[Mr. Baxter's] really
into child porn.  He's really into the sexual exploitation of young children.  And by
happenstance, so is his son?  His son just by happenstance takes pictures of vaginas on two
separate occasions and Daddy finds them?  It would be like hundreds of dollars floating down
from the sky into your pocket.  That didn't happen.  That's not worthy of belief.").

### ii.  Hearsay offered to satisfy jurisdictional element

#### a.  Counts 1 and 2

The Court instructed that the jurisdictional element of Counts 1 and 2, charging
possession and receipt of child pornography, respectively, could "be satisfied by showing that
the device used to store the possessed child pornography was manufactured outside of
Massachusetts."  Oct. 9, 2024 Tr. 80.

In an effort to satisfy its burden on this issue, the government asked Montoya whether he
had "done any research on the place of manufacture of the" Samsung drive on which child
pornography was located and what that research showed.  Oct. 8, 2024 Tr. 30.  Montoya testified
that his "research" (from unspecified sources) "indicated that Samsung SSDs are manufactured
in Korea."  *Id.*

This questioning of Montoya elicited quintessential hearsay, *i.e.*, an out-of-court "assertion" offered "to prove the truth of the matter asserted." Fed. R. Evid. 801. There was no indication that Montoya possessed any personal knowledge regarding where the Samsung drive was manufactured. The government could have, but did not, seek authenticated business records from Samsung to satisfy its burden of proof. *See* Fed. R. Evid. 803(6). Instead, it invited a government agent with no personal knowledge to give a conclusion expressly predicated upon the truth of unspecified out-of-court sources. This was plainly improper. *See, e.g.*, *United States v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000) ("[A]ny evidence procured off the Internet is adequate for almost nothing, even under the most liberal interpretations of the hearsay exception rules." (citation omitted)); *In re Kaiser Gypsum Co., Inc.*, No. 16-CV-31602, 2020 WL 6737641, at *11 (Bankr. W.D.N.C. Nov. 13, 2020) ("[T]o the extent [witness] testified to information obtained through reviewing historical documents or online research, this testimony constitutes hearsay and is excluded.").

There is a reasonable probability that, absent this clear error, the jury would have found the jurisdictional element of Counts 1 and 2 unproven. In arguing this issue to the jury, the government primarily relied upon "sworn testimony that the SSD was made outside of Massachusetts." Oct. 9, 2024 Tr. 95; *see also id.* at 96.[3]

---

[3] Agent Montoya did testify that the MacBook Air laptop seized from the Baxter residence was labeled, "Assembled in China." Oct. 8, 2024 Tr. 29. But, while agents testified that the Samsung drive appeared to have been used to backup the MacBook, no alleged child pornography was located on the MacBook. *See id.* at 79, 101. The government similarly found no evidence that child pornography had been deleted from the MacBook. *See id.* at 134. The Samsung drive from which child pornography was recovered, by contrast, did not list any place of manufacture. *See id.* at 30.

### b. Count 3

Montoya similarly provided unadorned testimony, with no explicit basis, that iPhones are "manufactured outside of Massachusetts." Oct. 8, 2024 Tr. 55. The government relied upon this purported fact in arguing that the interstate commerce requirement was met with respect to Count 3. *See* Oct. 9, 2024 Tr. 97. But the government did not meet its burden to lay a foundation for Montoya's personal knowledge regarding this issue. *See* Fed. R. Evid. 602. This was clear and obvious error. *See United States v. Etienne*, 772 F.3d 907, 920 (1st Cir. 2014) (finding government's elicitation of testimony "without attempting to lay a foundation was a plain and obvious error" notwithstanding government's "speculation as to potential foundational testimony that [the witness] may have offered had he been asked"). The government could have, but did not, seek evidence from Apple on this issue. This clear error impacted Mr. Baxter's substantial rights given the absence of other evidence sufficient to satisfy Count 3's jurisdictional element.

### iii.      Other inadmissible hearsay

Montoya testified to reviewing the search history for the Samsung drive, which the government did not offer into evidence. Montoya told the jury that, in the history, he "observed searches related to Freenet" and "to something called the AliExpress Flying Train Store." Oct. 8, 2024 Tr. 34. The government asked what the AliExpress Flying Train Store was, to which Montoya responded, "[b]ased on my open source research, it appears that the AliExpress Flying Train Store is a marketplace that sells lingerie, to include thongs, in children's sizes." *Id.* at 35. For the same reasons set forth *supra* page 16, this reliance upon the truth of out-of-court "research" from unspecified sources was clear error. Given the highly prejudicial connotations of the testimony, the error impacted Mr. Baxter's substantial rights.

