UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** <br> Plaintiff <br><br> v. <br><br> **PATRICK BAXTER,** <br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CRIMINAL NO. 1:23-cr-10001-ADB |

**DFENDANT'S SENTENCING MEMORANDUM**

The Defendant, Patrick Baxter, by and through undersigned counsel, respectfully submits this memorandum in aid of his sentencing scheduled for January 8, 2025. For the reasons below, Mr. Baxter asks this Honorable Court to sentence him to a term of imprisonment of 15 years.

**I.     CALCULATION OF GUIDELINES**

Mr. Baxter was charged by Complaint and arrested on December 8, 2022 (Document 1, 4). A grand jury subsequently indicted Mr. Baxter on one count Possession of Child Pornography and one count of Receipt of Child Pornography. (Document 15). On August 1, 2024, a grand jury returned a superseding indictment, charging Mr. Baxter with one count of Possession of Child Pornography, one count of Receipt of Child Pornography, and one count of Sexual Exploitation of Children. (Document 101). Trial began on October 7, 2024. On October 9, 2024, the jury found Mr. Baxter guilty on all three counts.

Following this conviction, the Probation Department conducted a presentence investigation and calculated Mr. Baxter's total offense level to be 43. Mr. Baxter objects to this offense level calculation and suggests that the appropriate offense level is 36.

## II.   ARGUMENT

### A.   The Correct Total Offense Level is 36.

Mr. Baxter agrees that all three counts should be grouped for purposes of calculating the sentencing guidelines and that §2G2.1 is the applicable section. Accordingly, Mr. Baxter asserts that the base offense level is 32, which should be increased by four levels pursuant to §2G2.1(b)(1) because A.F. was a minor under the age of 12 years old at the time of offense. Therefore, the correct offense level is 36.

Probation recommends a two-level increase pursuant to 2G2.1(b)(5) because Mr. Baxter is the uncle of A.F. Mr. Baxter disagrees with this increase. The guidelines provide for a 2-level enhancement "[i]f the defendant was a parent, relative, or legal guardian of the minor involved in the offense, or if the minor was otherwise in the custody, care, or supervisory control of the defendant. § 2G2.1(b)(1)(5). Although the commentary notes that the section is "intended to have broad application," it also directs sentencing courts to "look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the defendant-minor relationship." Here, Mr. Baxter was a relative of the minor only by marriage, lived in an entirely different country, was never entrusted with any caretaking responsibilities, and the evidence at trial appeared to indicate a distant relationship. Clearly, this is not the type of relationship that would apply under § 2G2.1(b)(1)(5).[1]

---

[1] Probation suggests if the Court does not apply the 2-level enhancement under §2G2.1(b)(1)(5), then USSG §3B1.3 should be applied. An adjustment pursuant to §3B1.3 is intended for defendants who "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of an offense." The Application Notes provide that "Public or private trust" refers to apposition of public or private trust characterized by professional or managerial discretion. It is clear from the Application Notes that this adjustment is intended to apply to a defendant who uses his or her employment position, or pretends to hold a particular position, in order to commit or conceal the offense. Mr. Baxter did not use his position as an employee of the City of Cambridge to commit or conceal any crimes. To the extent that Probation suggests a special skill was utilized to conceal the child pornography, the Application Notes provide that "special skill" refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. There was no

2

Probation also recommends a two-level enhancement for obstruction of justice pursuant to §3C1.1, alleging that Mr. Baxter "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice," and that he committed perjury. Mr. Baxter respectfully denies this allegation and asserts that this two-level enhancement should not apply.

The Supreme Court has made clear that "not every accused who testifies at trial and is convicted" qualifies for an enhancement under § 3C1.1 of the sentencing guidelines. United States v. Dunnigan, 507 U.S. 87, 95 (1993). Moreover, the District Court must find that the defendant was untruthful about material matters in this case and make findings as to each element of perjury before adding the enhancement. Id. at 95-97. The government must prove the required elements by a preponderance of the evidence. United States v. Gonzalez-Santillan, 107 F.4th 12, 18 (1st Cir. 2024).

