UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No: 23-10001 |
| ) | |
| PATRICK BAXTER, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Following a jury trial, defendant Patrick Baxter ("Defendant") was found guilty of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2), receipt of child pornography, in violation of 18 U.S.C. 2252A(a)(2)(A) and (b)(1), and sexual exploitation of children (production of child pornography), in violation of 18 U.S.C. § 2251(a) and (e). For his offenses, Defendant faces a mandatory minimum period of imprisonment of 15 years and the United States agrees with United States Probation's determination that Defendant's Guideline sentencing range is 840 months (70 years).

For the reasons set forth in this memorandum, the United States asks the Court to impose a sentence of not less than 360 months (30 years) of imprisonment, 60 months (5 years) of supervised release, a mandatory special assessment of $300, special assessments totaling $55,000, and the restitution requested by the series victims. The government's request for not less than 360 months of imprisonment is far below the low end of the applicable Guideline sentencing range and is the lowest sentence that meets the goals of sentencing set forth in 18 U.S.C. § 3553(a).

I.  **FACTS**

The government relies on and incorporates the facts as set forth in the statement of offense conduct in paragraphs 10 through 28 of the Final Presentence Investigation Report ("PSR") issued by the United States Probation Office ("Probation") on December 27, 2024.  The following provides a high-level overview of the facts of this case and includes excerpts from Defendant's testimony at trial.

In 2021, the FBI was conducting a national operation to identify computer users who used the peer-to-peer network Freenet to traffic in child pornography.  The FBI unit conducting the Freenet investigation notified the FBI in Boston that a user at Defendant's house had attempted to download child pornography on Freenet.

On November 2, 2021, the FBI executed a search warrant at Defendant's Melrose residence.  The FBI seized eight electronic devices from the residence pursuant to the federal search warrant.  Among other items, the FBI seized a Samsung solid state drive ("SSD") found on a living room end table and an Apple MacBook laptop computer found on an ottoman in the living room.  FBI Boston was unable to access the SSD and thereafter sought the assistance of a specialized FBI unit, which determined the password to the SSD (the password was similar to the name of a car engine).

With the password, FBI Boston was able to examine the contents of the SSD.  The encrypted SSD contained a mirror image of what had once been on the Apple MacBook also found in the home.  An examination of the SSD revealed more than 420 videos containing child pornography, as well as pornographic images and video of Defendant's seven-year-old ▆▆▆▆, who had visited the Baxter residence with ▆▆ family in July 2019.

During Defendant's trial, the jury was shown short clips from a small sample of the more than 420 videos containing child pornography found on the SSD. The videos depicted children – some as young as five years old – being orally, vaginally, and anally raped by adult men, masturbating, and lasciviously displaying genitals to sexually arose the viewer. The child pornography collection was stored on different folders within the SSD. One folder was named "Freenet" and within that folder was a subfolder named "Downloads." In the "Downloads" subfolder the Defendant saved 116 videos of child pornography he downloaded from Freenet. These facts are the basis of the receipt of child pornography count. Additional videos of child pornography on the SSD form the basis of the possession of child pornography count.

With respect to the production of child pornography count, in July 2019, Defendant's out-of-state relatives visited his home and spent several nights with Defendant, his wife, and Defendant's two young children. The visiting relatives included Defendant's seven-year-old ▇▇▇. On the first night that the child was at the Defendant's residence, Defendant used his iPhone XS to take two photos of his ▇▇▇ standing naked in a bathroom door. In one image, the child is taking ▇ top off and ▇ naked body including ▇▇▇ is visible. The other image captures the child's naked lower body. The two pornographic images were transferred from the Defendant's iPhone XS to the MacBook found on the ottoman in the living room and then onto the SSD found in the living room.

The very next day Defendant took sixteen photos of the seven-year-old in his son's bedroom. In one of the images, the child's face is clearly visible, and ▇ is wearing a pink shirt with no pants or underwear. In the other photos, the child's vagina is visible and certain images focus on the child's vagina. In many of the images, the child's face is not visible. These images were transferred from the Defendant's iPhone XS to the MacBook and then onto the SSD.

