UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No. 23-10001-ADB |
| ) | |
| PATRICK BAXTER, ) | |
| ) | |
| Defendant. ) | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR STAY OF SENTENCE PENDING APPEAL

The motion of defendant Patrick Baxter ("Defendant") for bail pending appeal should be denied. As discussed below, Defendant is required to show both that there is a "substantial question" of law or fact he will raise on appeal that, if successful, would call into question each count of conviction, and that there are "exceptional reasons why … detention would not be appropriate." Because he has shown neither, detention is mandatory. Specifically, with respect to Count Two (Receipt of Child Pornography), which carries a mandatory-minimum sentence, Defendant fails to meet his burden with unpreserved evidentiary challenges and a meritless suppression challenge that this Court has already rejected correctly.[1]

---

[1] Because Defendant cannot meet his burden as to Count Two, the government need not, and does not, address Defendant's arguments as to Count Three. It preserves its arguments as to Count Three, which it will address at the appellate stage of review.

The government does note that in conversations with defense counsel prior to trial, the government informed them that if defense objected to a unanimity instruction on Count Three, the government would seek a second superseding indictment adding additional counts of sexual exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and (e). The additional counts would have specified specific images of Defendant's seven-year-old victim and would increase the overall potential maximum faced by Defendant. The defense agreed to avoid a Second Superseding Indictment by agreeing to the unanimity instruction.

1

## PROCEDURAL SYNOPSIS

On August 1, 2024, a federal grand jury returned a superseding indictment charging Defendant with possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) (Count One); receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1) (Count Two); and sexual exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and (e) (Count Three).  [ECF No. 101].[2]

During a three-day trial, testimony was taken of three government witnesses (FBI Special Agent Bryce Montoya, Task Force Officer Yu Kujita, and Minor 1's mother) and two defense witnesses (Patrick Baxter and his wife, Vanessa Baxter).  The government entered 29 exhibits (several composed of multiple parts) [ECF. 125]; Defendant entered none.  On October 9, 2024 after considering the evidence, the jury found Defendant guilty of all three counts against him. [ECF No. 131].  He is scheduled to be sentenced on January 8, 2025, and faces a five-year mandatory minimum sentence on Count Two, 18 U.S.C. § 2252A(b)(1), and a fifteen-year mandatory minimum sentence on Count Three, *id.* § 2251(e).[3]  On January 2, 2025, twelve weeks

---

[2] Docket entries are cited as "[ECF No.__]."  Baxter's supporting memorandum is cited as "[Def. Mem. at __]."  The trial transcripts are cited by the day and page: "[TT.3:50]," for example, refers to the transcript for Day 3, page 50.  Exhibits are cited as "[Exh.__]."

[3] U.S. Probation found that all three counts group and calculated Defendant's United States Sentencing Guidelines (USSG) range as 840 months (70 years).  As outlined in its sentencing memo submitted on January 3, 2025, the government agrees with this calculation.  The government seeks a sentence that includes 30 years of incarceration, while Defendant seeks the 15-year mandatory minimum.

If the counts did not group, the government believes that Defendant's USSG range for Count One would be 108-135 months (based on Total Offense Level 31 and Criminal History Category I) and for Count Two it would be 135-168 months (based on Total Offense Level 33 and Criminal History Category I).  Both lengths of time are longer than the expected duration of the appeals process.

after the guilty verdicts rendered against him and six days before his sentencing, Defendant filed the instant motion.[4]

## LEGAL STANDARD

Any motion for a stay of a sentence of incarceration is governed by 18 U.S.C. §3143(b). Subsection (b)(1) provides:

> (1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—
>
> > (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> >
> > (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
> >
> > > (i) reversal,
> > >
> > > (ii) an order for a new trial,
> > >
> > > (iii) a sentence that does not include a term of imprisonment, or
> > >
> > > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. §3143(b)(1).

Paragraph 2 provides:

> (2) The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained.

---

[4] In order to discuss this matter at the sentencing hearing scheduled for January 8, 2025, the government files its opposition to Defendant's motion ahead of its 14-day deadline set out by Local Rule 7.1(b)(2).

18 U.S.C. §3143(b)(2). One category of crimes specified in (f)(1)(A) is "a crime of violence," 18 U.S.C. § 3142(f)(1)(B), which is defined to include "any felony under … chapter 110." 18 U.S.C. § 3156(a)(4)(C). Each of Defendant's three convictions falls within this definition.