17

Officer Yu Kajita, the government's second trial witness, testified that the password to the Samsung drive was SR20DETT, which he claimed referred to "a four-cylinder turbo charged engine for a specific model to the Nissan." Oct. 8, 2024 Tr. 98. On cross-examination, Kajita admitted that this testimony was based upon the results of "[a] simple Google search." *Id.* at 138. Kajita's conclusion, predicated upon the truth of unspecified Google search results, was inadmissible hearsay. *See Buffington v. Nestle Healthcare Nutrition Inc*, No. 18-CV-00106, 2019 WL 6646703, at *1 (C.D. Cal. Sept. 24, 2019) ("Any reliance of Google searches to support such causal opinions would amount to inadmissible hearsay."); *JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 332 (D. Md. 2017) ("Plaintiffs rightfully contest the reliability of the proffered [Google-search evidence] as being unauthenticated hearsay."); *Crochet v. Wal-Mart Stores, Inc.*, No. 11-CV-01404, 2012 WL 489204, at *4 (W.D. La. Feb. 13, 2012) (agreeing that "plaintiffs' 'evidence' consisting of Google and Yahoo searches is inauthentic, lacks foundation and constitutes inadmissible hearsay").

In closing and rebuttal argument, the government emphasized this inadmissible testimony four times in an effort to connect Mr. Baxter to the Samsung drive and to discredit Mr. Baxter's testimony. *See* Oct. 9, 2024 Tr. 84 ("[O]f course the password for the SSD itself references a well-known automobile engine, well-known to car enthusiasts . . . . The defendant's sister-in-law, his wife, and the defendant himself tells you that he is very much into cars. Now, the defendant testified that he had no idea what the password was. In fact, he said there was no password, he had no idea what that engine was. You heard the testimony of the forensic specialist Task Force Officer Yu Kajita. The way you get into this SSD which contained the child pornography was to use a password, and the password was of an engine that had been

18

produced by a Japanese car company sometime later.  Defendant says that's not accurate.  Who is more credible on that, the defendant or Yu Kajita, with his training and certification?"); *id.* at 86 ("The password for the securely encrypted SSD was, as you've heard, S20DETT, referencing an engine that a car enthusiast may very well know existed.  You know now that this is a particular model of a car engine."); *id.* at 89 ("And I've said now repeatedly, and of course the password itself for the SSD was something that was set by the defendant, despite his testimony to the contrary, you heard Yu Kajita, and it is of an automobile.  And of course for the third time perhaps we know he is a car enthusiast."); *id.* at 110 ("We know what the password was, even though the defendant claims he never heard of that engine, although he's a car enthusiast.").  The government's heavy reliance upon the improper testimony satisfies the third and fourth prongs of the plain error standard.

### C.  Erroneous Denial of Motion to Suppress

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.

The probable cause standard requires "more than bare suspicion."  *Brinegar v. United States*, 338 U.S. 160, 175 (1949).  Rather, probable cause "exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."  *Id.* at 175-76 (citation omitted).  Application of a lesser standard would "leave law-

19

abiding citizens at the mercy of the officers' whim or caprice." *Id.* at 176.  Absent exigent

circumstances, the probable cause determination must be made by a "neutral and detached

magistrate." *Illinois v. Gates*, 462 U.S. 213, 240 (1983) (citation omitted).  And officers must

present sufficient information to that magistrate to allow it to conduct the required analysis.  In other

words, the magistrate's "action cannot be a mere ratification of the bare conclusions of others." *Id.* at

239.

   Here, the finding of probable cause was predicated upon a "formal mathematical formula,"

from an unknown source, that the affiant did not disclose to the Court.  The affidavit in support of the

warrant explained, without identifying any basis for the affiant's knowledge, "[w]hen a user uploads

a file into Freenet, the software breaks the file into pieces (called 'blocks') and encrypts each piece.

The encrypted pieces of the file are then distributed randomly and stored throughout the Freenet

network of peers."  Dkt. 45-1 ¶ 7.  When a Freenet user attempts to download a file, "[t]he Freenet

software then requests all of the pieces of the file from the user's peers.  Rather than request all of the

file pieces from a single peer, requests for file pieces are divided up in roughly equal amounts among

the user's peers.  If a user's peer does not have the particular requested pieces in its storage, that peer

will then divide up and ask its peers for the pieces, and so on." *Id.* ¶ 9.