Here, Probation states that Mr. Baxter "claimed that he had never seen child pornography and suggested to the jury and court that his three-year-old son or A.F. could have been responsible for the CSAM of A.F." With respect to the downloaded videos, viewing CSAM material is not a required element under 18 U.S.C §2252A. Mr. Baxter was not charged with viewing CSAM; the charges are for possession and receipt. Mr. Baxter's testimony that he never saw the child pornography is not material to the elements of either possession or receipt. It is entirely possible to never physically see an item, and yet still possess it under the law. There was no evidence at trial to suggest that Mr. Baxter had to view the alleged child pornography in order to download it. For example, there was no testimony regarding how an image is viewed on FreeNet, whether the user sees a thumbnail versus a file name, or what the viewer saw on the computer once the file was downloaded. Moreover, the fact that Mr. Baxter testified that he did

---

evidence presented at trial to suggest that Mr. Baxter possessed a special skill in technology that meets this definition. For these reasons, the two-level increase pursuant to §3B1.3 is not applicable.

3

not know how the videos were saved to the hard drive is corroborated by the government's law enforcement witnesses, who could not explain how the files were downloaded to the hard drive without having any trace on the computer. As for the images and videos of A.F., Mr. Baxter testified that he did not remember taking the photos and suggested that his son may have gotten a hold of his phone and taken the photos as a possible explanation for how they were taken. In fact, Mr. Baxter acknowledged that he was the person who recorded the videos of A.F. That the jury rejected Mr. Baxter's testimony related to not having seen child pornography and suggesting that his son may have taken certain photographs does not lead to a necessary conclusion that Mr. Baxter committed perjury. Further, unlike United States v. Nagell, 911 F.3d 23 (1st Cir., 2019), these statements were not material to the defense. Rather, the defense as to Count 3 focused on whether the photographs and videos constituted child pornography, an essential element of the charge.

Additionally, Mr. Baxter asserts that Probation incorrectly deemed Mr. Baxter a "repeat and dangerous sex offender" because he "engaged in a pattern of activity involving prohibited sexual conduct" and thus applied a five-point enhancement pursuant to §4B1.5(b)(1). According to the Commentary of §4B1.5, for purposes of applying subsection (b), "prohibited sexual conduct…does not include possession or receipt of child pornography." Since "the production of child pornography is explicitly included as a covered sex crime," the dispositive question is whether Mr. Baxter engaged in a pattern of activity involving prohibited sexual conduct." United States v. Porter, 114 F.4th 931, 935, 938 (7th Cir. 2024) (internal quotation marks omitted). The Commentary also provides that "for purposes of subsection (b), the defendant engaged in a pattern of activity involving sexually prohibited conduct if, on at least two separate occasions, the defendant engaged in sexually prohibited conduct with a minor." In a recent decision, the Supreme Court held, in the context of the Armed Career Criminal Act ("ACCA"),

that burglaries of 10 adjoining storage units in a single night were not committed on "occasions different from one another." Wooden v. United States, 595 U.S. 360, 363 (2022). The Court explained that "offenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion." Id. at 369. A subsequent district court decision relied upon Wooden to find the enhancement inapplicable to a defendant who took a video of the victim and then committed an assault "mere moments" apart and "in the same location." United States v. Jimenez, No. 20-14019-CR, 2022 WL 1015396, at *4–5 (S.D. Fla. Apr. 4, 2022). Accordingly, Mr. Baxter asserts that the photos and videos taken on in July of 2019 constitute a single occasion because they were taken close in time and during a single on-going visit with A.F. and her family, therefore the five-point enhancement should not be applied.

For these reasons, Mr. Baxter avers that the correct offense level is 36 and the appropriate sentencing guidelines range is 188 to 235 months (15.6 to 19.5 years).

### B. An Advisory Guidelines Sentence Should Not Be Applied

Regarding the United States Sentencing Guidelines, the district court, while not bound by them, still must consult, and consider them when imposing a sentence. United States v. Booker, 543 U.S. 220, 264 (2005). Courts of Appeals cannot disturb a district court's sentence unless the appellate court finds that sentence unreasonable. See Id. The United States Supreme Court clarified post-Booker sentencing procedure in Gall v. United States, 552 U.S. 38 (2007). The Gall Court indicated that when sentencing a defendant,

> [A] District court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they

> support the sentence requested by a party. In so doing so, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

552 U.S. at 49-50 (internal citations and quotation admitted). The Supreme Court re-emphasized the point stating. "[T]he sentencing court does not enjoy the legal presumption that the Guidelines sentence should apply." Nelson v. United States, 555 U.S. 350, 351 (2009) (quoting Rita v. United States, 551 U.S. 338, 351 (2007)). In fact, the First Circuit has summarized the central principles of the post-Booker and Gall sentencing procedure described above, as follows:

> In the last analysis, a sentencing court should not consider itself constrained by the guidelines to the extent of that they are sound, case-specific reasons for deviating from them. Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale. Rather, the court "should consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue."