On July 11, 2019, Defendant took two videos of his ▬▬ in his son's bedroom. In both videos, the child is naked and in one ▬▬▬▬ is visible. Defendant can be heard speaking to his son and his nephew on the videos, but he keeps the phone's camera focused on his naked ▬▬. Defendant saved both videos on the encrypted SSD with his other child pornography. During trial, the child's mother identified the child in the photos and video as ▬▬ ▬▬▬▬ and the adult voice on the two videos as Defendant's voice.

Defendant testified during his trial. He denied the charges against him and in doing so, made numerous false statements. For example, when asked about Freenet, Defendant responded "I don't even know what it is." Trial Transcript, Day 2 (hereinafter "Tr. Tr.") at 43:20. When probed about who from his home had logged onto Freenet on various dates, Defendant replied, "If I knew that, I wouldn't be here." Tr. Tr. at 45:5. In response to questioning about the child pornography found on the SSD in his home, Defendant stated "I've never seen those myself." Tr. Tr. at 47:14-15.

Defendant was also questioned about the pornographic files of his seven-year-old ▬▬. The following exchanges occurred with the government regarding Defendant's testimony on direct examination about another possible culprit: Defendant's three-year old son.

> Q. Now, are you suggesting in your testimony that your three-year-old son Finnegan is the one guilty of taking nude and pornographic photos of ▬▬▬▬? Is that your testimony?
>
> A. I think it's distinctly possible, and certainly he wouldn't have known or understood that that was inappropriate.
>
> Q. So we'll take that as a yes.
>
> A. I don't know what happened. It seems like the most likely possibility, yes.
>
> Tr. Tr. at 53:2-9.
>
> *****

4

>Q. . . . Now, let's talk about July 4th, the very next day. Are you telling us you didn't take the 16 pictures of ▮?
>
>A. That's correct.
>
>Q. You're telling us that you didn't specifically put the camera in such a way to focus on ▮ and buttocks?
>
>A. I would never do that.
>
>Q. Yes, you are, okay. That was also possibly your three-year-old son?
>
>A. Possibly, yes.
>
>Q. Is that the suggestion? I'm sorry. Is there an answer to that?
>
>A. I said possibly, yes.
>
>Tr. Tr. at 54:13-25.

Regarding the videos of his ▮ in which his voice could be heard, Defendant testified, "[n]o, I don't recall specifically what happened. It appears from the video that what I think happened is, I opened the door because I heard them jumping around on the bed, and they had had some really high jinks in there, and I wanted to take a video of it. And then when I opened the door, they weren't dressed, and I turned the camera off." Tr. Tr. at 55:11-16. When faced with the fact that there were two separate and distinct videos with his voice that featured his ▮ naked, Defendant stated, "I think the second video might have been I accidentally turned it back on with my thumb as I was standing there, but I don't know." Tr. Tr. at 56:6-8.

On October 9, 2024, the jury convicted the Defendant on all three charges – possession of child pornography, receipt of child pornography, and production of child pornography.

II.     **Sentencing Guidelines Calculation**

Probation has calculated Defendant's total offense level ("TOL") as 43, criminal history category ("CHC") as I, and Guideline sentencing range ("GSR") as 840 months (70 years). With respect to the TOL, the three offenses of conviction group and the base offense level ("BOL") is 32. PSR ¶ 37. Pursuant to USSG § 2G2.2(b)(1)(A), four levels are added because the offense involved a minor who had not attained the age of 12 years.[1] PSR ¶ 38. Pursuant to USSG § 2G2.1(b)(1)(5), two level as are added because Defendant was a relative of the minor involved in the offense.[2] PSR ¶ 39. Pursuant to USSG § 3C1.1, two levels are added because Defendant willfully impeded, or attempted to obstruct or impede, the administration of justice by committing perjury while testifying at trial. PSR ¶ 42. Pursuant to USSG § 4B1.1(b)(1), five levels are added because Defendant engaged in a pattern of activity involving prohibited sexual conduct.[3] PSR ¶ 44. Pursuant to USSG Chapter 5, Part A (comment n. 2), because the Defendant's offense level goes beyond level 43, which is the highest offense level, Defendant's offense level is reduced to 43. PSR ¶ 43. Defendant does not have criminal history and thus is Criminal History Category I.