A court is authorized to release a defendant subject to mandatory detention under paragraph 2 only if he both meets the conditions of release in paragraph 1 and "clearly show[s] that there are exceptional reasons why [his] detention would not be appropriate." 18 U.S.C. § 3145(c).[5] Even assuming *arguendo* that Baxter is not a flight risk and that continuation of the conditions of release mitigate the risk of danger to the community, Baxter's motion fails. 18 U.S.C. § 3143(b)(1)(A). The resolution of this motion turns on the "substantial question" and the "exceptional reasons" inquiries under §3143(b)(1)(B) and § 3145(c), respectively.

The "substantial question" inquiry under §3143(b)(1)(B) "breaks down into two distinct requirements," namely: "(1) that the appeal raise a substantial question of law or fact and (2) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *United States v. Bayko*, 774 F.2d 516, 522 (1st Cir. 1985) (cleaned up). A "substantial question" is one that is "close" in the sense that it "very well could be decided the other way," *Bayko*, 774 F.2d at 523 (cleaned up); the mere "possibility of reversal" does not suffice. *Id.* at 523 (cleaned up). And an error that is harmless, or that goes only to some—but not all—counts of

---

[5] Although the "exceptional reasons" provision appears in a subsection that otherwise concerns appellate review, the First Circuit has assumed without deciding that a district court has authority to determine whether exceptional circumstances exist. *United States v. Weiner*, 972 F.2d 337 (Table), 1992 WL 180697, at *1 (1st Cir. July 31, 1992); *see* L.R. 32.1.0 (1st Cir.). Given *Weiner* and the weight of circuit court authority, *see United States v. Smith*, 34 F. Supp. 3d 541, 548-49 (W.D. Pa. 2014) (collecting cases), the government assumes the same.

conviction for which imprisonment was imposed, cannot meet the "likelihood prong." *United States v. Zimny*, 857 F.3d 97, 101 (1st Cir. 2017); *see United States v. Powell*, 761 F.2d 1227, 1233 (8th Cir. 1985) (en banc) ("An argument that would produce a reversal of fewer than all such counts would be insufficient in this context, because if one count imposing imprisonment survives, the reason for allowing bail pending appeal, that a defendant should not be imprisoned under a legally erroneous sentence, disappears.").

The "exceptional reasons" inquiry under § 3145(c) affords district courts discretion to determine whether a defendant who has satisfied the § 3143(b)(1) criteria should be afforded "exceptional discretionary relief from [the] mandatory-detention provision." *United States v. Weiner*, No. 92–1708, 1992 WL 180697, at *3 (1st Cir. July 31, 1992) (cleaned up). In *Weiner*, the First Circuit acknowledged that "[n]either the statute nor the legislative history defines the circumstances which may qualify as exceptional reasons permitting release." *Id.* at *3 (cleaned up). As a general rule, however, there must be present "a unique combination of circumstances giving rise to situations that are out of the ordinary." *Id.* (quoting *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir.1991)).

## ARGUMENT

### A.    There Are No Substantial Questions As To All Counts of Conviction.

Defendant contends that there are substantial questions of law or fact that call into question each count of his conviction. [Def. Mem. at 3]. As to Counts One and Two, the latter of which carries a five-year mandatory minimum sentence, Defendant raises only (1) concededly unpreserved evidentiary challenges that clearly fail on plain error review, and (2) a meritless suppression challenge that this Court has already correctly rejected. Because Defendant fails to present a substantial question "likely to result in reversal or an order for a new trial of *all counts*

on which imprisonment has been imposed," *Bayko*, 774 F.2d at 522 (emphasis added), the Court can deny Defendant's motion on these grounds alone.[6]

### 1.   Unpreserved Evidentiary Challenges

Defendant contends that FBI Special Agent Bryce Montoya offered impermissible testimony based on collective knowledge [Def. Mem. at 11-15] and hearsay [Def. Mem. at 15-16]. Defendant necessarily concedes that these evidentiary challenges are unpreserved, and that plain error review will apply on appeal as a result. [Def. Mem. at 10]. Under the plain error standard, Defendant must show: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *United States v. Duarte*, 246 F.3d 56, 60 (1st Cir. 2001). Defendant will be unable to clear this "high hurdle." *United States v. Diaz*, 285 F.3d 92, 95-96 (1st Cir. 2002).