   In other words, the mere fact that a certain IP address attempted to download part of a file

containing child pornography is consistent with two alternative scenarios: (1) that IP address is the

original requestor of the file or (2) that IP address is an innocent peer of the original requestor who

"is merely forwarding the request of another user" through the automatic operation of the Freenet

software. *Id.* ¶ 9; *see also id.* ¶ 11 ("Freenet attempts to hide which computer . . . downloaded a file

from the network by making it difficult to differentiate whether a request for a piece that comes in

20

from a peer originated with that peer (i.e., the peer was the 'original requestor' of the file), or whether that peer was simply forwarding a different peer's request.").  Thus, even if the foregoing facts were accurate, they do not prove an attempt to download child pornography, as opposed to a request by another user that was automatically forwarded via the user's peer network.[4]

In an effort to bridge this crucial gap, the affidavit represented that law enforcement applied an unspecified "mathematical formula . . . to determine the probability of whether the number of requests received for pieces of a file [wa]s significantly more than one would expect if the peer were merely forwarding the request of another computer."  *Id.* ¶ 20.  Citing an unspecified "academic paper" by an unnamed author, which the affidavit stated would be made "available to the court upon request," the affiant asserted, "I believe this to be a reliable method to determine whether it is significantly more probable than not that . . . a given Freenet computer is the original requestor of a file of interest."  *Id.* ¶ 21 & n.4.  Turning to the IP address at issue in this case, the affiant opined, "[w]ith respect to each file – considering the number of requested file pieces, the total number of file pieces requested to assemble the file, and the number of peers the user had – the number of requests for file pieces is significantly more than one would expect to see if the user of [the] IP address . . . were merely routing the request of another user."  *Id.* ¶ 23.  The affidavit proceeded to outline the number of pieces requested by the IP address, the total number of pieces needed to assemble the file,

---

[4] Freenet is not used exclusively for child pornography.  One expert who surveyed its contents observed that 37.6% of the files "were text (including the entire texts of books such as Jean-Jacques Rousseau's Confessions and George Orwell's 1984), 21.9% were audio (including entire albums by artists such as Sinead O'Connor and the Eurythmics); 14.3% were image (the vast majority of which seemed to be pornographic [he did not actually open any of the image files]); 11.3% were software; 3.6% were video (again, the vast majority seemed to be pornographic); and the rest, unknown."  John Alan Farmer, *The Specter of Crypto-Anarchy: Regulating Anonymity-Protecting Peer-to-Peer Networks*, 72 Fordham L. Rev. 725, 784 n.225 (2003).

and the average number of peers for several requests relating to alleged child pornography.  *See id.* ¶¶ 24-26.  Crucially, however, the affidavit never explained why these requests were not consistent with merely forwarding the request of another user, or provided numbers of requested pieces that would be expected if that were the case.  In these circumstances, the defense respectfully submits that the magistrate was deprived of the necessary information to conduct her own probable cause analysis, and the issuance of the warrant represented a mere ratification of the affiant's conclusions.

The good-faith exception to the exclusionary rule does not apply.  "[A]n officer cannot be said to have relied on a warrant in good faith when the supporting affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"  *Sheehan*, 70 F.4th at 51 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)).  This is particularly so when the "deficiencies arise from the failure of the [officer] conducting the search to provide the required supporting information in the affidavit."  *Id.* (citation omitted).  "The good-faith exception is designed to cut police officers some slack when they get close calls wrong."  *Id.* at 54.  It does immunize "failure in" the "core competency of a police officer" of "presenting sufficient probable cause of a crime to a neutral magistrate to justify the issuance of a warrant."  *Id.*  Here, for reasons set forth above, no reasonable officer could have believed that the affidavit provided sufficient facts for the magistrate to draw her own conclusion regarding whether the IP address in question was the original requestor of child pornography.  Instead, the government essentially asked the magistrate to adopt the affiant's conclusion, based on an unspecified "mathematical formula," that that was the case.  The impermissibility of reliance upon such conclusory assertions by the affiant has long been clearly established, and no reasonable officer could have believed otherwise.  *See, e.g.*, *Aguilar v. Texas*, 378 U.S. 108, 113 (1964) (stating that the magistrate "must judge for himself

the persuasiveness of the facts relied on by a complaining officer to show probable cause"
(citation omitted)); *United States v. Vigeant*, 176 F.3d 565, 571 (1st Cir. 1999) (holding that
"unsupported conclusions" are "not entitled to any weight in the probable cause determination").
The defense respectfully suggests that this issue at least presents a close question sufficient to
support the granting of bail pending appeal.[5]

## COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

Undersigned counsel conferred with the Government, and the Government opposes the
relief requested in this Motion.

Respectfully Submitted,
PATRICK BAXTER
By His Attorneys,

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

**/s/ Michael Pabian**
Michael Pabian, Esq.
Mass. Bar No. 684589
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
pabianlaw38@gmial.com

Dated: January 2, 2025

---

[5] The defense acknowledges that other courts, including one judge in this District, have rejected
similar arguments. *See United States v. Daigle*, 731 F. Supp. 3d 168, 171 (D. Mass. 2024).  But
the First Circuit has yet to address the issue and the existence of contrary persuasive authority
does not preclude the Court from finding that this constitutes a close question.

23

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, January 2, 2025, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.