United States v. Martin, 520 F. 3d 87, 91 (1st Cir. 2008).

While the First Circuit has noted that sentencing courts must employ "an increased degree of justification commensurate with an increased degree of variance" from the advisory sentencing guideline range, it has also held that under a post-Gall rubric, "there is no stringent mathematical formula that cabins the exercise of the sentencing court's discretion. Indeed, after Gall, the sentencing inquiry—once the court has duly calculated the guidelines sentencing range—ideally is broad, open-ended, and significantly discretionary. At that point, sentencing becomes a judgment call, and a variant sentence may be constructed based on a complex of

factors whose interplay and precise weight cannot even be precisely described." <u>Martin</u>, 520 F.3d at 91-92 (internal citations and quotations omitted) (affirming a 91-month downward departure from the advisory sentencing guideline range).

Against this backdrop, Mr. Baxter respectfully requests this Honorable Court, after considering the advisory range, not impose a guidelines sentence in this case. Instead, he submits that a term of imprisonment for a total of 15 years (180 months). Specifically, Mr. Baxter requests the Court impose a sentence of one year of imprisonment on Count 1, five years of imprisonment on Count 2, and fifteen (15) years of imprisonment on Count 3, to be served concurrently.

After determining the guideline range, this Court must consider whether the statutory factors warrant an ultimate sentence above or below the guideline range. The Supreme Court has emphasized that section 3553(a) is "more than a laundry list of discrete sentencing factors; rather, it is a tapestry of factors, through which runs the thread of an overarching principle." <u>United States v. Rodríguez</u>, 527 F.3d 221, 228 (1st Cir. 2008) (citing <u>Kimbrough v. United States</u>, 552 U.S. 85 (2007)). That tenet -- the "parsimony principle" -- instructs "district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." Id. (quoting 18 U.S.C. § 3553(a)). Accordingly, Mr. Baxter requests that this Court fashion a non-guidelines sentence based on his personal history and characteristics, family circumstances, the need for the sentence, and the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

Mr. Baxter respectfully avers that an appropriate application of 18 U.S.C. § 3553(a) factors to the circumstances herein, should result in a sentence of 15 years in prison. The

§3553(a) factors generally include (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide the defendant with needed educational or vocational training or medical care, (3) the kinds of sentences available, (4) the kinds of sentence and the sentencing range established by the United States Sentencing Guidelines, (5) any pertinent policy statement, (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (7) the need to provide restitution to any victim of the offense 18 U.S.C. §3553(a).

<u>Characteristics of the Defendant</u>

Mr. Baxter's friends and family know him to be a loving husband and father, a caring son, a reliable and trustworthy friend, and an active member of his community. Mr. Baxter met his wife, Vanessa, in 2010 while working at Fuss & O'Neill in Connecticut. Vanessa was a structural engineer at the time and their relationship blossomed as they got to know each other through daily encounters in the office and company events. The pair married in 2013 and they now have two beautiful children, ages 6 and 9. Mr. Baxter has always been a present spouse and involved father. He is committed to his family and continually puts their well-being first, even in the face of such serious charges and consequences. After losing his job as a result of these criminal charges, Mr. Baxter found employment as a vehicle condition inspector so that he could continue to financially support his family. Following his conviction, Mr. Baxter moved out of the family home, so that his children could remain in the home and continue their life as normally as possible. Now living with his parents, Mr. Baxter remains involved and present in every way possible. He still contributes financially to his family and prioritizes being present in their family life, visiting with his children regularly and helping around the family home however he can. In

her letter to the Court, Mrs. Baxter describes her husband as a "caring and excellent father", a person with whom she has worked to build their life and family, and who shares a common goal of ensuring their children have a stable and safe home with parent who love them.

      Growing up as an only child, Mr. Baxter developed a very close relationship with his parents that has grown ever closer as he became a father himself. He learned what it means to be a dedicated partner in life and how to raise well-rounded children from their example. His parents continue to be a constant presence in Mr. Baxter's life, regularly providing childcare prior to, and during the pendency of, this case, and opening their home to him following his conviction. Their support for and belief in him is unwavering. Mr. Baxter's support system does not stop at his parents, but reaches beyond his immediate family to his aunts, uncles, cousins, and friends. His cousins, James Baxter and Alissa Sweeny, in their letters of support, describe Mr. Baxter as kind, caring, loving, gentle, considerate and intelligent. In his letter, Mr. James Baxter describes Mr. Baxter's genuine concern for him and his family after his daughters were born three months premature and admitted to the NICU for over two months. He recalls that Mr. Baxter reached out often during their lengthy hospital stay, and though it was a small gesture, it impacted him and his wife immensely as they struggled to find balance during such a stressful time. Mr. Baxter's cousin, Alissa Sweeny, also describes the joy Mr. Baxter brings to their family functions and the genuine interest he takes in her family because he cares.