With a TOL of 43 and a CHC of I, the GSR ordinarily would be life, but because none of the three crimes of conviction have a maximum sentence of life, the GSR is the combined maximum sentences of the three offenses. The GSR is therefore 840 months. The government agrees with these assessments and calculations by Probation.

---

[1] The victim of the production of child pornography charge was seven years old at the time Defendant produced pornographic files of ▮.

[2] Defendant is the victim's ▮. Additionally, the child was in Defendant's care at the time of the incidents that form the basis of the offense.

[3] Defendant took pornographic files of his seven-year-old ▮ on three separate dates.

**Defense Objections to the PSR Calculations**

On December 18, 2024, defense counsel lodged three primary objections to U.S. Probation's GSR calculations (hereinafter "Def. Objs."). Specifically, they challenge the applications of the enhancements for obstructing justice by committing perjury, being a relative of the victim, and engaging in a pattern of activity involving prohibited sexual conduct. The defense arguments are unavailing.

<u>Defendant Qualifies for the Obstruction of Justice Enhancement</u>

Pursuant to USSG § 3C1.1, Probation increased Defendant's offense level by two because he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice," and that he committed perjury. PSR ¶¶ 32, 42. Probation described Defendant's testimony as "calculated and designed to affect the outcome of the case and to avoid responsibility" and "not inadvertent falsity but instead deliberate false testimony." PSR p. 30. To support their position, Probation accurately cites to *United States v. Nagell*, 911 F.3d 23 (1st Cir. 2019), *United States v. O'Brien*, 435 F.3d 36 (1st Cir. 2006), and *United States v. Dunnigan*, 507 U.S. 87, 113 S. Ct. 1111, 122 L.Ed.2d 445 (1st Cir. 1993).

Defendant challenges Probation's determination he committed perjury when he testified that he had never seen child pornography and that his son may have taken the pornographic images of the victim and the corresponding enhancement. Def. Objs. 1, 3. Both of Defendants' statements at trial were demonstratively untrue. The jury unanimously found that Defendant possessed and received child pornography and that Defendant produced child pornography of his young niece. There is no other way to interpret the jury's verdicts. The jury made its findings beyond a reasonable doubt.

Every defendant has an absolute to testify in her or his own defense. No defendant has a right to commit perjury when testifying. Probation correctly concluded that in denying seeing child pornography and knowing what Freenet is, Defendant committed perjury. They also correctly concluded that Defendant committed perjury in his denials (and attempts to potentially blame shift to his three-year-old son) with respect to the pornographic images he took of his seven-year-old ▮ and his explanation that he took the pornographic videos of the child accidentally.

Defendant Qualifies for the Relative Enhancement

Pursuant to USSG § 2G2.1(b)(1)5), Probation increased Defendant's offense level by two because he was a "relative" of the victim. PSR ¶ 39. Despite acknowledging that the Commentary Notes for the enhancement advise the enhancement is "intended to have broad application," Defendant argues it should not apply because Defendant was only a relative by marriage,[4] Defendant and the victim lived in different countries, Defendant was never entrusted with any caretaking responsibilities, and that Defendant and the victim had a distant relationship. Def. Objs. 2. Yet, Defendant fails to cite a single case in support of his contention that this enhancement does not apply.

The unchallenged testimony at trial is that Defendant was the victim's ▮ by marriage. Probation notes that the child was visiting Defendant and his family at the time of the offense and that he was a "trusted relative." PSR pg. 31. Every time the victim's parents allowed Defendant to be with their seven-year-old child, they entrusted ▮ welfare to Defendant. This was only natural, of course, as Defendant was her ▮. The victim and ▮ family had

---

[4] The Commentary Note does not distinguish between blood relatives and marriages by marriage and should not.

previously stayed with Defendant and his family on earlier family vacations to Massachusetts. Defendant did not have a distant relationship with the victim. Defendant was the victim's ███, and the two families were close enough to stay with each other when vacationing. That they were from different countries is irrelevant.

Probation posits that if the Court finds this enhancement does not apply, that the Court should apply USSG § 3B1.3 for Abuse of a Position of Trust. The government believes the same arguments that support applying the relative enhancement apply in the context of the position of trust enhancement. Either enhancement is an acknowledgment that Defendant and victim were not strangers and that Defendant's ability to sexually exploit ███ was enabled, or at least facilitated by, their relationship.