#### a.   Collective knowledge testimony

Defendant argues that government witness FBI Special Agent Montoya impermissibly testified based on collective knowledge of investigators rather than personal experiences. [Def. Mem. at 11-15]. Defendant cites to Special Agent Montoya's testimony that the investigation into Defendant began when Special Agent Montoya "received a lead from an FBI headquarters unit" stating "that a specific IP address" associated with Defendant's residence "was attempting to download child pornography." [Def. Mem. at 11 (citing TT.2:18-19)]. Defendant also asserts that Special Agent Montoya did not provide a description of the basis for his knowledge regarding how

---

[6] The government focuses on Count Two because Count One does not have a mandatory minimum sentence. Moreover, because Defendant fails with respect to Count Two, the government need not address Defendant's flagship arguments regarding Count Three—*Yates* and as-applied Commerce Clause challenges—as to that count.

6

child pornography was downloaded from Freenet and that Special Agent Montoya had no personal knowledge of the purported attempted downloads associated with Defendant's IP address. [Def. Mem. at 11-12]. This claim does not present a substantial question of law or fact on appeal.

Defendant mischaracterizes the nature of Special Agent Montoya's testimony. Special Agent Montoya's testimony as to the origins of the case was brief and offered for background purposes only. The related statements were not offered for the truth of the matter asserted and as such, this issue fails as to prong 1 (*i.e.*, that an error occurred). More specifically, the details of the lead that brought law enforcement, including Special Agent Montoya himself, to the Defendant's residence to execute search warrants did not go to any element of Defendant's child pornography offenses.[7] Further, Special Agent Montoya had first-hand knowledge as to what led the FBI to focus on Defendant.

To prove its case with respect to Count Two, the government relied on the first-hand knowledge of investigators and permissible circumstantial evidence. For example, Task Force Officer Kajita testified, based on personal knowledge, to the location of the relevant files and Special Agent Montoya testified, based on personal knowledge, regarding the pornographic nature of the files identified. In testimony that went to the receipt element, Task Force Officer Kajita stated that he examined the SSD [TT.2:93] and identified on the SSD a folder named "Freenet" [TT.2:112] and within that folder a subfolder called "Downloads" [TT.2:113]. He further testified that approximately 116 files had the file path /desktop/Freenet/downloads/ [TT.2:114-115] and

---

[7] As the Court properly instructed the jury at the close of evidence, the elements of Count Two are (1) the defendant knowingly received child pornography material; (2) that the material contained at least one image or video of child pornography; (3) that the defendant knew that the material contained an image or video of child pornography; and (4) that the image or video of child pornography or the device on which it was stored had been mailed, shipped, or moved in interstate or foreign commerce. [TT.3:77].

7

that the file path indicated that the files had been downloaded from Freenet [TT.2:115].  As to content of the SSD, which goes to elements two and three of Count Two, Special Agent Montoya testified to his review of files and their nature.  Specifically, he testified that he identified and viewed at least a portion of the over 620 videos identified on the SSD [TT.2:36].  Of those videos, Special Agent Montoya testified that he found that over 420 contained child pornography. [TT.2:37].  He described the content of those videos as "adult men engaging in oral, anal, and vaginal sex with mostly female minor children . . . female children masturbating . . . [and] female children having sex with other children" [TT.2:36] or children "displaying their genital to the camera" [TT.2:37-38].  As outlined in the government's motion in limine for proposed method for display of child pornography (which defendant did not oppose), [ECF No. 80], Special Agent Montoya described, and the government showed the jury, very brief snippets from six of the over 420 videos that comprised defendant's child pornography collection on the SSD.  [TT.2:39-44]. Notably, none of the videos described and shown to the jury were included in the lead discussed by Special Agent Montoya briefly at the beginning of his testimony for background purposes. Finally, with respect to the jurisdictional element, Special Agent Montoya testified that the Apple laptop and cell phone were manufactured in China [TT.2:29, 55] and that the SSD was manufactured in Korea [TT.2:30].