      Mr. Baxter's compassion for others has also carried into his professional life. As an undergraduate student, Mr. Baxter joined Alpha Phi Omega, a co-educational intercollegiate service organization, and participated in Habitat for Humanity, building houses in West Virginia and South Carolina. In his professional life, Mr. Baxter channeled his passion for helping other into his career, making the roads of Massachusetts safer for pedestrians and bicyclists. After a

seven-year stint as a civil engineer in the private sector in Connecticut, Mr. Baxter returned to Massachusetts and worked for the City of Newton as a Transportation Engineer, designing infrastructure to meet the city's needs. In 2014, Mr. Baxter joined Toole Design Group, a planning and design firm that focuses on building infrastructure in communities to promote safety for pedestrians and accessibility to public transit. In his capacity as Senior Engineer, Mr. Baxter served as a project manager and co-authored the MassDOT Separated Bike Lane Planning and Design Guide in 2015. In 2016, Mr. Baxter returned to the life of public service as Engineering Manager for the City of Cambridge, a position he held until his arrest in this matter. In this role, Mr. Baxter oversaw all engineering work related to traffic in the City of Cambridge and volunteered his time and expertise to the National Committee for Uniform Traffic Control Devices, an organization dedicated to assisting in the development of standards, guides and warrants for traffic control devices and practices used to regulate, warn and guide traffic on streets and highways.

      That Mr. Baxter has had such a steady support system in his family and friends throughout this case, and especially now following his conviction, is a true testament to the kind and caring person that he is.

<u>Need for the Sentence and the Need to Avoid Unwarranted Sentence Disparities</u>

      Mr. Baxter asserts that a total sentence of 15 years imprisonment would sufficiently address the factors of 18 U.S.C. § 3553(a), specifically the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide the defendant with needed educational or vocational training or medical care, and to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Possession, receipt and production of child pornography are undoubtedly serious charges. Congress "has determined that the receipt, transportation, distribution, and production of child pornography is an overwhelmingly serious matter that 'is harmful to the physiological, emotional, and mental health of the children depicted ... and has a substantial and detrimental effect on society as a whole.'" United States v. Raiche, 50 F.4th 279, 284 (1st Cir., 2022) (quoting Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), Pub. L. No. 109–248, § 501, 120 Stat. 587, 623). The seriousness of these crimes is also reflected in the minimum sentences mandated by Congress in the statutes. *See* United States v. Raiche, 50 F.4th at 284 (citing United States v. Polk, 546 F.3d 74, 75 (1st Cir. 2008)). For this reason, a five-year term of imprisonment on Count 2 and a 15-year term of imprisonment on Count 3 adequately reflect the seriousness of the offenses because they are within the mandatory minimum sentence required by law. In United States v. Raiche, the defendant was pled guilty to a 41-count indictment on child pornography charges, which included allegations that the defendant took sexually explicit photos of nine different children, who he gained access to by posing as a babysitter. *Id*. at 280. The photos depicted sexual acts and the defendant distributed these photos via the internet. *Id.* Other charges of the indictment included distributing, promoting, receiving, and possessing child pornography. *Id.* After entering a guilty plea, the defendant was sentenced to 80 years (960 months) in prison. *Id.* (holding that the 80-year sentence did not constitute cruel and unusual punishment pursuant to the Eighth Amendment). Mr. Baxter's conduct, while serious, certainly does not rise to the level of that in Raiche and therefore does not warrant the 70-year prison term recommended by Probation.

Furthermore, 15 years in prison certainly serves to promote respect from the law, both from Mr. Baxter individually and from the public at large. Additionally, Mr. Baxter, as a college-educated individual with the ability to obtain and maintain employment throughout this case, has

11

demonstrated that he is a contributing member of his community. While Mr. Baxter will certainly avail himself of any programs or courses offered to him while in custody in order to continue improving himself, a sentence longer than 15 years would be a disservice to him and his family, who he supports financially, because of his level of education and employability.