<u>Defendant Qualifies for the Pattern of Activity Involving Prohibited</u>

Pursuant to USSG § 4B1.1(b)(1), Probation determined that Defendant qualifies for a five-level enhancement because Defendant engaged in a pattern of activity involving prohibited sexual conduct. PSR ¶ 44. Defendant objects to this enhancement. Def. Objs. 4. Defendant asserts that Probation applied the enhancement by mistakenly considering the three offenses of conviction as the separate offenses constituting a pattern. Defendant points out that possession and receipt of child pornography cannot be considered when determining a pattern under the enhancement. Defendant concedes that production of child pornography may be considered when determining if Defendant engaged in a pattern of activity involving prohibited sexual conduct.

Defendant fails to grasp that the enhancement applies because Defendant took pornographic images and videos on three separated dates in three distinct locations. As Probation explains in its response, Defendant took two pornographic images of his ███ at the

9

upstairs bathroom door in his house on one date, two pornographic videos of his ▇ in his son's bedroom on another date, and a series of pornographic images of his ▇ on his son's bed on a different date. PSR p. 32.

For all the foregoing reasons, the government believes that all of defendant's objections to the PSR must be overruled.

### III.    Restitution and Fines

Defendant's ▇ is not seeking restitution.

The government has identified 2 known child pornography series in Defendant's collection of child pornography. The two submitted victim impact statement in connection with sentencing. They also submitted restitution requests. The government submitted the restitution requests and impact statements to defense counsel and will also provide them to the Court under seal. The government submits that the restitution submissions provide a sufficient basis upon which this Court can and should find that the requested amounts are appropriate and reasonable in the context of this case. The submissions include legal memoranda, psychological evaluations, and financial impact assessments.

The amounts are reasonable determinations of the losses incurred and reasonably projected to be incurred in the future proximately caused by Defendant's offenses. *See* 18 U.S.C. § 2259(c)(2). The victims' submissions demonstrate that the losses are attributable to the statutory sources, namely medical services, physical and occupational therapy and rehabilitation, transportation, housing, childcare, lost income, attorney's fees, and other "relevant losses incurred by the victim." 18 U.S.C. § 2259(c)(2)(A)-(F). By statute, the minimum restitution order per victim is $3,000.

The government submits that the amounts requested by the two series victims are a "reasonable and [circumscribed] award imposed in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role." *Paroline v. United States,* 572 U.S. 434, 459 (2014). The government therefore requests that this Court order that Defendant pay restitution in the requested amounts for a total of $17,500.

Here, imposition of the $5,000 pursuant to 18 U.S.C. § 3014 (*i.e.,* JVTA assessment) is warranted. The Defendant bears the burden of proving indigence in this context. *United States v. Kelley*, 861 F.3d 790, 800 and n.5 (8th Cir. 2017). As of this filing, he has not done so. Indeed, the PSR notes that Defendant's assets are $1,008,149 while his liabilities are $300,000. PSR ¶ 80. *See, e.g., United States v. Procell*, 31 F.4th 32, 37-38 (1st Cir. 2022) (no clear error in district court's ordering § 3014 assessment applicable to "non-indigent" defendants where Procell had a bachelor's degree, earned $59,000 prior to his arrest, had a supportive family willing to house him on his release, and had years of earning potential, despite fact that conviction for sex offense would not allow him to resume career as teacher post-release).

Defendant's ability to pay is also a factor to consider in determining what assessment this Court should impose pursuant to 18 U.S.C. § 2259A (*i.e.*, AVAA assessment).[5] The AVAA special assessment applicable to the charge of sexual exploitation of children is $50,000. Again, the Defendant has not yet put forth any evidence as to his inability to afford such a fee. Accordingly, the government asks that the Court impose that assessment in this matter.

---

[5] Monies paid under this section are deposited and pooled in the "Child Pornography Victims Reserve" established in 18 U.S.C. § 2259B, which is the fund from which child pornography victims can receive a one-time fixed amount of compensation instead of seeking restitution on a case-by-case basis.