As in his Rule 29 motion, Defendant seems to suggest that the circumstantial evidence against him renders the final verdict invalid.  The government turns again, as it did in its Opposition to Defendant's Rule 29 motion, to the following basic tenet of criminal law: "[B]oth types of proof [direct and circumstantial] can adequately ground a conviction." *United States v. Oliver*, 19 F.4th 512, 516 (1st Cir. 2021) (quoting *United States v. Ortiz,* 966 F.2d 707, 711 (1st Cir. 1992)).  And here there was an abundance of circumstantial evidence that supported conviction on Count Two,

8

*i.e.*, that proved, beyond a reasonable doubt, that Defendant received child pornography from Freenet. In addition to the first-hand knowledge of FBI Task Force Officer Yu Kajita and Special Agent Bryce Montoya aforementioned, they testified that FBI found pornographic files on defendant's encrypted solid-state drive ("SSD"), accessible only with a user-set password. [TT.2:23–40, 87, 95–109]. The SSD password referenced a Nissan motor vehicle engine. [TT.2:83–84]. Minor 1's mother testified defendant was a car enthusiast [TT.2:153], as did defendant [TT.3:54] and his wife [TT.2:186]. The record is devoid of any evidence that anyone else knew the password to the SSD; indeed, Defendant's wife testified that she did not know the SSD had a password [TT.2:188]. Moreover, the files on the SSD were in a user profile associated with defendant's email: pwbaxter@gmail.com. [TT.2:20]. There was also no evidence that anyone else created or accessed that user profile. Finally, Defendant testified that he purchased and used the encrypted SSD [TT.3:13] and that he was the only who backed up files from the Apple laptop to the SSD [TT.3:13-14]. When taken in the light most favorable to the verdict, all of this evidence, and the rational inferences that may be drawn therefrom, support the jury's guilty verdict.

Special Agent Montoya's brief background testimony that the FBI determined that a computer user at the Baxter residence had attempted to download child pornography from Freenet provided no substantive information that was not provided by the testimony of Task Force Officer Kajita, who testified from personal knowledge derived from his examination of Defendant's seized devices that on numerous occasions a computer user at the Baxter residence had downloaded child pornography from Freenet. Special Agent Montoya's testimony on this point was merely to explain how and why the FBI sought a search warrant for the Baxter residence.

Assuming arguendo that Defendant could establish a clear and obvious error, Defendant cannot meet the "high hurdle" of showing that the challenged testimony "affected the defendant's substantial rights" and " seriously impaired the fairness, integrity, or public reputation of judicial proceedings."

### b. Hearsay to satisfy jurisdictional element

Defendant also argues that Special Agent Montoya's testimony as to place of manufacture of the encrypted SSD was impermissible and without such testimony, the jury would have found that jurisdictional element of Counts One and Two unproven. [Def. Mem. at 15-16]. During trial, defense counsel neither objected to the line of questioning regarding the SSD's place of manufacture, nor did they ask any follow up questions on the matter. The burden is on Defendant to show plain error and he has not been able to satisfy that burden with this challenge.

As the Court instructed the jury properly, Count Two requires proof that the image or video of child pornography or the device on which it was stored had been mailed, shipped, or moved in interstate or foreign commerce. *See* 18 U.S.C. §§ 2252A(a)(2); [TT.3:77]. During trial, Special Agent Montoya testified that the Apple laptop on which the child pornography files were transferred was manufactured in China [TT.2:29, 55] and that the SSD to which they were transferred from the Apple laptop was manufactured in Korea [TT.2:30]. Thus, the government established that the devices on which the files were stored had moved in interstate commerce.

Without any basis, Defendant assumes in his brief that Special Agent Montoya's research regarding the encrypted SSD's place of manufacture was internet-based and as such, is impermissible. As he testified, Special Agent Montoya has been an FBI Special Agent since 2018 and is member of  FBI Boston Child Exploitation Human Trafficking Task Force. [TT.2:17]. In that role, he "mainly investigate[s] the possession, receipt, distribution, and production of child

pornography" [TT.2:17] and has worked at least 100 child exploitation cases in that role [TT.2:17-18]. He also testified that prior to his current position, Special Agent Montoya was employed as an investigative specialist at the FBI for approximately years. [TT.2:18]. This line of questioning established that Special Agent Montoya is an experienced agent who has a wealth of resources from which he draws in his investigations such as this one. Therefore, it is questionable to assume, particularly without any indication otherwise, that Special Agent Montoya based any of his testimony purely on unreliable research.