Notably, the Courts have criticized Congress's changes to the child pornography laws and enhancements added to the sentencing guidelines as being too harsh, specifically §2G2.2 and the cross-reference requiring §2G2.1 be applied, and have varied downward. *See* United States v. Morace, 594 F.3d 340 (4th Cir. 2010) (noting the trend of downward variances in child pornography cases and that the Commission views this trend as a comment by judges on the guidelines' severity).  *See also* United States v. Jones, No. 7:20-CR-00002-BR, 2021 WL 3609298, at *4 (E.D.N.C. Aug. 13, 2021) (noting that the Sentencing Commissions June 2021 Report found that "[c]ourts increasingly apply downward variances in response to the high guideline ranges that now apply to the typical non-production child pornography offender."). While these cases primarily address harsh sentences in non-production cases, to impose a sentence of 20 years on Counts 1 and 2, simply to meet the Guideline range of life pursuant to USSG §5G1.2(d) [2] is a prime example of the overly harsh Guidelines sentences that judges have rejected. According to the Judiciary Sentencing Information (JSIN), during the last five fiscal year (FY2019-2023), "there were 30 defendant whose primary guideline was §2G2.1 with a Final Offense Level of 36 and a Criminal History Category of 1, after excluding defendants who receive §5K1.1 substantial assistance departure. For the 30 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was

---

[2] If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the counts shall run consecutively, but only to the extent necessary to produce a combine sentence equal to the total punishment.

167 month(s) and the median length of imprisonment imposed was 180 month(s)." *See* Exhibit 1 *United States Sentencing Commission Judiciary Sentencing Information (JSIN).* Accordingly, Mr. Baxter's requested sentence of 15 years (180 months) avoids the risk of sentencing disparities among similarly situated defendants.

     Mr. Baxter respectfully requests that this Court waive all discretionary fines and assessments and impose a restitution amount of $3,000 per victim, as required by 18 U.S.C. §2259(b)(2)(B). The Presentence Investigation Report indicates that the fine pursuant to the Guidelines ranges from $50,000 to $250,000. Additionally, the report indicates that the Court may also impose a total $15,000 assessment ($5,000 per count) pursuant to the Justice for Victims of Trafficking Act ("JVTA"), and a maximum assessment of $102,000 pursuant to the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 ("AVAA"). In determining the amount of the fine, the Court shall consider a number of factors, including the need for the combined sentence to reflect the seriousness of the offense (including the harm or loss to the victim and the gain to the defendant), to promote respect for the law, to provide just punishment and to afford adequate deterrence); any evidence presented as to the defendants' ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources; the burden that the fine places on the defendant and his dependents relative to alternative punishment; any restitution or reparation that the defendant has made or is obligated to make; any collateral consequences of the conviction, including civil obligations arising from defendant's conduct; and the expected any other pertinent equitable consideration. USSG §5E1.2(d)(1)-(8). The Court shall also consider the factors outlined in 18 U.S.C. §3553(a), discussed above.

As previously mentioned, Mr. Baxter avers that the requested 15-year prison term sufficiently addresses the need that the combine sentence reflects the seriousness of the offense. Moreover, given that Mr. Baxter will be serving a lengthy prison sentence, he will have no ability to make payments while incarcerated without placing an extreme financial burden on his family because his financial resources also support his wife and two young children, who will now rely solely on Mrs. Baxter's income during Mr. Baxter's incarceration. Additionally, Mr. Baxter will owe some amount in restitution to the victims, which he likewise would rely on his family resources to pay.

For these reasons, Mr. Baxter requests that all fines and assessments be waived, including any assessments pursuant to the JTVA and the AVAA, to the extent permitted by law, and that this Court order restitution in the amount of $3,000 per identified victim.

## **CONCLUSION**

In the present case, the appropriate Guidelines range is 188 to 235 months (15.6 to 19.5 years). Mr. Baxter avers that the downward departure to 15 years is appropriate and justified after consideration of the statutory factors, specifically his personal characteristics and history, as well as the needs of the sentence and need to avoid sentencing disparities. Mr. Baxter likewise avers that in light of the lengthy prison sentence, any fines and assessments imposed would be an undue financial burden to his family and would not further the need to reflect the seriousness of the offenses. Therefore, Mr. Baxter respectfully requests this Honorable Court impose a sentence of 1 year of imprisonment on Count 1, 5 years of imprisonment on Count 2 and 15 years of imprisonment on Count 3, to run concurrently, and order restitution in the amount of $3,000 per identified victim.

Respectfully Submitted,
Patrick Baxter,
By his attorneys,

_____
Natalie Sreca, Esq. BBO# 706732
Joseph B. Simons, Esq. BBO# 684030
Simons Law Office
53 State Street, Suite 500
Boston, MA  02109
(617) 544-9000

Dated: January 3, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 3, 2025.

_____
Natalie Sreca