## IV. Application of 18 U.S.C. § 3553 factors

The advisory Guidelines are "the starting point and the initial benchmark" in sentencing. *Gall v. United States,* 552 U.S. 38, 49-50 (2007). The Court is tasked with crafting a sentence that sufficiently accounts for the sentencing factors and objectives outlined in 18 U.S.C. § 3553(a). *See id*. Because each case is unique, the Court must make a particularized analysis of the nature and circumstances of the offense as well as the defendant's history and characteristics. *See* 18 U.S.C. § 3553(a)(1). The Court must then impose a sentence that sufficiently reflects the seriousness of the crime, promotes respect for the law, and provides just punishment. The sentence should also adequately deter criminal conduct, protect the public, and provide any necessary education, training, or treatment. *See* 18 U.S.C. §§ 3553(a)(2)(A)-(D). The Court must also strive to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6). After determining the appropriate sentence, the Court should adequately explain its rationale to "allow for meaningful appellate review and to promote the perception of fair sentencing." *See Gall*, 552 U.S. at 50.

The government asserts its recommendation accounts for the factors outlined in 18 U.S.C. § 3553(a). The factors include the nature and circumstances of the offenses, the history and characteristics of Defendant, the seriousness of the offenses, promoting respect for the law, providing just punishment for the offense, the need to deter Defendant and others, the need to protect the public from Defendant's crimes, and the need to avoid unwarranted sentencing disparities. Here, the Government believes that a sentence of not less than 360 months, five years of supervised release, a $300 special assessment, $55,000 in special assessments, and the

restitution sought by victims is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

**<u>Nature and Circumstances of the Offenses are Reprehensible</u>**

At trial, the government showed the jury and the Court snippets from a small number of more than 420 videos of child pornography possessed by Defendant when FBI executed search warrants at his home. As the Court has already viewed the horrible images of sexual violence against children on these videos, lurid descriptions are not necessary. The possession and receipt of child pornography is illegal, and punished severely, because society recognizes the great harm these offenses cause the most vulnerable in our communities. Even when an individual does not create the child pornography, the possession and receipt of such material has enormously detrimental effects on children that last a lifetime. This Court has undoubtedly read victim impact statements from numerous victims of child pornography, who related that the knowledge that others view their sexual abuse and exploitation causes them great and continued suffering. Offenders, who like Defendant, actually produce child pornography are in a class by themselves. Their acts are so diabolic that the law requires a sentence of not less than 15-year, and a GSR that reflects societies rightful horror at such acts.

Here, Defendant not only sexually exploited his young relative, but he also betrayed the trust the child's parents placed in him. The victim's parents assumed Defendant was a loving family member who would care for and protect their children. Never could they have imagined that Defendant would exploit the access he had to their child and make and save pornographic images of their young ███████. In addition to the child, ██ parents, Defendant's wife, and his own children are all victims of Defendant's crimes. All must suffer profoundly because Defendant chose to sexually exploit a young child.

13

Every defendant has an absolute right to demand that the government prove the charges against him or her beyond a reasonable doubt. A defendant has an absolute right to remain silent. No defendant should ever be punished for exerting his or her right to a jury trial or to remain silent. A defendant, however, does not have the right to take the stand in his or her defense and give false testimony. Probation is correct to increase Defendant's offense level by two levels pursuant to USSG § 3C1.1, for obstructing justice by committing perjury while testifying in his defense. In sworn trial testimony, Defendant asserted that he never downloaded or received child pornography, that he never knowingly possessed child pornography, and that he did not take the pornographic photographs of the victim while ▆ stood outside the bathroom in his house. While Defendant admitted he took the video of the child in his son's bedroom, he falsely claimed that it was not intentional (he forgot the video was on), and that he never intentionally saved the two videos with the other child pornography images found on his cell phone. Defendant, of course, could not deny filming the child in his son's bedroom because his voice is clearly and unmistakenly heard on the two videos. The jury rejected Defendant's trial testimony.

Why does it matter that Defendant repeatedly lied during his trial testimony? Why should the court take Defendant's lies into consideration when fashioning an appropriate sentence? The Guidelines include a two-level increase for such lies because lying under oath at trial undermines the truth-seeking purpose of a trial. Defendant's lies also underscore his refusal to accept responsibility for his acts. Again, Defendant had an absolute right to remain silent and demand the government prove the charges against him beyond a reasonable doubt, he did not have the right to lie. Defendant's willingness to lie under oath shows that he has not come to terms with the forces inside himself that compel him to sexually prey on children. Without an

14

understanding of his prurient desires and actions, Defendant will remain at risk of reoffending.