### 2. Meritless motion to suppress

Finally, Defendant argues that his prior motion to suppress was denied erroneously. [Def. Mem. at 19]. He reasons that the finding of probable cause was predicated upon a "'formal mathematical formula,' from an unknown source, that the affiant did not disclose to the Court." [Def. Mem. at 20]. They further reasoned, in sum, that the "mere fact that a certain IP address attempted to download a part of a file containing child pornography" "do[] not prove an attempt to download child pornography, as opposed to a request by another user that was automatically forwarded via the user's peer network." [Def. Mem. at 20]. This Court has already rejected this argument in denying Defendant's earlier motion to suppress. [ECF No. 51].

On September 4, 2023, Defendant moved to suppress evidence seized during the search of his home, on the grounds that the search violated the Fourth Amendment to the United States Constitution. [ECF No. 46]. In that motion, Defendant argued, among other things, that the search warrant affidavit did not establish that the user at the IP address connected to Defendant's residence knowingly requested materials containing child pornography because it did not (1) explain what the unique Freenet keys were, (2) say how investigators knew the requestor believed the key corresponded to a file containing child pornography, or (3) establish that investigators knew that the IP address made the original request for the files, and not some other Freenet user.

11

[ECF No. 46 at 20]  In its opposition, the government argued that Special Agent Montoya's affidavit established that the Freenet user at the IP address at Defendant's residence knowingly requested or received child pornography because it was common sense that someone who is making a specific request knows what she or he is requesting.  [ECF No. 50 at 16].  And, in the unlikely event that an unsuspecting Freenet user was surprised to receive child pornography, she or he would make certain that future requests for files were crafted in such a way to avoid receiving child pornography, rather than request child pornography files on three separate occasions.  [ECF No. 50 at 16].

On October 30, 2023, the Court denied Defendant's motion.  [ECF No. 51].  The Court held that that affidavit "provided a sufficient description of the investigation and Freenet's functionality to determine based on 'the totality of the circumstances' that there was a 'fair probability' that the user at the IP Address was knowingly seeking out and receiving child pornography."  Id. at 10.  The Court also looked to the good faith exception in denying the Defendant's motion.  [ECF No. 51 at 11].  It noted that "under the good faith exception, even if a warrant is defective for lack of probable cause, suppression is inappropriate where an officer's good faith reliance on a warrant is reasonable."  [ECF No. 51 at 11 (citing *United States v. Leon*, 468 U.S. 897, 922 (1984))].

Defendant's already-rejected argument remains unpersuasive, and Defendant provides no basis for this Court to second-guess its reasoning.  In his current motion, Defendant questions the "mathematical formula" applied to determine that the user at the IP address of Defendant's home was requesting child pornography from Freenet.  However, this Court has already considered whether the affidavit's discussion of the investigation and Freenet's functionality was sufficient to establish probable cause that the user at the IP address was requesting child pornography on three

12

occasions.  And, it found, based on "'the totality circumstances' there was 'fair probability' that the user at the IP Address was knowingly seeking out and receiving child pornography." [ECF No. 51 at 10].  Also, Defendant acknowledges that other courts, including one in this district, have rejected similar arguments.  [Def. Mot. at 23 n.5].

In *U.S. v. Daigle,* a child pornography case that also originated with a Freenet investigation into users trafficking in child pornography, the defendant sought to suppress evidence gathered during the execution of a search warrant of his residence.  Specifically, he asserted that the search warrant affidavit failed to establish whether he was ultimately successful in downloading, and thus obtaining, the files containing child pornography on Freenet and that the affidavit failed to describe evidence that the defendant intended to access child pornography because investigators did not determine how the keys to the files of interest were obtained on Freenet.  The court found the defendant's arguments unavailing, reasoning that that the facts gathered in the Freenet investigation and surrounding circumstances enabled investigators reasonably to infer that evidence related to child pornography would be found at defendant's residence.  *United States v. Daigle*, No. 22-10035-NMG, 2024 U.S. Dist. LEXIS 74542, at *5-6 (D. Mass. Apr. 24, 2024).  Defendant articulates no reason that this Court should deviate from either its own ruling or that of *Daigle*.  Therefore, Defendant again will fail meet the "high hurdle" of plain error and therefore is unlikely to succeed on appeal.