## History and Characteristics of the Defendant are that of Privilege

Criminal law practitioners and observers frequently point to a defendant's socioeconomic status, disadvantaged upbringing, and a flawed criminal justice and judicial system to explain criminal behavior. None of these considerations apply to Defendant. As he shared with Probation, Defendant was raised in a loving home, given an excellent university education, had a professional, well-paying position with the City of Cambridge, and was blessed with a loving wife and two beautiful children. PSR at ¶¶ 55-61. Defendant had the American Dream before he decided to throw it away to satiate his sexual interest in children and violate a child relative in the process. No one and nothing are to blame for the situation Defendant finds himself in other than the Defendant. Defendant is entirely and solely responsible for his crimes and the sentence that will be imposed on him.

## Sentence Imposed Must Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense

The seriousness of Defendant's offenses against children is reflected in the 70-year GSR and the Judiciary Sentencing Information ("JSIN data"). PSR ¶ 101. For fiscal years 2019 through 2023, 824 defendants nationwide were sentenced whose primary Guideline was § 2G2.1, with a Final Offense Level of 43 and a CHC of I, after excluding defendants who received a § 5K1.1 substantial assistance departure. In this large group of similarly situated defendants, the average sentence length was 348 months (29 years), and the median sentence length was 360 months (30 years). Defendant falls within this group and is most deserving of the sentence requested by the United States. Defendant's crimes were reprehensible. He exploited children he never met and did not know from the comfort of the home he shared with his wife and own


minor children, and he also sexually exploited his young ▮▮▮ while ▮ parents, his wife, and his children were in the same home.

The sentence imposed must avoid unwarranted disparities between similarly situated defendants. The Guidelines were enacted to bring uniformity to sentencing nationwide. An economically disadvantaged person living in the South must be treated the same as a wealthy, well educated, person in the North. While it is axiomatic that each case and each defendant is unique, a sentence substantially below the average and median sentences given nationwide to defendants similarly situated as Defendant would defeat the goal of avoiding unwarranted disparities. As noted above, between 2019 and 2023, 824 defendants with the same TOL and CHC as Defendant were sentenced. The average sentence was 29 years, the median sentence was 30 years. These sentences reflect that Courts around the country recognize the enormity of these crimes against children. This Court has no reason to sentence outside of the heartland of sentences imposed in the other 824 cases. The victims in this case deserve the same treatment the victims in the other 824 cased received – a fair and just sentence. A sentence that reflects the enormity of Defendant's crimes.

**Sentence Could Afford Adequate Deterrence to Criminal Conduct, Protect the Public from Further Crimes of the Defendant, and Provide for the Needs of the Defendant**

While all the sentencing factors in § 3553(a) are important, perhaps none is as important as the need to protect children from further crimes of Defendant. The sentence requested by the United States has the potential to provide adequate deterrence to Defendant and others who are tempted to sexually exploit children. Defendant used the internet to download disgusting videos of children being raped and sexually abused. More troubling yet is that Defendant preyed on his seven-year-old ▮▮▮ to satisfy his sexual interest in young children. Will a lengthy period of incarceration and sexual offender counselling (if Defendant someday is willing to undergo such

treatment) be sufficient to protect children from further similar offenses by Defendant?  No one knows the answer to that question, but this Court has both the opportunity and responsibility to protect children from Defendant.  With Defendant's willingness to lie about his crimes, there is no reason to believe that he will be in a position to change anytime – if change is even possible.  This Court should not gamble with the safety of children.

## CONCLUSION

Balancing all of the factors here, the government believes that its proposed sentence of 360 months (30 years) of imprisonment, 60 months (5 years) of supervised release, a mandatory special assessment of $300, special assessments totaling $55,000, and the restitution requested by the victims, is sufficient but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).  Therefore, the government requests that the Court impose its recommended sentence.

Respectfully submitted,

JOSHUA S. LEVY
United States Attorney

By:     */s/ Jessica L. Soto*
        David G. Tobin
        Jessica L. Soto
        Assistant United States Attorneys

Dated: January 3, 2025