    **B.**  **There Are No Exceptional Circumstances.**

Even if Defendant could meet each of the requirements of § 3143(b)(1)(B)—and for the reasons set forth above, he cannot—his request for release would still fail because he has not clearly shown exceptional reasons for his release under § 3145(c).  Among the reasons Defendant claims are sufficiently exceptional to allow him release pending sentencing are: (1) his compliance

13

with pre-trial and pre-sentencing release conditions; (2) his lack of any prior criminal behavior; (3) his two young children; (4) and the absence of evidence that he "distributed child pornography or engaged in any assaultive conduct." [Def. Mem. at 3].

The reasons Defendant identifies are *un*exceptional. "It is not exceptional to expect every defendant to ... obey the court's order concerning pretrial conditions of release." *United States v. Little*, 485 F.3d 1210, 1211 (8th Cir.2007); *see also United States v. Mahoney*, 627 F.3d 705 (8th Cir.2010) ("It is well settled that compliance with the terms of pretrial release is commendable but does not justify release under section 3145(c)."). While Defendant does indeed lack criminal history, the three crimes for which he has been convicted are very serious. It is not exceptional that Defendant did not redistribute the child pornography he received and refrained from engaging in assaultive conduct. Congress determined that defendants convicted of *any* offense under Chapter 110 are subject to mandatory detention—regardless of whether those offenses involve distribution or assaultive conduct. 18 U.S.C. § 3142(f)(1)(B); *id.* § 3156(a)(4)(C). This factor therefore does nothing "to distinguish the defendant's case from those of [other defendants] subject to mandatory detention." *United States v. Salome*, 870 F. Supp. 648, 653 (W.D. Pa. 1994) (citing *United States v. Herrera–Soto*, 961 F.2d 645, 646 (7th Cir.1992)); *see also United States v. Farlow*, 824 F. Supp. 2d 189, 197 (D. Me. 2011) (finding that the fact that defendant was convicted of child pornography offenses weighed against his "exceptional circumstances" analysis). Finally, the fact that Defendant has two small children makes his conduct all the more disturbing and concerning. Defendant has been convicted of sexually exploiting a then seven-year-old child when she was in his home, bathing and playing with Defendant's own minor children. This supreme violation of trust comes in addition to his possessing and receiving hundreds of video files depicting the sexual abuse and lascivious exhibition of the genitals of other minor children (many in the same age

14

bracket as his own children).  Further, Defendant does not claim that his children's well-being relies on him.  The children currently live with their mother, who is gainfully employed, and they have several local relatives, including Defendant's parents.  And "while 'incarceration regrettably inflicts family hardship on many, if not most, defendants,' family hardships will not ordinarily constitute exceptional reasons for release pending sentencing."  *United States v. Smith*, 34 F. Supp. 3d 541, 554 (W.D. Pa. 2014) (quoting and citing *United States v. Burnett*, 76 F. Supp. 2d 846, 849 (E.D. Tenn. 1999));  see also *United States v. Schimley*, No. 1:08-cr-510, 2010 U.S. Dist. LEXIS 42848, 2010 WL 1796337, at *3 (N.D. Ohio May 3, 2010) (explaining the defendant's desire to be with his family and anticipated absence from his daughter's wedding were "purely personal considerations that do not constitute exceptional reasons justifying release").  As the government wrote in its sentencing memo, Defendant's children and wife are also victims of his crime and their lives are forever changed by his actions.  This Court has already allowed, over the government's objection, Defendant to remain in the community pending sentencing.  There is no legal basis for Defendant to continue at liberty pending an appeal.

***remainder of page intentionally blank***

## CONCLUSION

For the foregoing reasons, Defendant is not entitled to a stay pending appeal, as there is no "substantial question" of law or fact that he might raise on appeal that, if successful, would result in a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process.

                                              Respectfully submitted,

                                              JOSHUA S. LEVY
                                              United States Attorney

                              By:    /s/ *Jessica L. Soto*
                                              David G. Tobin
                                              Jessica L. Soto
                                              Assistant U.S. Attorneys

Dated: January 7, 2025

## Certificate of Service

I, Jessica L. Soto, hereby certify that the foregoing document filed through the ECF system will be sent electronically to counsel for the defendant.

                              By:    /s/ *Jessica L. Soto*
                                              Jessica L. Soto
                                              Assistant U.S. Attorney