UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


                                    )
UNITED STATES OF AMERICA,           )
                                    )           Criminal Action
            Plaintiff,              )           No. 23-10001-ADB
                                    )
v.                                  )
                                    )
PATRICK BAXTER,                     )
                                    )
            Defendant.              )
                                    )



               * * * R E D A C T E D * * *


        BEFORE THE HONORABLE ALLISON D. BURROUGHS
             UNITED STATES DISTRICT JUDGE


                Jury Trial Day 1

                October 7, 2024


        John J. Moakley United States Courthouse
                 Courtroom No. 17
                 One Courthouse Way
            Boston, Massachusetts  02210




                        Kelly Mortellite, RPR, RMR, CRR
                        Official Court Reporter
                        One Courthouse Way, Room 3200
                        Boston, Massachusetts  02210
                        mortellite@gmail.com

```
 1   APPEARANCES:

 2   On Behalf of the Government:
     David G. Tobin
 3   Jessica L. Soto
     United States Attorney's Office
 4   1 Courthouse Way
     Suite 9200
 5   Boston, MA 02210
     617-748-3392
 6   david.tobin@usdoj.gov

 7   On Behalf of the Defendant:
     Joseph B. Simons
 8   Natalie I. Sreca
     Simons Law Office
 9   10 Post Office Square
     Suite 800
10   Boston, MA 02109
     617-544-9000
11   joe@jbsimonslaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<pre>
       1                    P R O C E E D I N G S
       2            THE COURT:  Do you want to take care of the pending
       3     odds and ends before the jury comes up?
       4            MR. TOBIN:  Of course.
       5            THE COURT:  So I also have to get onto my computer at
       6     some point.
       7            So Mr. Simons, the government had asked that I change
       8     the production instruction to reference sexual exploitation of
       9     children.
09:06 10            MR. SIMONS:  Yes.
      11            THE COURT:  I was not going to do that, but then you
      12     said there's no objection to it, so I guess I will do it.
      13            MR. SIMONS:  That's right, there's no objection.
      14            THE COURT:  Okay.  That is -- is that page 6 of the
      15     preliminary instructions?  So page 6 of the preliminary
      16     instructions, right?
      17            MS. SOTO:  I believe so, Your Honor, yes.
      18            THE COURT:  Okay.  So I took out the witnesses that
      19     none of you are calling off the list.  So that's done.
09:07 20            MR. SIMONS:  Sorry, Your Honor.  Just on that note, so
      21     it's the three witnesses from the government and then it's
      22     Vanessa Baxter.
      23            THE COURT:  On the voir dire?
      24            MR. SIMONS:  Just on the witnesses that you're going
      25     to reference.
</pre>

1          THE COURT:  So the witness list has on it right now

2     Baxter, Montoya, Kajiti and ███████.

3          MR. SIMONS:  Okay.

4          THE COURT:  I don't have Mr. Baxter on it because he

5     can choose to testify or not.  But the whole point of going

6     through the witness list is to make sure that none of the

7     jurors know them, and they will already have been asked if they

8     know him.

9          MR. SIMONS:  Okay.  Thank you, Your Honor.

09:08 10          THE COURT:  Okay.  So the government has submitted a

11     motion in limine to admit business records without a keeper of

12     records.  That seems to be appropriate, but any objection to

13     it?

14          MR. SIMONS:  I had some time to look into it.  We

15     didn't file a formal objection, but for the record I would

16     object and ask that they be required to bring in a keeper of

17     records.

18          THE COURT:  Well, they're either complying with the

19     rule or they're not in compliance with the rule, or you have

09:08 20     something that you want to cross-examine them on, in which case

21     I can overlook the rule.  So what are you looking for?

22          MR. SIMONS:  Well, I guess the case law does suggest

23     that they're complying with the rules.  I did look at the

24     affidavits.  I just think that without having somebody come in

25     and testify about how things are set up, for example, how a

gmail account is set up and what it means and how somebody
would have to authenticate who was actually the person behind
the computer, who is the --

THE COURT:  Well, if you have cross-examination that
you want to -- I mean, the records come in.  That is different
than you having additional cross-examination for the witness.

All right.  So he's not objecting to the documents, to
the authentication, but he has cross-examination of the
witness.  So can you get somebody in?

MR. TOBIN:  I don't know, Your Honor.  There's only
three witnesses in this case.  The testimony will be over
tomorrow.  I believe that we have fulfilled the requirements of
the rule.  Also, I will point out that the information that
Mr. Simons just mentioned, the keeper of the records, would
have no knowledge of that.  The keeper of the records could be
a secretarial type -- and I don't mean that --

THE COURT:  That may be true.

MR. TOBIN:  So if he wants to get into that, it's
incumbent upon him or he certainly has the ability to call a
witness to ask about that.  He can certainly cross-examine the
technical experts on that.  Ordinarily I'd say we're the
government, sure, we can get anybody in, but I think on a day's
notice and I just don't think there's any need to, given the
rule and our compliance with it.

THE COURT:  So they're probably right that the -- see

1   what you can do with the technical experts, and then we can see

2   who they -- I mean, if they had a keeper of the records, it's

3   probably not somebody that could give you that information

4   anyway.  And all they're going to do is move in the records.

5   So if you want to put on somebody else to go through them, feel

6   free.

7        All right.  And then the government also has a motion

8   in limine for the proposed method for display of the child

9   pornography at trial.  To the government, we had a judges'

09:11 10  meeting this week -- last week.  They're always torturous but

11  we had one.  And I was talking about this case a little bit,

12  and Judge Casper was saying that when she did one of these

13  cases she thought that the time limits for having the documents

14  up in front of the jurors seemed reasonable, but then once they

15  were up in front of the jurors, she realized it was way too

16  long.  So can we be careful about how long those are up?  Once

17  everybody's gotten a good look, take it down.  Okay?

18        MR. TOBIN:  Yes, Your Honor.  We have tried to limit

19  it to a matter of less than a handful of seconds.  If there's a

09:12 20  problem, we can cut even that, if necessary.  I understand.  We

21  don't want to inflict this on the jury any more than it has to

22  be.

23        THE COURT:  Well, Judge Casper is saying they had

24  images up for 20 seconds, and 20 seconds didn't seem like a

25  lot, and then like 19, 18...  So I'm not saying you're

1    intending on displaying them too long, but let's just be

2    mindful of how long things are up and take them down once

3    everybody's had a chance to look at it.

4            MR. TOBIN:  Of course.

5            THE COURT:  You were estimating, you were sort of

6    under a minute before the videos.  Sort of one- to two-minute

7    range?  How long do you think the total exposure is going to

8    be?

9            MR. TOBIN:  The snippets that we're showing are no

09:13 10    more than eight seconds.  Some may be shorter than that.

11            THE COURT:  You're showing how many, six?

12            MR. TOBIN:  Six, yes.  Your memory is excellent.

13            THE COURT:  So they have a motion in limine for

14    proposed method of displaying the materials.  Other than my

15    caution of anything lingering up there, are you okay with that?

16    It seems reasonable.

17            MR. SIMONS:  Yes, Your Honor.  We've viewed those

18    sections.

19            THE COURT:  Okay.  And then the government has also

09:13 20    submitted, it's got an A on the top, it's the description of

21    the child pornography.  What is the intention, what are we

22    doing with that?

23            MR. TOBIN:  Well, Your Honor, because these videos,

24    tiny, tiny snippets that we're showing are longer, and the jury

25    will certainly have them in their totality, all 200-and-so-many

of them in the jury room, this is a description of what the
full video is so that we don't have to show it to them.  It
tells the time and it describes the age of the child, which
they can confirm in the five seconds perhaps they see it.

THE COURT:  Is it a stipulation?  Is it an exhibit?
What is it?

MR. TOBIN:  No.  It would be essentially a
stipulation.  We're not asking that that go back to the jury,
if that's what you're asking.

THE COURT:  Okay.  So are you intending that I read
this to them?

MS. SOTO:  No, goodness, no.  The intent was to have
our first witness, Special Agent Montoya, before we throw a
snippet or show a snippet, he will read the description, we'll
show the snippet, he'll read the description, we'll show the
snippet.

THE COURT:  Okay.  And you're all right with that?

MR. SIMONS:  Yes, that's my understanding, and we've
had discussions about that.

THE COURT:  And I just want to circle back to
something you said.  You anticipate the testimony only going
until tomorrow?

MR. TOBIN:  I do, Your Honor.  May I ask, if we pick a
jury today and do openings today, will you begin evidence
today, or will you put that off until the morning?

1          THE COURT:  No.  I always put it off until tomorrow.

2          MR. TOBIN:  Excellent.  We have three witnesses.  I

3     can't imagine it would take more than a full day.

4          THE COURT:  Not that I want to overburden you with my

5     personal problems, but my husband is traveling this week and he

6     made the kids a dentist appointment.  The jurors come in super

7     early on Monday.  So if I need to -- really, I have to make it

8     a short day.  I have to call it at about -- we can't go past

9     like 2:30 or quarter-of-three, and that's already a pretty long

09:15 10   day for them.  So if there is time for both of you to open,

11    we'll do it, but I don't have any problem waiting until

12    tomorrow to open.

13         MR. TOBIN:  Nor do we, Judge.

14         THE COURT:  Okay.  What I'd really like to do today is

15    get a jury picked and get through the preliminary instructions.

16         MR. TOBIN:  Again, if we don't do openings today, we

17    could start them tomorrow morning at 9:00.  I still believe

18    that we would be through with our three witnesses.  I can't

19    tell you how long the cross-examination is going to be, but

09:16 20   three witnesses, one of whom is a very short witness, I have

21    complete confidence we'll be through with evidence even if we

22    do openings tomorrow.

23         THE COURT:  So tomorrow, I generally sit a full day,

24    so tomorrow we'd start at 9:30 and go until about 3:30, okay?

25    I'm not going to ask you -- do you have any present intention

1  on your client?

2        MR. SIMONS:  I can tell you that I do believe we're

3  going to call Mrs. Baxter, I think there's a very good chance

4  of that.  As far as Mr. Baxter, he would be our last witness if

5  we call him.  So if I could report back to the court maybe

6  tomorrow at some point, I'm happy to do that.

7        THE COURT:  Okay.  Since this trial is going to be so

8  short, let me just talk to him now.

9        MR. SIMONS:  Sure.

09:16 10        THE COURT:  Mr. Baxter, you have a right to testify.

11  You don't have to testify, but you have the right to testify.

12  He can sit, it's fine, it's fine.  You have a right to testify.

13  Do you understand you have a right to testify?

14        THE DEFENDANT:  Yes, I do.

15        THE COURT:  And it will be your choice whether you

16  testify or you don't testify?

17        THE DEFENDANT:  I understand, Your Honor.

18        THE COURT:  And if you testify, you'll be subject to

19  cross-examination.

09:17 20        THE DEFENDANT:  I understand, Your Honor.

21        THE COURT:  All right.  So we'll go back over this one

22  more time.  If you decide not to testify, I'll make a record of

23  it then because that's normally how I do it.  But you

24  understand the right.  Do you have any questions about your

25  right to testify or how it would work?

1        THE DEFENDANT:  I do not, Your Honor.

2        THE COURT:  Okay.

3        MR. SIMONS:  Just for the record, I appreciate the

4   court's advising him.  I've of course prepared with him and

5   advised him as well.

6        THE COURT:  I'm quite confident that you have.  This

7   is the once-burned-twice-shy approach to judging.

8        MR. SIMONS:  I understand, Your Honor.

9        THE COURT:  I didn't realize this was going to go

09:17 10   quite so quickly, but fortuitously enough I have a draft of the

11   jury instructions done.  I start a trial this Monday, next

12   Monday, and the Monday after, so I'm trying to like -- anyway,

13   I will email that to you.  I just have a couple of edits to

14   make myself.  I'll email them to you this morning.

15        I usually write them myself and then have my law

16   clerks go over them, so you're going to get them pre-law clerk,

17   so have at it.  And there are some that I'm kind of reserving

18   on, like you submitted a question on witness preparation.  If

19   he does a lot of cross-examination on witness preparation,

09:18 20   we'll include it, but if he doesn't, I won't.  So some of them

21   are sort of in abeyance, and some of them are in there and can

22   come out.

23        There's an instruction on redaction.  I mean, I tried

24   to make my best guess.  I did not -- I figured he wasn't going

25   to do a lot on witness preparation, but if I'm wrong about

1    that, we'll insert it, and I figured there were going to be

2    redactions.  But it's a jigsaw puzzle with pieces that can come

3    in or out depending on the how the evidence goes.  So keep that

4    in mind when you're looking at it.

5           There's an instruction on recordings because I thought

6    you said the video had some audio.

7           MR. TOBIN:  It does, Your Honor.

8           THE COURT:  There's no instruction on -- I mean, I

9    don't know if you want some kind of instruction on photographs

09:19 10    or the fact that you want me to tell them that they're going to

11    have all the exhibits back there with them, including exhibits

12    that they haven't seen, so it will take some fine-tuning, but

13    we'll get you a draft in the next hour or so.

14           MR. TOBIN:  Thank you, Your Honor.

15           THE COURT:  Unlaw-clerked.  So you'll see it in its

16    native.

17           MS. SOTO:  Your Honor, if I may ask a question about

18    the instructions?

19           THE COURT:  Yes.

09:19 20           MS. SOTO:  Will there be the specific unanimity

21    instruction?

22           THE COURT:  Yes.  That's one of the things I need to

23    add this morning.  My laptop doesn't give me a full screen, so

24    I can't get to the commands at the bottom when I'm at home.  So

25    cutting and pasting is a challenge.  So I have some things I

```
 1    need to muck around with.  I'll try to do it this morning and

 2    get it to you by lunchtime.

 3              MS. SOTO:  Thank you, Your Honor.

 4              THE COURT:  They didn't object to the unanimity

 5    instruction.

 6              MR. SIMONS:  No.  We assented, Your Honor.

 7              THE COURT:  Have you guys submitted verdict forms,

 8    draft verdict forms?

 9              MR. TOBIN:  No, but we certainly can and will.

10              THE COURT:  Can you do that?  Because I think that's

11    where the rubber meets the road on that instruction, like how

12    you want it to --

13              MR. TOBIN:  Thank you.

14              THE COURT:  All right.  I'm expecting, we're number

15    two on a jury, so probably quarter-of-ten, Karen?

16              COURTROOM CLERK:  Probably, yeah.

17              THE COURT:  So if there's nothing else and you want to

18    go about your business, you can.  I'll sit here and work on the

19    instructions.  I didn't realize this was going to go quite so

20    quickly.

21              (Recess, 9:20 a.m. - 9:43 a.m.)

22              THE COURT:  Since we're closing the evidence tomorrow,

23    it's going to be shorter than I thought.  Is it okay to go with

24    two alternates instead of three?

25              MR. TOBIN:  Yes, Your Honor.  The government has no
```

```
 1    problem with that.

 2            MR. SIMONS:  Sure.

 3            THE COURT:  We'll stop when we get 32 jurors, okay.

 4    We'll stop when we get 32 today.

 5            Mr. Tobin, as long as I have you, this is in your --

 6    well, let me go through these one at a time, some of my

 7    questions as long as I have you here.  I left in an implicit

 8    bias instruction.  I'm going to leave that to you.  Do you want

 9    that?

09:44 10            MR. SIMONS:  Yes, please, Your Honor.

11            THE COURT:  Redactions or no, do we not know?

12            MR. TOBIN:  There are some redactions, it's Social

13    Security numbers and things of that nature.  Very minor,

14    though, right?  Minor redactions.

15            THE COURT:  That's fine.  I just wanted to -- law

16    enforcement witness or witnesses, how many do we have?

17            MR. TOBIN:  Two.

18            THE COURT:  Okay.  Experts, one or two?

19            MR. TOBIN:  We really don't consider Kajita an expert,

09:44 20    but he is going to be giving technical information.  That would

21    be one I suppose.

22            THE COURT:  All right.  I'll just fudge it.  We don't

23    need to call them experts.  Let me just make a note, it won't

24    be singular or plural, leave that vague.

25            MR. TOBIN:  All right.
```

|     |     |
| --- | --- |
| 1 | THE COURT:  Are there transcripts on the sound |
| 2 | recordings or no? |
| 3 | MR. TOBIN:  No, very brief, judge, pretty clear I |
| 4 | think. |
| 5 | THE COURT:  I'm referring to the indictment throughout |
| 6 | the instructions as "the indictment," not "the superseding |
| 7 | indictment." |
| 8 | MR. TOBIN:  That's fine, Your Honor. |
| 9 | THE COURT:  Okay.  All right.  On Count Three, you've |

09:45 10    charged, for the third element you've charged A, B and C, and
11    they're listed as "or."
12              MR. TOBIN:  May we have just a moment, Your Honor?
13              THE COURT:  I'd give you a page number, but my page
14    number is not going to be yours.
15              MR. TOBIN:  You're referring to the third element,
16    Your Honor?
17              THE COURT:  Yes.  Do you know which theory?  Are you
18    proceeding under -- this is a very confusing charge the way it
19    is, right?  I'd rather go on the theory that you're --

09:46 20              MR. TOBIN:  No, I understand, and not make it so
21    cluttered or cumbersome.
22              THE COURT:  I mean, I know they're all in the statute,
23    but if some of them are not relevant to the way you're going to
24    prove the case, let's take them out.  If you need them all,
25    that's fine.  If you want to think about it, that's fine too.

```
 1              MR. TOBIN:  I believe we're going under B, but I would

 2       just ask to give us until the next break.

 3              THE COURT:  That's fine.

 4              MR. TOBIN:  I believe B is the theory under which

 5       we're going.  The question is do we want you to give one or the

 6       other of A or C.  I don't think so, but I reserve.

 7              THE COURT:  Let me know.

 8              MR. TOBIN:  Of course.

 9              THE COURT:  Because if they're not relevant, I would

09:47 10       like to take them out.

11              MR. TOBIN:  I would like you to take them out as well.

12              THE COURT:  If you're proceeding on any of them, I'm

13       happy leave them in, but if you're not, let's get them out.

14              Do I have any others here?  In the interstate commerce

15       instruction, you use the word "receptacle."  I have no idea

16       what we're talking about here.  "This element may also be

17       satisfied by showing that the receptacle for the possessed

18       child pornography was manufactured outside of" --

19              MR. TOBIN:  "Device" is probably a better word.

09:47 20       THE COURT:  "By showing that the device" --

21              MR. TOBIN:  "Device."

22              THE COURT:  "The device on which it was" --

23              MR. TOBIN:  Say again, please.

24              THE COURT:  If we say, "This element may also be

25       satisfied by showing that the device for the possessed child
```

1   pornography," I'm not sure that's clear either.

2           MR. TOBIN:  "The device on which child pornography was

3   stored," I think is the most, the clearest.

4           THE COURT:  Okay.  The defense can, you can wordsmith

5   these too.  I'm just trying to answer some of my own questions

6   here.

7           MR. SIMONS:  Sure.

8           THE COURT:  You'll see at the end there's some loose

9   instructions, preparing witnesses, failure to call witnesses,

09:48 10   and use of a conjunctive/disjunctive that I kind of have on

11   reserve.  You'll have these shortly.  Thank you.

12           MR. TOBIN:  Thank you.

13           MR. SIMONS:  Your Honor, if we could have a couple

14   minutes, could I address one other issue?

15           THE COURT:  Sure.

16           MR. SIMONS:  I just let the government know that we

17   want to object to the number of files going back to the jury

18   for the actual alleged child pornography.  I think there's

19   420-some-odd videos that the government intends to introduce,

09:49 20   not to show during the trial but to send back to the jury.

21           I would suggest that it's so much more prejudicial

22   than probative.  Obviously, they don't have to show the jury a

23   certain number of files, and I think that 420-something

24   accessible to the jury is so excessive.  Even as we're talking

25   about showing very short clips, this is material that can have

1    a big impact on somebody.

2         THE COURT:  Like, if we have a drug dealer that has

3    100 kilograms of cocaine, we should only say it's 50 because

4    100 is too prejudicial?

5         MR. SIMONS:  Well, I'm not suggesting we say it's

6    less.  I think the government can, under what I'm suggesting,

7    the government can certainly ask its witnesses.  And I think

8    there's even, if I'm thinking correctly, one of the exhibits is

9    basically showing the number of child pornography files.  But

09:49 10   just to actually send them back with all of the files

11   accessible to the jury is going to be so impressionable on them

12   I think and way over what the government needs to prove.

13         THE COURT:  Well, I think that they're entitled to

14   have those go back, and I don't want to be the one that picks

15   and chooses which ones satisfy their burden of proof and which

16   ones don't.  But I will, if you want, give them an instruction

17   saying that, you know, once they've found it, they don't have

18   to look at them all.  Right?  Because the proof doesn't go to

19   the number of them, right?  The proof just -- so one of the

09:50 20   400-whatever.

21         MR. SIMONS:  That's true, and that's basically my

22   position is that I think it's overkill to have so many.  So

23   assuming the court is overruling my objection, but I want to

24   make sure the objection is preserved.  But subject to that

25   decision to overrule my objection, I would ask for an

1    instruction to that.

2           THE COURT:  I'll craft an instruction saying that, in

3    terms of proving it, once they have found it proven, they don't

4    have to look at any other videos.  You can help me out with

5    that because I don't want to say once they've found it proven,

6    as if that is inevitable.  So I'll muck around with that.

7    Unless you have case law on it, but I don't know of any case

8    law that says -- I mean, the good stuff is always prejudicial,

9    right?

09:51 10           MR. SIMONS:  That's true.

11           THE COURT:  And those images go right to the heart of

12    the offense, so it's hard to say that the prejudice outweighs

13    the probative value of it.

14           Does the government have a different view of that?

15           MR. TOBIN:  No.  We agree completely.  The only reason

16    there is 427 videos is because there were 427 videos on the

17    solid state drive.  Also, I agree, I don't want to be in a

18    position to be able to pick and choose.  That's the demand of

19    the jury.

09:51 20           Just one point, Judge, though, I think whatever you

21    craft, and I'm sure you'll let us see it, should suggest to

22    them that they actually even have to view the child pornography

23    in the deliberation room.  They can certainly go on their

24    memory.  If they want to look at 427, they're certainly free to

25    do so, but I don't want the court to be telling them --

1    obviously the government has met its burden, met all the
2    elements beyond a reasonable doubt, but I don't think they
3    necessarily have to look at the child pornography if they have
4    a recollection of what it was and they can discuss it.  So it's
5    maybe a very minor point.
6            THE COURT:  That's fine.  I take your point.  You're
7    going to have to be careful, Mr. Tobin, on Count Three.
8    Because you've asked for the unanimity instruction on which
9    video or which images have been proven.
09:52 10            MR. TOBIN:  That's a good point.
11            THE COURT:  So you're going to have to thread the
12    needle on that.
13            MR. TOBIN:  No.  I understand.  Again, maybe it's
14    better to talk once we have your instruction so we can look at
15    it, but I understand the point.  Thank you.
16            THE COURT:  Okay.  All right.  So the jury is still
17    not here.  You guys should stay close, but at ease.
18            For everybody that's sitting in a seat, I am virtually
19    certain that this courtroom is going to be filled with jurors,
09:53 20    so I'm not sure that you'll be able to sit on the benches that
21    you are.  You're all welcome to stay in the courtroom, but you
22    may have to stand in the back.  The people that are with me,
23    you guys can move up here if you want.
24            Mr. Simons, it looks like he has three people with
25    him?

```
 1              MR. SIMONS:  Yes, Your Honor.
 2              THE COURT:  I don't want to move them out of the
 3      courtroom, but I know I'm going to need the benches.  Does
 4      anybody have any objection to them coming in front of the bar
 5      and taking those three seats until we get rid of some of the
 6      jurors?
 7              MS. SOTO:  No objection from the government.
 8              MR. SIMONS:  No objection from the defense.  I did
 9      give them a heads-up that the court may move them around in the
09:53 10  courtroom.
11              THE COURT:  I'm not going to close the courtroom.
12      They're welcome to stay, but I know we're going to need every
13      bench.
14              MR. SIMONS:  Okay.  Should they maybe wait until the
15      jury comes in?
16              THE COURT:  That's fine.
17              MR. SIMONS:  Okay.  I'll make sure they understand.
18              THE COURT:  You see the seats I'm talking about?
19              MR. SIMONS:  I do, yes, Your Honor.
09:54 20        THE COURT:  Great.
21              MR. TOBIN:  Your Honor, I'm sorry, I was looking at
22      the voir dire, and I think there's just a misphrase.  "He has
23      pleaded not guilty to the charges," yada, yada.  "It will be up
24      to you, the jury, to determine if the government has proven
25      either or both of the charges."  There's actually three.
```

1           THE COURT:  I may have already corrected that.  Where

2     are you?

3           MR. TOBIN:  I'm on the first page, last line or two.

4           THE COURT:  Yeah, I got that.

5           (Recess, 10:09 a.m. - 10:21 a.m.)

6           (Jury pool enters the courtroom.)

7           THE COURT:  Good morning, everybody.  Full house

8     today.  Thank you, all.  It's always kind of nice on a Monday

9     when it's rainy because I don't really feel like I'm keeping

10:21 10     you from anything great, right?  You may as well be here.  My

11     name is Allison Burroughs.  I am the judge assigned to this

12     session of the District Court in the District of Massachusetts

13     and I will be presiding over the case that we're about to

14     select a jury for.

15           And it is my pleasure to welcome you on behalf of the

16     court as potential members of our jury today.  I know that you

17     all already saw a video that explains something about the

18     process we're about to go through and what's expected of you if

19     you're selected to serve on the jury.  I'm going to add some

10:21 20     words of explanation of my own, and I apologize in advance if I

21     repeat some things that you may have already heard on the video

22     or that you may already actually know.

23           So let me start by telling you what kind of case this

24     is because I'm sure many of you are curious about that.  This

25     is a criminal case.  The government has charged the defendant,

1  Patrick Baxter, with receipt of child pornography, possession
2  of child pornography, and production of child pornography.
3  Mr. Baxter denies committing any of the crimes, and he has pled
4  not guilty to the three charges directed at him.

5           Those of you who are chosen as jurors will be told
6  later more about what the precise charges are and what the
7  government has to prove beyond a reasonable doubt in order for
8  you to convict the defendant.  But I want to emphasize that the
9  charges in this case are only accusations.  They are not
10 evidence of guilt.  The defendant has pled not guilty and he is
11 presumed innocent unless and until the government proves his
12 guilt beyond a reasonable doubt as determined by a unanimous
13 jury.

14          These two concepts, the presumption of innocence and
15 the requirement of proof beyond a reasonable doubt, are bedrock
16 principles of our system of justice and are fundamental rights
17 not just of the defendant in this case but of all people in
18 this country.  Many of you are probably nervous about the
19 possible commitment of time that may be required if you're
20 selected to serve, so let me talk about that next.

21          This case is expected to take less than a week to try.
22 The evidence should be complete by tomorrow or the next day.
23 We will generally begin at 9:30 each day.  We'll go to about
24 3:30.  There will be a short break in the morning and a longer
25 lunch break.  You probably, by this point, heard quite a bit

1    about the importance of jury service, but I want to add just a

2    few thoughts of my own.

3         The jury system goes back at least 800 years to

4    England to the time of the Middle Ages.  Although a lot has

5    changed since then, the idea is essentially the same with

6    regards to jury service.  No person can be convicted of a

7    serious crime except upon the unanimous vote of a jury made up

8    of ordinary citizens.  The founders of our nation believe that

9    the right to a jury was so important that they put it in the

10:23 10   Constitution in the Bill of Rights.

11         Juries have always been comprised of ordinary citizens

12   taken from all walks of life, each of whom brings their own

13   individual perspective and life experience to the table.  You

14   don't have to have any particular education or experience.

15   What is important is that you take your responsibility

16   seriously and that you exercise your authority to the best of

17   your ability.  The quality of justice in the United States

18   depends and is always dependent on the good judgment and common

19   sense of ordinary citizens.

10:24 20        Trial by jury is not necessarily the most efficient

21   way to decide whether someone should be convicted of a crime

22   and in some ways it's sort of old fashioned.  But there are

23   things more important than efficiency, and protection of our

24   very basic freedoms is one of them.  We enjoy a great many

25   rights and freedoms in this country and probably all of us take

1    some of them for granted from time to time, and sometimes we

2    have to be reminded what those rights are and why they are

3    important.

4         The jury is one of the most basic protectors of our

5    freedom.  It is fundamental to our system of justice.  It is

6    both an obligation of citizenship but also an honor and a

7    privilege to serve.  If you're selected to serve, I hope you

8    will exercise your duties responsibly, solemnly, and in

9    accordance with the law.  You should not, however, assume that

10:25 10   your service will be burdensome.  Many jurors -- I talk to

11   every jury at the end of each trial, or at least the ones that

12   are willing to talk to me, and all the ones that I talk to,

13   people generally tell me it's one of the most interesting and

14   rewarding experiences of their lives.  And I like to tell

15   people that within the last -- I think it's like two years,

16   Karen, right -- Karen and I have both served on a jury in the

17   last two years.  I served on a state court jury -- we both

18   served on state court juries actually.

19        I told you that this case involves child pornography.

10:25 20   Child pornography can be a little bit of a loaded concept.

21   This case is not a referendum on child pornography.  To sit as

22   a juror, you don't have to be neutral on the idea of child

23   pornography, but you must be confident in your ability to

24   listen to the testimony, judge the credibility of the

25   witnesses, find the facts, apply the law to the facts and then

1    decide whether the government has met its burden of proof

2    beyond a reasonable doubt in a way that is fair to both the

3    government and the defendant.

4        I want to tell you just a little bit about how we're

5    going to select a jury and then we'll get right to it.  The

6    parties in this case have a right to a jury that can sit and

7    decide this matter fairly and impartially.  That is, both

8    parties are entitled to a jury that doesn't have its mind made

9    up one way or another about any of the issues in this case

10:26 10    before they hear the evidence and have been instructed by me to

11    begin their deliberations.

12        We're looking, as I said, for jurors who will hear the

13    evidence in this case and decide its outcome without bias in

14    favor of or prejudice against either side, any witness or any

15    material matter and who will base any verdict in this case on

16    the evidence presented during the course of the trial and the

17    law as I will give it to you and not on anything that you may

18    have heard or read or experienced outside of the courtroom.

19        Your job if you're selected for jury service in this

10:26 20    case will be to decide the case based on the evidence submitted

21    in this case and the law as I give it to you.  The purpose of

22    this jury selection is to find a jury that can do that.  It is

23    a fundamental principle of our justice system that the

24    defendant is presumed to be innocent, and our purpose today is

25    to select a jury that comes to this trial without any bias as

1    to either side and who will decide this case fairly, based

2    solely on the evidence presented during the course of the trial

3    and the law as I will explain it to you.

4        To obtain this fair jury we will have a selection

5    process that will begin in just a minute.  It starts with me

6    asking you a series of questions.  The process and the

7    questions are not meant to be intrusive.  Its important purpose

8    is to ensure that the parties have a fair and impartial jury to

9    hear this case.

10:27  10        Once we're through with the questions and whatever

11    follow-up we do individually, by law the lawyers will have an

12    opportunity to challenge a small number of prospective jurors

13    with what we call peremptory challenges.  With peremptory

14    challenges, these are different than challenges for cause.

15    With peremptory challenges, the lawyers don't need to give a

16    reason for removing someone from the jury.  When the lawyers

17    are satisfied with the jury or they've run out of challenges,

18    we will have our jury.

19        We're going to impanel 14 jurors.  Your answers to my

10:27  20    questions, which we're going to begin now, must be under oath.

21    In other words, you have to swear that your answers will be

22    truthful.  It's obviously important to the process that you

23    give truthful responses, so I'm going to have Karen swear you

24    all in, and we'll begin the selection process now.

25            (Jury pool duly sworn.)

1          THE COURT:  Okay.  As I indicated, the case on which

2     you've been called to sit as jurors is a criminal case.  The

3     case has been brought by the United States Government.  I will

4     sometimes refer to the government as the prosecution.  The

5     defendant in this case is Patrick Baxter.  He is charged with

6     one count of receiving child pornography, one count of

7     possessing child pornography, and one count of producing child

8     pornography.

9          At least some of these charges allege conduct

10:28 10     involving a prepubescent minor or minor who is younger than 12.

11     Mr. Baxter denies committing the crimes with which he's been

12     charged.  The charges against Mr. Baxter are contained in a

13     document called an indictment.  An indictment is an accusation

14     only, and it is not proof that he is guilty of the crimes

15     charged against him.  He has pleaded not guilty to the charges

16     and is presumed innocent of those charges.  It will be up to

17     you, the jury, to determine if the government has proven any of

18     the charges against him beyond a reasonable doubt.

19          We're going to begin the jury selection process.  I'm

10:29 20     going to have counsel introduce themselves and your client to

21     see whether any of you know them or have a connection with

22     them.  If you do or you think you might know them, raise your

23     hand and keep it raised while we take down your jury number and

24     record your answer.  I'll also list the possible witnesses

25     again to see if you know any of them, and then we'll ask

1   everyone on the panel a series of other questions.

2          If your answer is yes to any question or you think

3   your answer should possibly be yes, please again raise your

4   hand and keep it raised until your answer can be recorded.  So

5   when I ask a question and your answer is yes, we're going to

6   have to go around the room and you're going to have to shout

7   out your number.

8          Just to help Karen and I out, because we're going to

9   be trying to write down all your numbers, I'm going to kind of

10:29 10  do it in sections.  So I'm going to look to this section first

11  and then that section and then the middle and then that

12  section.  So I'll count right around.  If I miss somebody, we

13  can circle back, but just for order it helps us out if we kind

14  of do it that way.

15         Once we've finished answering all the questions and

16  we've kept track of the yeses, any juror that answered yes to

17  any questions will step out back.  I used to do it right here

18  at sidebar.  But as a little COVID innovation, we go to the

19  back, and it gives us a little bit of space.  We'll go out back

10:30 20  and follow up with you on why you answered yes to any question

21  and what the issues are and maybe ask follow-up questions.

22         Please do not hesitate to raise your hand if you're

23  not sure what to do.  Don't be shy.  If you think your answer

24  is yes or you're not sure or you have a question about it,

25  raise you hand and we can discuss it out back during the

follow-up conversation.  The time to ask questions and raise issues is obviously now and not partway through the trial.  No one is going to be upset if you raise your hand because you weren't sure to what to do and it turned out not to have been necessary.

Once we step out back for follow-up questions, we'll verify your name, we'll verify your juror number, we'll talk about why you raised your hand.  We will attempt to move through this process as efficiently as possible, but we're going to ask for a little bit of patience.  There's a lot of you.  I'm now going to begin the series of questions.  Again, if your answer is yes or you think your answer should possibly be yes, please raise your hand.

Okay.  Let's have the government introduce themselves.

MR. TOBIN:  Good morning.  My name is David Tobin. I'm an Assistant United States Attorney.

MS. SOTO:  Good morning.  My name is Jessica Soto. I'm also an Assistant United States Attorney.

THE COURT:  I should say to the parties, because of the way this room is set up, they have to have their back to someone.  They don't like to turn their back on me because I'm the judge, right?  But feel free to turn your back on me.  It's much more important that you see the jurors.  So if you want to flip your chairs around, go ahead and do that.  Introductions over here, please.

1          MR. SIMONS:  Sure.  Good morning, ladies and

2     gentlemen.  My name is Joseph Simon.  I'm a defense attorney.

3     Together with my co-counsel, I represent Patrick Baxter.

4          MS. SRECA:  Good morning, everyone.  My name is

5     Natalie Sreca.  I also represent Mr. Baxter who is standing

6     here to my right.

7          THE COURT:  Okay.  The defendant in this case is

8     Patrick Baxter.  Do you or any of your family members or close

9     friends know Mr. Baxter?

10:32 10          I'm going to interrupt myself here.  When I say

11     "family members or close friends," it's kind of a weird world

12     in which we live, right?  And some of you may have friends that

13     are much closer to you than your family is.  When I say

14     "friends or family," I'm talking about kind of that inner

15     sanctum of people.  Meredith Gray, if anyone watches to Grey's

16     Anatomy, would refer to it as her person.

17          So again, the defendant is Patrick Baxter.  Does

18     anyone know or have any family members or close friends that

19     know Mr. Baxter?

10:32 20          (No response.)

21          Okay.  Mr. Baxter is represented by Joseph Simons and

22     Natalie Sreca of the Simons Law Office.  Have you or any of

23     your family members or close friends to the best of your

24     knowledge worked with either of these attorneys, been

25     represented by them, know them, or been represented by their

1    law firm?

2             (No response.)

3             The United States of America is represented in this

4    case by David Tobin and Jessica Soto of the United States

5    Attorney's Office in Boston.  Do any of you or any of your

6    family members or close friends to the best of your knowledge

7    know either of them?

8             (No response.)

9             Okay.  Have you or any member of your family or any of

10:33 10   your close friends ever been employed by the United States

11   Attorney's Office in the District of Massachusetts, the Federal

12   Bureau of Investigation, or the Brookline Police Department?

13            Shout out your number, please.

14            JUROR:  11.

15            JUROR:  38.

16            THE COURT:  Based on what I have told you about this

17   case, do you have any particular knowledge of this case,

18   including anything you may have read, heard, or seen in the

19   newspapers, on television, radio, or on the internet?

10:34 20   (No response.)

21            As I indicated, this case is going to take

22   significantly less than a week to try.  Anyone that's excused

23   from this case will go back downstairs and will likely be sent

24   to another case.  There's three cases being impaneled today.  I

25   believe we are the shortest.  So, less than a week.  Court is

generally in session from 9:30 to 3:00, midmorning break and a
lunch break.

I understand that serving on a jury can be somewhat of
an inconvenience, but again, this is a short trial.  Having
explained the schedule, will this schedule or the length of
this trial pose a serious, by which I mean really serious, or
extraordinary hardship for anyone?  Shout them out.

JUROR:  9.

JUROR:  13.

JUROR:  7.

JUROR:  24.

JUROR:  45.

THE COURT:  Hold on.

JUROR:  26.

JUROR:  62.

JUROR:  72.

JUROR:  73.

JUROR:  31.

JUROR:  33.

JUROR:  3.

THE COURT:  All right.  Do any of you have any
disability, physical or otherwise, that could make serving as a
member of the jury difficult or impossible or could interfere
with your service as a juror?

JUROR:  11.

```
 1              JUROR:  38.

 2              JUROR:  28.

 3              JUROR:  45.

 4              JUROR:  8.

 5              THE COURT:  Does anyone have any difficulty reading or

 6      understanding English?

 7              (No response.)

 8              I'm going to ask everybody to stand up for a minute.

 9              (Jurors stand.)

10:36 10        If you understand what I'm saying, sit down.

11              I always go to the last one standing.  Do you

12      understand what I'm saying?

13              JUROR:  Yes.

14              THE COURT:  You speak English?

15              JUROR:  Yeah.

16              THE COURT:  So some of you may have previously served

17      as a juror in a criminal or civil case in state or federal

18      court or served as a member of a grand jury in federal or state

19      court.  If you've previously served as a juror, is there

10:37 20        anything about the prior service that could affect your ability

21      to serve as an impartial juror in this case?

22              (No response.)

23              Have you or any member of your family or any of your

24      close friends been the subject of a criminal investigation or

25      been arrested, charged, or convicted for any crime, felony, or
```

```
 1    misdemeanor other than a minor traffic violation?
 2              JUROR:  15.
 3              JUROR:  12.
 4              JUROR:  9.
 5              JUROR:  10.
 6              JUROR:  36.
 7              JUROR:  37.
 8              JUROR:  54.
 9              JUROR:  35.
10              THE COURT:  Go to the middle.
11              JUROR:  24.
12              JUROR:  41.
13              JUROR:  26.
14              JUROR:  56.
15              JUROR:  29.
16              JUROR:  61.
17              JUROR:  62.
18              JUROR:  31.
19              JUROR:  49.
20              JUROR:  75.
21              THE COURT:  Have you or any member of your family or
22    any of your close friends been the subject of a criminal
23    investigation -- sorry, that's the one I just read.  My bad.
24              Have you or any members of your family or any of your
25    close friends ever been a witness in a criminal case or a
```

10:38 (line 10)
10:39 (line 20)

```
 1   victim of a crime?
 2          MS. SOTO:  Your Honor, if I may, I think there was
 3   someone in the back raising their hand to the last question.
 4          THE COURT:  Did I miss someone in the back?  What's
 5   your number?
 6          JUROR:  74.
 7          THE COURT:  That was for, been the subject of a
 8   criminal investigation or arrested, charged, or convicted of a
 9   crime?
10   JUROR:  Yes.
11          THE COURT:  What was your number?
12          JUROR:  I wasn't convicted.
13          THE COURT:  I just want -- that's fine.  You're 74?
14          JUROR:  Yes.
15          THE COURT:  All right.  Back to being a witness in a
16   criminal case or a victim of a crime.
17          JUROR:  10.
18          JUROR:  1.
19          JUROR:  38.
20   JUROR:  67.
21          JUROR:  39.
22          JUROR:  42.
23          JUROR:  33.
24          JUROR:  75.
25          THE COURT:  Have you or any member of your family or
```

```
 1    any of your close friends ever sued or been sued by the federal
 2    government or law enforcement agency, including the Federal
 3    Bureau of Investigation, or the Brookline Police Department?
 4         JUROR:  10.
 5         JUROR:  15.
 6         JUROR:  39.
 7         JUROR:  Can I ask a question?  You didn't say
 8    "employer."  Is that -- "employer," would that be included in
 9    your question.
10    THE COURT:  Why don't I write down your number on that
11    and we can circle back to it.  What's your number?
12         JUROR:  28.
13         JUROR:  9.
14         JUROR:  For that same reason, please.
15         THE COURT:  Okay.  That's fine.  I think we'll get to
16    it, but if you're not sure, it's better to say yes.
17         JUROR:  31.
18         JUROR:  76.
19         JUROR:  40.
20         THE COURT:  Okay.  As I said before, this is a
21    criminal case.  The fact that a defendant has been charged with
22    a crime is not evidence that he is guilty of that crime.  The
23    defendant here is presumed innocent.  He is presumed innocent
24    unless and until the government has met its burden of proving
25    his guilt beyond a reasonable doubt.  No defendant is presumed
```

1    guilty.  It is the opposite.  A defendant is presumed innocent.

2          Are there any of you who do not accept these basic

3    principles of presumption of innocence and the burden of proof?

4          (No response.)

5          A defendant in any criminal case has the right to

6    testify or an absolute right not to testify on his own behalf.

7    A defendant has no obligation to testify and you may not draw

8    an adverse inference if Mr. Baxter chooses not to testify.

9          Are there any of you who do not accept this basic

10:43 10   principle regarding a defendant's right not to testify and

11   might hold it against him if he chooses not to testify?

12         (No response.)

13         Does anyone have any feelings about the United States

14   Government that might affect your ability to be a fair and

15   impartial juror in this case?

16         JUROR:  15.

17         JUROR:  10.

18         JUROR:  26.

19         JUROR:  74.

10:43 20   THE COURT:  You must decide this case based solely on

21   the evidence presented in this courtroom and not on anything

22   you learn outside of the courtroom or, for example, any ideas

23   you may have from TV or movies about what a trial should look

24   like.

25         Is there anyone who does not accept that principle and

1   might decide the case based on something other than the

2   evidence?

3            (No response.)

4            You must also follow the law as I will provide it to

5   you in deciding this case.  You must put aside any notions

6   about what you think the law requires, what you should think

7   the law should require and follow only my instructions to you

8   about the law.

9            Is there anyone who is not willing or able to apply

10:44 10   the law as I will give it to you?

11            (No response.)

12            Do you have any strong feelings about the criminal

13   justice system that could affect your ability to serve as an

14   impartial juror in this case?

15            JUROR:  Can you repeat that?

16            THE COURT:  Yes.  Do you have any strong feelings

17   about the criminal justice system that could affect your

18   ability to serve as an impartial juror in this case?

19            (No response.)

10:44 20            The fact that an indictment has been filed does not

21   give rise to any presumptions or inferences whatsoever with

22   respect to a defendant's guilt or innocence, and an indictment

23   is not evidence.  The jury must determine whether or not the

24   government has proven the defendant guilty beyond a reasonable

25   doubt based on the evidence presented at trial.

```
 1              Is there anyone here who might be so influenced by the
 2     fact that Mr. Baxter was charged with crimes in an indictment
 3     that it might affect your ability to sit as a fair and
 4     impartial juror in this case?
 5              JUROR:  9.
 6              JUROR:  11.
 7              JUROR:  38.
 8              JUROR:  54.
 9              JUROR:  69.
10:45 10         JUROR:  68.
11              JUROR:  69.  Sorry.  67.
12              JUROR:  67.
13              JUROR:  24.
14              JUROR:  26.
15              JUROR:  43.
16              JUROR:  28.
17              JUROR:  29.
18              JUROR:  45.
19              JUROR:  62.
10:46 20         JUROR:  72.
21              THE COURT:  The following individuals have been
22     identified as possible witnesses in this case or might be
23     mentioned during the case.  Once I finish reading the list,
24     please raise your hand if you know any of them.  Vanessa
25     Baxter, Bryce Montoya, Yu Kajita, Amy ████████.
```

```
 1            (No response.)

 2            Some of the expected witnesses in this case work for

 3       law enforcement.  That is the FBI or Brookline Police

 4       Department.  Would any of you either believe or disbelieve

 5       testimony solely because it was coming from a law enforcement

 6       witness?

 7            JUROR:  38.

 8            JUROR:  76.

 9            THE COURT:  Do you have any feelings about or

10:47 10  experience with law enforcement personnel that might affect

11       your ability to be a fair and impartial juror in this case?

12            JUROR:  38.

13            JUROR:  54.

14            JUROR:  39.

15            JUROR:  11.

16            JUROR:  71.

17            JUROR:  74.

18            JUROR:  31.

19            JUROR:  33.

10:48 20       JUROR:  9.

21            THE COURT:  The indictment in this case charges the

22       defendant with receiving, possessing, and producing child

23       pornography, including images that depict a prepubescent minor

24       a minor under the age of 12 years old.

25            Is there anything about the nature of these charges
```

```
 1    that could affect your ability to sit as a fair and impartial
 2    juror in this case?
 3              JUROR:  10.
 4              JUROR:  9.
 5              JUROR:  1.
 6              THE COURT:  Hold on, hold on.  Okay.  One at a time.
 7              JUROR:  10.
 8              JUROR:  1.
 9              JUROR:  9.
10:49 10         JUROR:  11.
11              JUROR:  8.
12              JUROR:  12.
13              JUROR:  4.
14              JUROR:  12.
15              JUROR:  17.
16              JUROR:  67.
17              JUROR:  54.
18              JUROR:  53.
19              JUROR:  71.
10:49 20         JUROR:  69.
21              JUROR:  68.
22              JUROR:  24.
23              JUROR:  25 -- 26.  Sorry.
24              JUROR:  58.
25              JUROR:  74.
```

```
 1              JUROR:  43.

 2              JUROR:  59.

 3              JUROR:  62.

 4              JUROR:  28.

 5              JUROR:  29.

 6              JUROR:  30.

 7              JUROR:  45.

 8              JUROR:  44.

 9              JUROR:  72.

10              JUROR:  73.

11              JUROR:  39.

12              JUROR:  40.

13              JUROR:  48.

14              JUROR:  49.

15              JUROR:  64.

16              THE COURT:  Have you or any family member or close

17      friend been the victim of a crime involving sexual assault or

18      child pornography?

19              JUROR:  38.

20              JUROR:  67.

21              JUROR:  68.

22              JUROR:  39.

23              JUROR:  26.

24              JUROR:  29.

25              JUROR:  45.
```

```
 1                THE COURT:  45?

 2                JUROR:  45.

 3                JUROR:  49.

 4                JUROR:  75.

 5                JUROR:  66.

 6                JUROR:  The evidence in this case will likely include

 7      images or videos depicting sexually explicit conduct regarding

 8      minor children.  You will be asked to view something in the

 9      neighborhood of six video clips or pictures that will in total

10:53 10 last no more than a minute or two.

11                Is there any reason based on your personal history or

12      experience, mental health issues, or any other reason why you'd

13      be unwilling or unable to review and then fairly evaluate such

14      evidence?

15                JUROR:  9.

16                JUROR:  67.

17                JUROR:  54.

18                JUROR:  11.

19                JUROR:  68.

10:53 20          JUROR:  69.

21                JUROR:  17.

22                JUROR:  39.

23                JUROR:  40.

24                JUROR:  71.

25                JUROR:  24.
```

```
 1              JUROR:  26.

 2              JUROR:  43.

 3              JUROR:  28.

 4              JUROR:  29.

 5              JUROR:  62.

 6              JUROR:  72.

 7              JUROR:  73.

 8              JUROR:  74.

 9              JUROR:  75.

10:54 10        JUROR:  63.

11              JUROR:  64.

12              JUROR:  49.

13              JUROR:  31.

14              JUROR:  34.

15              THE COURT:  34?

16              JUROR:  Yes.

17              JUROR:  8.

18              THE COURT:  Is there anything --

19              JUROR:  11.

10:55 20        COURTROOM CLERK:  We already got it.

21              THE COURT:  I already have 11.

22              Is there anything beyond the topics we've already

23        discussed that might prevent you from serving as a neutral

24        juror in this case?

25              (No response.)
```

```
 1            Is there anything that anyone would like to tell the
 2     court and the lawyers about your ability to serve fairly on
 3     this jury that we haven't already touched on?
 4            (No response.)
 5            Okay.  All right.  We're going to go back one at a
 6     time.  This is not going to be boot camp, so if you need to go
 7     to the bathroom or whatever, feel free to go.  But if we're
 8     near your number, you should stay here.  So we're going to go
 9     in numerical order, so I would suggest that this group stay
10     close, and then when you move towards the end of them, you all
11     will make sure to be around.
12            Other than that, if you want to walk around, bathroom,
13     water, run down for a cup of coffee, whatever you want to do is
14     fine, but make sure you're up here when we get to your number.
15     Okay.
16            All right.  Let's step out back, please.
17     LOBBY:
18            MR. SIMONS:  I just wanted to know -- sorry if you
19     already covered this, but the peremptories, do we do those
20     after we seat --
21            THE COURT:  Yes.  We're going to qualify 32 people,
22     and then we're going to do peremptories out of that.  And I did
23     already cover it.
24            MR. SIMONS:  I thought so and Attorney Sreca thought
25     so.
```

```
 1              (Juror enters.)

 2              THE COURT:  Mr. Jennings, correct?

 3              JUROR:  Yes, correct.

 4              THE COURT:  How are you?

 5              JUROR:  I'm well, thank you.

 6              THE COURT:  You answered yes to a couple of questions.

 7       Let's go through them.  The first one was that you or someone

 8       in your family or close friend has been the subject of a

 9       criminal investigation or arrested, charged, or convicted for a

09:59 10       crime other than a misdemeanor.

11              JUROR:  I may have misunderstood.  Was it a witness to

12       a crime.

13              THE COURT:  I did ask the witness question, if you had

14       been a witness.

15              JUROR:  I think that was --

16              THE COURT:  Okay.

17              JUROR:  Witness to a crime.

18              THE COURT:  Want to tell us about that.

19              JUROR:  It was a stabbing, two young gentlemen, and I

10:00 20       just happened to stumble upon them as it was happening, became

21       a victim.  And that's the gist of it.

22              THE COURT:  Were you a victim?

23              JUROR:  Yeah.

24              THE COURT:  So you were stabbed?

25              JUROR:  I wasn't stabbed.  I was assaulted and -- just
```

1    assaulted.

2            THE COURT:  When did that happen?

3            JUROR:  Forgive me.  I try to forget this.  I think

4    2018.

5            THE COURT:  Okay.  Is there anything about that

6    experience or your experience with law enforcement that you

7    think would affect your ability to be a fair and impartial

8    juror in this case?

9            JUROR:  Not this particular case, no.

10:00 10         THE COURT:  Okay.  The other question that you

11   answered was that there was something about the nature of these

12   charges that could --

13           JUROR:  I work in the emergency room, and I see a lot

14   of, unfortunately, cases with young kids and such.  And I have

15   a low tolerance for people that do this to kids.  I know this

16   is an assumption -- or not an assumption, but that's my

17   connection.

18           THE COURT:  So I mean --

19           JUROR:  I don't know --

10:01 20         THE COURT:  I think a lot of us have low tolerance for

21   things happening to kids, right?  But the question, the job

22   here --

23           JUROR:  Nothing personally.

24           THE COURT:  The job here isn't to decide that you like

25   or don't like people that are involved with child pornography,

right?  The job is to figure out whether the government has

proved beyond a reasonable doubt that he's committed any of the

charges that are alleged against him.

JUROR:  Okay.

THE COURT:  So understanding that, do you think that

you could listen to the testimony fairly, with an open mind,

find the facts, and come to a reasoned decision about whether

the government has met its burden of proof?

JUROR:  I don't know if I could.

10:01 THE COURT:  I'm going to send you back downstairs.

The next trial, it's a much longer trial, but maybe that will

be a better fit for you, but you can sit in the courtroom.

JUROR:  Return to my seat.

THE COURT:  Return to your seat.

(Juror exits.)

THE COURT:  Juror number 2 is fine.  That will be

number 1.  Juror number 3, please, Karen.

(Juror enters.)

THE COURT:  Ms. Perham.

10:02 JUROR:  Hi.

THE COURT:  How are you?

JUROR:  Well thanks.  How are you?

THE COURT:  Good, thank you.  You raised your hand on

a hardship.

JUROR:  I did.  So my husband just got a new job, and

1    he has to go to the office, and so that leaves the care of

2    getting my child ready for school in the morning and giving my

3    parents their medicine before and after I start my job and

4    giving them lunch in the middle of the day.  What time would I

5    need to arrive here.

6              THE COURT:  I generally start at 9:30.

7              JUROR:  9:30.  So I've been thinking about it, and I

8    could possibly take back my --

9              THE COURT:  Let me just tell you, I also have two kids

10:03 10   that I get off to school in the morning.  That's why I start at

11   9:30 and not 9:00, which is what I think a lot of other judges

12   do.  If I send you back downstairs, there's three other trials

13   being impaneled this week, and this is the shortest by a long

14   shot.

15             JUROR:  Okay.

16             THE COURT:  So we're talking about, I mean, I don't

17   want to put any pressure on the jurors about how long

18   deliberations take, but the jury should have the case by

19   Wednesday.

10:03 20             JUROR:  Okay.

21             THE COURT:  It's a pretty short trial as far as these

22   things go.

23             JUROR:  Okay.  So I think --

24             THE COURT:  How old is your child?

25             JUROR:  She's 13.

```
 1              THE COURT:  I can't excuse you for a child 13 anyway.
 2     My kids turn 15 this weekend.  My husband is traveling this
 3     week, and I left them in the house by themselves, and I'm
 4     hoping they're both at school.
 5              JUROR:  Fingers crossed.
 6              THE COURT:  What do you think?
 7              JUROR:  So I think it will be okay.
 8              THE COURT:  We won't go beyond -- I mean, once the
 9     jury is deliberating, I let them control the schedule, but
10:04 10    we'll never go beyond, in terms of the testimony, beyond 3:30,
11     okay.
12              JUROR:  Thank you.
13              THE COURT:  As far as today goes, my husband is
14     traveling and he left me with both kids having dentist
15     appointments this afternoon, so I fully sympathize with the
16     struggle.  Thanks very much.
17              (Juror exits.)
18              THE COURT:  Juror number 4, please, Karen.
19              (Juror enters.)
10:04 20    THE COURT:  Mr. Blakely?
21              JUROR:  Yes.
22              THE COURT:  How are you?
23              JUROR:  Well, thank you.
24              THE COURT:  You raised your hand on something about
25     the nature of the charges that could affect your ability to sit
```

```
 1    as a fair juror in this case.

 2              JUROR:  Yeah.  I feel like if somebody is accused of

 3    this crime, it would be hard for me to find them not guilty.

 4              THE COURT:  I'm going to excuse you on that, but I

 5    want you to understand that anybody can be accused of a crime,

 6    okay?

 7              JUROR:  I understand.

 8              THE COURT:  It is a low bar, and I guarantee you that

 9    if you go back to your office and you search the servers on
10:05 10    your computers, you will find pornography on your computer

11    server.  So people can be accused of a crime and not be at all

12    guilty.  I sincerely hope that no one, that you or your family

13    is accused of such a crime because I think you might understand

14    better how easy it is to be accused of a crime.

15              So I'm going to excuse you on this.  You can sit in

16    the courtroom, and when I send the first batch down for the

17    next trial, you'll be in it.

18              JUROR:  Understood, thank you.

19              (Juror exits.)
10:06 20              THE COURT:  Juror number 5 is fine.  Juror number 6 is

21    fine.  Number 7, please, Karen.

22              MR. TOBIN:  Your Honor, I'm just curious, at some

23    point I would like the opportunity to ask juror number 6 what

24    he is retired from.  He could have been a famous defense

25    attorney for all I know.
```

```
 1              MR. SIMONS:  I was actually wondering the same.

 2              THE COURT:  This is going to take forever, okay?  If

 3     we don't get a jury today, we're going to be screwed because

 4     there aren't any jurors coming in tomorrow, except ones that

 5     have already been rejected from Judge Kelly's trial, which is

 6     child sex trafficking, and Judge Casper's trial, which is a war

 7     crimes trial.  So I'm just telling you, nitpick away, but if we

 8     don't get a jury --

 9              MR. TOBIN:  I know.

10:06  10        THE COURT:  Number 6, please, Karen, number 6.

11              (Juror enters.)

12              THE COURT:  Now you're wondering why you're here

13     because you didn't raise your hand to anything.  Can you tell

14     us what you're retired from?

15              JUROR:  A dentist.

16              THE COURT:  Excellent.  Thank you very much.

17              JUROR:  That's it.

18              THE COURT:  You can take your seat.

19              JUROR:  That was quick.

10:07  20        (Juror exits.)

21              THE COURT:  Number 7, please, Karen.

22              (Juror enters.)

23              THE COURT:  Mr. Newcomer.

24              JUROR:  Hi.  Good morning, Judge.

25              THE COURT:  How are you?
```

1          JUROR:  Good, thank you.

2          THE COURT:  You raised your hand on a hardship.

3          JUROR:  I'm self-employed.  I'm the only

4     representative for 32 homes on the Cape that I manage as

5     property manager.  So we have several projects that have been

6     booked that are time-sensitive to be completed due to weather

7     by November 1.  I have seven of them happening this week.

8          THE COURT:  Well, you are in luck that you were called

9     for this trial because the other trials in this courthouse

10:08 10    today are much longer, and the jury should have this case by

11    Wednesday.  So it's a very short stint, okay?

12          JUROR:  So I would have to cancel appointments that

13    are scheduled tomorrow and Wednesday.  One of them is a new

14    furnace being put in, a roof being finished.

15          THE COURT:  Every doctor here is going to have to

16    cancel appointments.  I just can't --

17          JUROR:  I understand.  I was just telling you the

18    situation.  Coming from the Cape -- if it was on the Cape, I

19    could open the houses and get started and check on them, but I

10:08 20    have to leave at 5:00 in the morning to be here.

21          THE COURT:  You don't have to be here until 9:30.

22          JUROR:  It changes tomorrow, okay.

23          THE COURT:  Trial will be basically 9:30 to 3:30.

24    Once the jury starts deliberating, I let them choose the

25    schedule.

```
 1              JUROR:  Thank you.  One other question that was vague

 2    for me to answer, and I don't think -- it will not affect my

 3    ability to try the case if I would get chosen.  But I was -- I

 4    worked for the airlines, and there was a federal -- a person

 5    accused me of inappropriately touching them when I was putting

 6    their tray table down, blah, blah, blah.

 7              I got pulled off of work for two weeks.  We had to go

 8    to a hearing.  Because it was in the air, it was a federal

 9    offense.  Nothing happened, and I was put back to work.  But

10:09 10    I'm just being honest in case it's in the record.

11              THE COURT:  I appreciate that.  Is there anything

12    about that experience that you think could affect your ability

13    to be fair and impartial in this case?

14              THE DEFENDANT:  It had nothing to do with child

15    pornography, so I don't think so.

16              THE COURT:  Thanks very much.

17              (Juror exits.)

18              THE COURT:  Karen, number 8, please.

19              (Juror enters.)

10:10 20              THE COURT:  Mr. Dooley.

21              JUROR:  Yes.

22              THE COURT:  How are you?

23              JUROR:  Good.

24              THE COURT:  You raised your hand on a disability.

25              JUROR:  Yes.  I am subject to bowel obstructions
```

occasionally, and I feel an episode coming on, which started

yesterday.  So I'll probably be like on broth and food like

that for a few days.  Hopefully it settles down and I won't

have to go to the emergency room.

THE COURT:  So we would supply you broth, if that's

what you were going to eat.  Do you think -- I mean, the trial

won't last -- the jury will probably have the case by

Wednesday.  So what do you think?

JUROR:  Well, it's hard to tell.  Any night it could

get worse.  Hopefully it's on the mend.  So I just thought I

should bring it up.

THE COURT:  Well, we seat alternates, so we have

enough people.  But is it a distraction, like would it affect

your ability to listen to the testimony?

JUROR:  It would be more like I might have to go to

the emergency room or something like that.

THE COURT:  Before Wednesday or Thursday?

JUROR:  Well, hope not.  Hopefully it's going to go

away today or tomorrow.  It's just a chronic problem I have

occasionally.  I thought I would bring it up.

THE COURT:  It's fine.  I mean, if it precludes you

from serving, if it's a distraction or, you know, you're not

well or you're contagious, which I know is a different thing, I

can't excuse you, but I'll send you down for another trial, and

they may excuse you too.

1          I mean, you tell me.  Do you have an ability to sit

2     here and listen to evidence fairly and with an open mind and

3     not be distracted?  The evidence will probably go until

4     tomorrow or early Wednesday.  There will be closing arguments.

5     The jury should have the case by Wednesday.  So you tell me.

6          JUROR:  Well, I'm not feeling great right now, but I

7     would be able to sit and listen, yeah.

8          THE COURT:  So sometimes when you're not feeling

9     great --

10:11 10          JUROR:  You're not listening very well.  I'm kind of

11     in that state of mind, yeah.

12          THE COURT:  All right.  Why don't you go back and take

13     your seat.

14          JUROR:  Okay.

15          (Juror exits.)

16          THE COURT:  Number 9, please, Karen.

17          (Juror enters.)

18          THE COURT:  Mr. Woods.

19          JUROR:  Yes, Your Honor.

10:12 20          THE COURT:  How are you?

21          JUROR:  I'm well.  Yourself?

22          THE COURT:  I'm getting the idea you don't want to

23     serve.  You answered yes to seven --

24          JUROR:  To be honest with you, when I was driving here

25     I was going to present you with the notion that work and my

1    family life is really pulling me away from being able to give

2    the commitment that I would want to give in a trial like this.

3         As you started to ask more and more questions, I

4    realized that this would not be the trial for me, given my

5    stance on child pornography.  I have an eight-year-old

6    daughter.  I have a wife that suffered child abuse as a kid and

7    sexual abuse as a child.  I don't believe that I could stand

8    fairly.

9         THE COURT:  All right.  I'm going to send you back to

10:13 10   your seat.  Ultimately, you'll be excused from this case, but I

11   just want you to understand that the way our country works, the

12   way our system of justice works, when someone is charged with a

13   crime, they are presumed innocent, and it is not difficult to

14   charge someone with a crime.  And someday if you or, God

15   forbid, your daughter or anyone in your family is accused of a

16   crime, I hope you get a panel of jurors that is more

17   open-minded than you are willing to be on this case.  Take your

18   seat.

19        JUROR:  Thank you, Your Honor.

10:13 20   (Juror exits.)

21        COURTROOM CLERK:  10.

22        THE COURT:  Yes.

23        (Juror enters.)

24        THE COURT:  Mr. Govostes.

25        JUROR:  Yes.

1          THE COURT:  Do I have that right?

2          JUROR:  You finally said it right.

3          THE COURT:  First one today?

4          JUROR:  Yeah.

5          THE COURT:  Some days I get them and some days I

6    don't.  You raised your hand on you or someone you know being

7    the subject of a criminal investigation, arrested, charged, or

8    convicted of a crime other than a minor misdemeanor.

9          JUROR:  Yeah.

10:14 10          THE COURT:  Can you tell us about that.

11          JUROR:  I have quite a few friends that were arrested

12    for drugs and possession of stolen property, stolen credit

13    cards.  Nothing myself.

14          THE COURT:  That's good.

15          JUROR:  Yeah.

16          THE COURT:  Anything about your experience with those

17    friends or those charges that you think would affect your

18    ability to be fair and impartial in this case?

19          THE DEFENDANT:  Probably no, not in this particular

10:14 20    case.

21          THE COURT:  Then you raised your hand, so you or

22    someone you know being a witness in a criminal case or victim

23    of a crime.

24          JUROR:  I was a witness.  My friend sued the Town of

25    Stoneham, the police chief and select board.  I was 12 or 13

1   years old.  It was all over the news.

2          THE COURT:  Anything about your experience with that

3   that would affect your ability to be fair and impartial?

4          JUROR:  Not in this particular case.

5          THE COURT:  Sort of the same question.  You said

6   someone you knew had sued or been sued by a law enforcement

7   agency or by the federal government.  Is that the same thing?

8          JUROR:  Same thing, yes.

9          THE COURT:  And then the last one that you answered

10:15 10   yes to was feelings about the United States Government that

11   could affect your ability to be fair and impartial.

12          JUROR:  I don't think we have enough time.  Just about

13   the whole election and all of that stuff.

14          THE COURT:  So I assure you that Mr. Tobin and Mr.

15   Soto have nothing to do with that.

16          JUROR:  I understand that.

17          THE COURT:  They probably have their own strong

18   feelings about the election.  I don't know what they are, but

19   I'm sure they both do.  So this obviously doesn't have anything

10:16 20   to do with the election.

21          JUROR:  I understand that.

22          THE COURT:  What the question is trying to get at is

23   whether or not you start off as -- you're supposed to start off

24   fair and --

25          JUROR:  I'm unbiased, I understand.

```
 1              THE COURT:  What do you think?

 2              JUROR:  I could be unbiased.

 3              THE COURT:  Follow-up questions for him from the

 4  government?

 5              MR. TOBIN:  Thank you for being honest.  Does that

 6  mean you have feelings against the federal government --

 7              JUROR:  No, no, no.

 8              MR. TOBIN:  Okay.

 9              THE COURT:  Mr. Simons?

10:16 10         MR. SIMONS:  Not on this issue.  Thank you.

11              THE COURT:  Thanks very much.  You can take your seat.

12              THE JURY:  Where did you say the coffee was?  You said

13  I could get a cup of coffee.

14              THE COURT:  You can run down to the cafeteria to get

15  it.  Sorry.  I forgot one question.  My bad.  You also said

16  there was something about the nature of these charges that

17  could affect your ability --

18              JUROR:  I think it's horrible.  It changes a child's

19  life.

10:16 20         THE COURT:  So let's assume we can all agree on what

21  you've just said.  So the object of the game is to figure out

22  whether the government has proved that this defendant did the

23  things that he's been charged with.  So maybe he did; maybe he

24  didn't, right?

25              JUROR:  Yeah, yeah.
```

```
 1              THE COURT:  That's where it starts.  You have friends

 2     that have been convicted of crimes, right, you know.  So the

 3     question is can you be fair and impartial in listening to the

 4     evidence and coming to a decision?

 5              JUROR:  Yes.

 6              THE COURT:  Okay.  Follow-up, Mr. Simons?

 7              MR. SIMONS:  No, actually, thank you.

 8              THE COURT:  Thanks very much you can take your seat.

 9              (Juror exits.)

10:17 10         THE COURT:  Number 11.

11              (Juror enters.)

12              THE COURT:  Ms. Pratt.

13              JUROR:  Yes.

14              THE COURT:  How are you?

15              JUROR:  Good.  How are you.

16              THE COURT:  Good, thank you.  You raised your hand on

17     a number of things.  First, that someone you know or you have

18     been employed by the U.S. Attorney's Office or the Federal

19     Bureau of Investigation or the Brookline Police Department.

10:18 20         JUROR:  I'm not sure.  I know Kevin Cloherty who works

21     as a lawyer in Boston, so I'm not sure if that applies.

22              THE COURT:  Well, I know Kevin Cloherty also, and he

23     was employed by the U.S. Attorney's Office, but it was a long

24     time ago.

25              JUROR:  Okay.
```

```
 1                THE COURT:  Is there anything about your relationship

 2    with him that you think would affect your ability to be fair

 3    and impartial in this case?

 4                JUROR:  He's a close family friend.

 5                THE COURT:  Could you go the next couple of days

 6    without talking to him about the case?

 7                JUROR:  Probably, yeah.

 8                THE COURT:  Probably?

 9                JUROR:  Yeah.  I don't think I will be seeing him in

10    the next couple of days.

11                THE COURT:  You raised your hand on a disability.

12                JUROR:  Yeah.  I'm also not sure if this counts.  But

13    I suffer from anxiety a lot, and even being called in to come

14    today was a lot for me.  So I just don't know how I would be

15    able to mentally get through being on a jury.

16                THE COURT:  Okay.  Why don't you step out.

17                (Juror exits.)

18                THE COURT:  Do you guys want to further question her?

19                MR. TOBIN:  No, Your Honor.

20                MR. SIMONS:  No, Your Honor.

21                THE COURT:  12, please, Karen.

22                (Juror enters.)

23                THE COURT:  How are you?

24                JUROR:  Good.  How are you.

25                THE COURT:  Mr. Amin.  Did I get that right?
```

1          JUROR:  Yes, Your Honor.

2          THE COURT:  You raised your hand on a couple of

3    things.  First was you or someone you know has been the subject

4    of a criminal investigation or arrested, charged, or convicted

5    for something other than a minor traffic violation.

6          JUROR:  I don't know all the details, but over ten

7    years ago my sister was charged with I think a felony.

8          THE COURT:  What?

9          JUROR:  A felony, stealing.  She was in New York

10:20 10   State.  And my parents would know the details and she would

11   know the details, but I never went to anything, any of the

12   proceedings.  The court records are sealed and she is not a

13   felon.

14         THE COURT:  Okay.  So the reason that we ask that

15   question is that it means you've had some interaction with the

16   criminal justice system, and we try to make sure that

17   interaction hasn't biased you one way or another.  Is there

18   anything about that experience would affect your ability to be

19   fair in this case?

10:20 20         JUROR:  No.  I never even went to the courthouse.

21         THE COURT:  The other question that you answered yes

22   on was something about the nature of these charges that could

23   affect your ability to be fair and impartial.

24         JUROR:  Just in transparency for the court, I have a

25   14-month-old daughter, so being a parent just changes some

1    perspectives.

2          THE COURT:  Let me push on that.  I have kids and I

3    think most of the people standing here have kids too.  So this

4    is not about whether you are pro or con on pornography or child

5    pornography or anything like that.

6          And the question is can you listen to the evidence

7    fairly and apply the law to the facts as the jury finds them

8    and make a reasoned decision about whether or not the

9    government has proven its case beyond a reasonable doubt?

10:21 10          JUROR:  Yes, I can.

11          THE COURT:  Follow-up, Mr. Tobin, Ms. Soto?

12          MR. TOBIN:  No.

13          MR. SIMONS:  Do you have any concern that thinking

14    about your own daughter would have any -- would creep into your

15    mind as you're listening to the evidence?

16          JUROR:  I don't believe so.  I just want to let --

17          MR. SIMONS:  I appreciate that.

18          THE COURT:  Thanks very much.  You can take your seat.

19          (Juror exits.)

10:21 20          THE COURT:  He is number 12 and he will be number 7.

21          13, please, Karen.

22          (Juror enters.)

23          THE COURT:  Ms. Arricale.

24          JUROR:  Arricale.

25          THE COURT:  Some of them I get right and some I don't.

1    I'm doing pretty well today.

2            You raised your hand on a hardship.

3            JUROR:  Yes.  I have a surgical procedure tomorrow.

4            THE COURT:  Can I ask you what kind of procedure?

5            JUROR:  It's an abscess that they have to remove and

6    dig out.

7            THE COURT:  That's scheduled for tomorrow.

8            JUROR:  Mm-hmm.

9            THE COURT:  Thanks very much.  You can take your seat.

10:23 10            (Juror exits.)

11            THE COURT:  Do you want to know what 14 is retired

12    from?  I take it --

13            MR. TOBIN:  No, I don't, Your Honor.  Every judge is

14    different.  I just did a trial last week with Judge Gorton.  He

15    has everybody in the box and identify themselves and what they

16    do for a living.  And when they're retired, he says, "What did

17    you do?"  I was just curious.

18            THE COURT:  I would ask what they're retired from, but

19    we just asked, not counting subparts --

10:23 20            MR. TOBIN:  I know, I know.  I understand.

21            THE COURT:  14.

22            COURTROOM CLERK:  13, can I excuse her for the day?

23            THE COURT:  No.  She can stay.

24            COURTROOM CLERK:  Juror number 14 is in the bathroom

25    or something.  They didn't raise their hand.

```
 1              THE COURT:  Let's get 15, please.  She works for the
 2     Mass Trial Court.
 3              (Juror enters.)
 4              THE COURT:  Ms. O'Brien, yes?
 5              JUROR:  Yes.
 6              THE COURT:  How are you?
 7              JUROR:  Good.  How are you?
 8              THE COURT:  Good, thank you.  You said that you or
 9     someone you know has been the subject of a criminal
10     investigation, arrested, charged, or convicted for something
11     other than a minor traffic violation.
12              JUROR:  Yes.
13              THE COURT:  Do you want to --
14              JUROR:  My father was wrongly prosecuted in 2014 by
15     the U.S. Attorney's Office.
16              THE COURT:  U.S. Attorney's Office in Boston?
17              JUROR:  Yes.
18              THE COURT:  And you think that would affect your
19     ability to be fair and impartial in this case?
20              JUROR:  Yes.
21              THE COURT:  Thanks very much.  You can take your seat.
22              (Juror exits.)
23              THE COURT:  16 is fine.
24              COURTROOM CLERK:  16 is fine, right?
25              THE COURT:  Yes, 16 is fine.  16 is going to be number
```

```
 1   8, right?  14.

 2              COURTROOM CLERK:  14, if they're there.

 3              THE COURT:  14 and 17.

 4              (Discussion off the record.)

 5              (Juror enters.)

 6              THE COURT:  This is 14 or 17?

 7              COURTROOM CLERK:  17.

 8              THE COURT:  Ms. Angoff.

 9              JUROR:  Yes.

10             THE COURT:  How are you?

11             JUROR:  I'm well, thank you.  How are you?

12             THE COURT:  I am fine also.  We were just discussing

13   Wulf's Fish, which is excellent.

14             JUROR:  Well, thank you.  Thank you.  And look at what

15   I'm reading right now, there we go.

16             MR. SIMONS:  Fiction or nonfiction?

17             JUROR:  Nonfiction, for a course.

18             THE COURT:  You raised your hand on something about

19   the nature of the charges that could affect your ability sit as

20   a fair and impartial juror.

21             JUROR:  Yes.  Any time there's any sort of child

22   endangerment, if there's any sort of information out there, I

23   can't be impartial.

24             THE COURT:  Well, so you don't have to come out of

25   this loving a child pornographer, right?  The job is to decide
```

if he committed the crimes that he's been charged with.  He may

not have.  A jury may find that the government hasn't proven it

beyond a reasonable doubt.

So the question isn't whether you're in favor of child

pornography, which I understand you not to be.  The question is

whether you can listen to the evidence fairly and impartially

and come to a verdict.

JUROR:  I'm not sure that I can, yeah.

THE COURT:  Thanks very much.  You can take your seat.

JUROR:  Thank you so much.

(Juror exits.)

THE COURT:  18 is fine, so 18 is going to be number 9.

(Juror enters.)

COURTROOM CLERK:  This is 14.

THE COURT:  I know you're wondering why you didn't

answer anything and you're --

JUROR:  You said go get a coffee, so I did, and a

bagel.  Sorry.

THE COURT:  You're fine.  It's them, collectively.

I'm not going to single anybody out because it's collectively.

We're not going to hold it against any one of them

individually.

JUROR:  I always said better to be on the jury.

THE COURT:  Except you don't hold it against me.  They

wish to know what you're retired from.

1          JUROR:  Retired from?

2          THE COURT:  What you are retired from?

3          JUROR:  I'm an inventor.  I had a previous business,

4    ten years, I did all the product that came to market with my

5    business partner.  And before that I was a facility manager for

6    a local nonprofit.  And then before that facility manager for

7    another nonprofit, the YMCAs.

8          THE COURT:  Okay.  Back to your seat.

9          JUROR:  Can I finish my bagel outside.

10:29  10          THE COURT:  And your coffee and the bathroom, you're

11   good.

12          (Juror exits.)

13          THE COURT:  So that's number 10, number 10 because we

14   made 18 number 9, right?  19 is also fine.  That gets us to 11.

15          COURTROOM CLERK:  18 fine too.

16          THE COURT:  18 is fine.  14 is 10; 18 is 9; 19 is 11.

17   Now, 20.  I suppose you want to know what she's retired from?

18          MR. SIMONS:  Yes, please, Your Honor.

19          THE COURT:  Number 20, please, Karen.

10:30  20          MR. SIMONS:  Dave wants to know too.

21          (Juror enters.)

22          THE COURT:  How are you?

23          JUROR:  I'm good.

24          THE COURT:  You raised your hand to nothing and you're

25   wondering why you're here.

1         JUROR:  Yes.

2         THE COURT:  These nice people would like to know what

3    you're retired from.

4         JUROR:  I used to work at IBM.  I was a software

5    development manager for 30 years at IBM.

6         THE COURT:  Excellent.  You can return to whatever it

7    is you were doing out there.

8         (Juror exits.)

9         COURTROOM CLERK:  21.

10:31 10    (Juror enters.)

11        THE COURT:  How are you?

12        JUROR:  Good, thank you.  How are you.

13        THE COURT:  You raised your hand to nothing, and

14   you're wondering what you're doing here.  No, or you don't

15   care?

16        JUROR:  I'm here to serve on the jury.

17        THE COURT:  They want to know what you're retired

18   from.

19        JUROR:  Oh, retired.  I was a health care

10:31 20   administrator.  I worked at a couple of hospitals, Children's,

21   and then random medical groups.

22        THE COURT:  Excellent.  Thanks very much.  You can

23   take your seat, or go back to whatever you were doing.

24        (Juror exits.)

25        THE COURT:  22 is 14.  23, please, Karen.

```
 1              COURTROOM CLERK:  22 is fine?
 2              THE COURT:  Yes, that's 14.  23.
 3              (Juror enters.)
 4              THE COURT:  Ms. Olson, how are you?
 5              JUROR:  Hi.  I'm 23.
 6              THE COURT:  I know, you raised your hand for nothing,
 7      and you're wondering why you're here, right?
 8              JUROR:  Yes.
 9              THE COURT:  They want to know what you're retired
10      from.
11              JUROR:  I used to be a quality executive at
12      ThermoFisher Scientific and before that Hewlett Packard.
13              THE COURT:  Thanks very much.  You can take your seat.
14              JUROR:  Thank you.
15              THE COURT:  You can go back to whatever it is you were
16      doing out there.
17              JUROR:  Thank you.
18              (Juror exits.)
19              COURTROOM CLERK:  24.
20              THE COURT:  Yes, please.
21              (Juror enters.)
22              THE COURT:  Ms. Wilson, yes?
23              JUROR:  Yes.
24              THE COURT:  How are you?
25              JUROR:  Good.  How are you.
```

10:32 (line 10)
10:33 (line 20)

```
 1              THE COURT:  Good.  You raised your hand on a hardship.
 2              JUROR:  Mm-hmm.
 3              THE COURT:  Do you want to tell us about it.
 4              JUROR:  Yes.  I have a three-year-old son who my mom
 5    is watching, and she is sick.  She's recovering from a stroke.
 6    So I've been taking care of her and my son, so it's just
 7    difficult for me to be almost two hours away.
 8              THE COURT:  It looks like you work.  Who takes care of
 9    your son --
10    JUROR:  She works -- she takes care of him for me, but
11    I've been on and off working from home with him.
12              THE COURT:  And are you the primary caretaker for your
13    child?
14              JUROR:  Yeah.
15              THE COURT:  Not in preschool or anything?
16              JUROR:  Right.  She would take care of him for me.
17              THE COURT:  All right.  Thanks very much.  You can
18    take your seat.
19              (Juror exits.)
20              THE COURT:  25 will be 16.  Unless they're retired.
21    Let's see.
22              COURTROOM CLERK:  She's excused, right?
23              THE COURT:  She's going to be excused.  25 is fine.
24    So 25 is 16.  That's the halfway mark.
25              I'm never going to get through this one, but let's
```

```
 1    try.

 2              COURTROOM CLERK:  Can I let the few from the other

 3    page go, it's easier --

 4              THE COURT:  Four of them?

 5              COURTROOM CLERK:  That way I'm done with the page.

 6              THE COURT:  Yes, 13, 15, 17 and 24, Karen.

 7              COURTROOM CLERK:  Yes.

 8              THE COURT:  If you want to wait until five, I don't

 9    think I'm going to get through this one.

10:35 10          COURTROOM CLERK:  Okay.

11              (Juror enters.)

12              THE COURT:  How are you?

13              JUROR:  Fine.

14              THE COURT:  Ms. Shrestha?

15              JUROR:  Yeah.

16              THE COURT:  You raised your hand on hardship.

17              JUROR:  Yeah.  So I have a -- I didn't realize I have

18    a flight today to go to Portugal, and I have, like I'm bringing

19    my two kids with me.

10:36 20          THE COURT:  Is it a vacation?

21              JUROR:  Yes.

22              THE COURT:  You paid for your tickets?

23              JUROR:  Yeah.

24              THE COURT:  Okay.  All right.  You can take your seat.

25              (Juror exits.)
```

```
 1              THE COURT:  27, retired college professor.  You're
 2    good with that?
 3              MR. SIMONS:  I am satisfied for that answer.
 4              THE COURT:  She's retired but we know what she's
 5    retired from.  So she's 17.
 6              28, please, Karen.
 7              (Juror enters.)
 8              THE COURT:  Ms. Flynn, right?
 9              JUROR:  Mrs. Flynn, yes.
10:37 10        THE COURT:  Your occupation is listed here as unknown.
11              JUROR:  Well, I work for Alta Dynamics as an office
12    manager, as well as I work for the MBTA as a contractor.  I'm
13    doing a contract with them right now.
14              THE COURT:  Okay.  And you raised your hand on
15    disability.
16              JUROR:  Yes, I did.  This would trigger me for
17    seizures, and I would have to bring in my dog who has been
18    trained to notify me if I'm going to have a seizure.  This is
19    very triggering and symptomatic for me.
10:38 20        THE COURT:  Would it make a difference if you were
21    allowed to bring in the dog?
22              JUROR:  I'm going to be honest with you, the bar was
23    low that day that they put him in.  He's disruptive.  He is
24    disruptive.  But what his main purpose is is to let me know
25    that I am about to have a seizure.
```

1          THE COURT:  Okay.  So I can't excuse you for that.

2          JUROR:  No, I know that.

3          THE COURT:  I'll send you down.  You may be picked for

4     another trial that may be less triggering for you.

5          JUROR:  I just -- I don't know, but my neighbor was

6     also just indicted for child pornography as well.  And I live

7     in Sudbury, it's a million-dollar home.  I don't know what's

8     going on.  I don't know if you guys know him or whatever.  I

9     just think the whole thing is very triggering for me right now.

10:39 10          THE COURT:  Okay.  You can take your seat.

11          JUROR:  You mean I can go downstairs.

12          THE COURT:  No.  You can go out there.

13          JUROR:  Thank you, and thank you again for asking.

14          (Juror exits.)

15          THE COURT:  29, please, Karen, 29.

16          (Juror enters.)

17          THE COURT:  Ms. Langill.

18          JUROR:  Yes, Langill.

19          THE COURT:  What are you reading?

10:40 20          JUROR:  Verity.

21          THE COURT:  You raised your hand on a bunch of them

22     here.  Let's go through them.  You or someone you know has been

23     the subject of a criminal investigation or arrested, charged,

24     or convicted for a crime other than a minor traffic violation.

25          JUROR:  Yes.  My father has been to prison multiple

```
 1    times.  He raped a 15-year-old girl when I was 12, so he went
 2    to jail for that.  And like, car thief.  My whole life he was
 3    in and out of jail.
 4              THE COURT:  So that does not disqualify you from being
 5    a juror, but I could see where this might be a challenging case
 6    for you.  What do you think?  Do your family's experiences with
 7    law enforcement or your experiences with your dad, do you think
 8    that could affect your ability to be fair and impartial?
 9              JUROR:  I think it will be.
10    THE COURT:  Thanks very much.  You can take your seat.
11              THE DEFENDANT:  Thank you.
12              (Juror exits.)
13              COURTROOM CLERK:  14 wants to come back.  Is that
14    okay?
15              (Juror enters.)
16              JUROR:  Sorry.
17              THE COURT:  Where is the bagel?
18              JUROR:  I finished it.  It was great.  You asked me
19    what I was retired from, but I didn't tell you that I volunteer
20    for an organization now in New England that we help other
21    inventors bring their products to market throughout New
22    England.
23              THE COURT:  That's fine.  It's like if it's a health
24    care case, they want to know if you're a doctor.
25              JUROR:  Just an inventor, that's all.
```

```
 1              THE COURT:  You're good.  I think that's a cool
 2      profession though.
 3              (Juror exits.)
 4              THE COURT:  30, please.
 5              (Juror enters.)
 6              THE COURT:  Mr. Fitzgerald.
 7              JUROR:  Yes.
 8              THE COURT:  How are you?
 9              JUROR:  Good.  How are you.
10:42 10          THE COURT:  I'm good, thank you, on a rainy Monday.
11              JUROR:  Beats delivering the mail.
12              THE COURT:  You said there was something about the
13      nature of the charges that could affect your ability to be fair
14      and impartial.
15              JUROR:  I came in with an open mind.  I have a
16      19-year-old granddaughter, and I started thinking, if something
17      ever happened to her or someone did something, you know -- I
18      don't know.
19              THE COURT:  So you don't have to like pornography or
10:43 20      child pornographers to be a juror in this case.  A lot of
21      people are not going to be in favor of child pornography for
22      obvious reasons, right?  But this man has been accused of
23      certain crimes, but those crimes have not been proven against
24      him.
25              JUROR:  Right, right.
```

```
 1            THE COURT:  And it is the job of the jury to decide
 2    whether or not he has in fact done the things that he's been
 3    accused of doing.  Maybe he did them; maybe he didn't.  That's
 4    for the jury to determine.
 5            So the question is, I always say to people it's okay
 6    to hate drug dealers, but can you wait until you decide he's a
 7    drug dealer before you decide you hate him, right?  So talk to
 8    me about that, about what I just said.  Do you think you could
 9    be a fair and impartial juror in this case, or you think you
10:44 10   start --
11            JUROR:  No.  I think I can, yeah.  Innocent until
12    proven -- what is it.
13            THE COURT:  You got it.
14            JUROR:  Whatever, yeah.
15            THE COURT:  So what do you think?
16            JUROR:  I can.
17            THE COURT:  Okay.  Follow-up, Mr. Tobin?
18            MR. TOBIN:  No, Your Honor.
19            THE COURT:  Mr. Simons?
10:44 20      MR. SIMONS:  Just on that note, do you feel pretty
21    confident that you'd be able to set aside your own personal
22    life when you're considering the facts in this case?
23            JUROR:  Yes.
24            THE COURT:  Okay.  Thanks very much.  You can take
25    your seat.
```

         1              JUROR:  Thank you.

         2              (Juror exits.)

         3              THE COURT:  He'll be 18.

         4              31, please, Karen.

         5              (Juror enters.)

         6              THE COURT:  Mr. Reardon.

         7              JUROR:  Hi.

         8              THE COURT:  How are you?

         9              JUROR:  Good.

10:45   10              THE COURT:  You raised your hand on a hardship.

        11              JUROR:  Well, that's probably like everybody else.  I

        12    have been divorced, trying to pay for my house.  I'm working

        13    seven days a week to pay for it.  On the verge of -- if I miss

        14    a week, I lose the house.

        15              THE COURT:  Well, it's only a couple of days.  It's

        16    not going to be a week.  And you're a union worker, right?

        17              JUROR:  Yes.

        18              THE COURT:  So I'm thinking they pay you for jury

        19    duty.

10:46   20              JUROR:  I don't think they do.  If they do, that's

        21    great.

        22              THE COURT:  I'm pretty sure the unions pay for jury

        23    duty.  Which union?

        24              JUROR:  Carpenters.

        25              THE COURT:  I think unions pay for jury duty.

1          JUROR:  Okay.  They didn't say they were going to pay

2     me when I left, but okay.

3          THE COURT:  Did they say they weren't?

4          JUROR:  I said I have jury duty.  I said will I get

5     paid.  They said they don't think so.  Maybe they will.  I

6     didn't look into it.  I just didn't think it was a thing.

7          THE COURT:  All right.  Let's push on here.  You

8     raised your hand that you or someone you know has been the

9     subject of a criminal investigation other than -- criminal

10:46 10    investigation, arrested, charged, or convicted for something

11    besides a minor traffic offense.

12         JUROR:  Me.

13         THE COURT:  Tell us, please.

14         JUROR:  Well, it has to do with -- it said if you sue

15    somebody too.  I was pistol-whipped by the police, and I sued

16    the town, the police department.

17         THE COURT:  Okay.  Sorry to hear that.  Is there

18    anything about that experience with law enforcement or suing

19    your town that you think would affect your ability to be fair

10:47 20   and impartial?

21         JUROR:  I haven't trusted a police officer since then.

22         THE COURT:  Could you listen to the testimony of a law

23    enforcement officer and decide whether it was true or not?  You

24    don't have to believe them.

25         JUROR:  I don't think so.

```
 1              THE COURT:  All right.  Thanks very much.  You can
 2    take your seat.  Hate to tell you this, but the next trial is
 3    longer than this one.
 4              (Juror exits.)
 5              THE COURT:  32 is fine, right?  That's going to be
 6    number 19.  33, please, Karen.
 7              (Juror enters.)
 8              THE COURT:  Mr. Cosgrove.
 9              JUROR:  Yes.
10              THE COURT:  How are you?
11              JUROR:  Good.
12              THE COURT:  You raised your hand on hardship.  Tell
13    us.
14              JUROR:  Yes.  So I own a Charles Schwab franchise.
15    It's only a year, open a little over a year.  I have four
16    people but I'm the only licensed person in the office.
17              THE COURT:  The trial is very short.  The jury should
18    have the case by Wednesday.  So I can send you back downstairs,
19    but the next trial is much longer than this one.  So I can't
20    let you go on sort of -- doctors have patients and lawyers have
21    clients.  Everybody has work obligations.  I can't let you go
22    on that.
23              You also raised your hand on you or someone you know
24    being a witness in a criminal case or a victim of a crime.
25              JUROR:  Yes.  My sister.
```

```
 1              THE COURT:  Can you tell us about that.

 2              JUROR:  She was murdered.

 3              THE COURT:  Sorry to hear that.  When was that?

 4              JUROR:  1988.

 5              THE COURT:  And so your family obviously had -- I see

 6       you also answered the question about law enforcement.  Your

 7       family had some experience with law enforcement?

 8              JUROR:  Two brother-in-laws, one was a state trooper,

 9       and one's a retired Nantucket detective.

10:49 10        THE COURT:  So let's start with your sister.  Is there

11       anything about your family's interaction with that whole

12       situation that you think would affect your ability to be fair

13       and impartial?

14              JUROR:  Mm-hmm.

15              THE COURT:  Why?

16              JUROR:  The murderer got off.

17              THE COURT:  And you blame --

18              JUROR:  The jury system.

19              THE COURT:  Okay.  All right.  Thanks very much.  You

10:49 20  can take your seat.

21              (Juror exits.)

22              COURTROOM CLERK:  34?

23              THE COURT:  Yes.

24              (Juror enters.)

25              THE COURT:  How are you?
```

```
 1              JUROR:  Hi, good.

 2              THE COURT:  Mr. Tavana.

 3              JUROR:  Yeah.

 4              THE COURT:  Are you at the British School?

 5              JUROR:  My daughter is, yeah.

 6              THE COURT:  My kids' piano teacher teaches there.

 7              JUROR:  Oh.

 8              THE COURT:  You raised your hand about having

 9     difficulty with the nature of the evidence.

10:50 10        JUROR:  Yeah.  I just didn't want to be exposed to

11     watching those six videos.

12              THE COURT:  It's a minute's worth, it's quick.

13              JUROR:  It's six one-minute videos.

14              THE COURT:  Six videos that total a minute.

15              JUROR:  I see.  Am I loud to ask the nature of how

16     graphic it is.

17              THE COURT:  Well, I mean, I haven't seen them.  My

18     understanding is that they are what they are.  So there's a

19     certain amount of, you know, it is alleged to be pornography.

10:51 20   The jury will decide whether or not it's pornography.  But it's

21     not gruesome.

22              JUROR:  Okay.  Anyway, the whole point was I just want

23     to say that if it was -- I don't choose to be exposed to this

24     stuff.  It makes me uncomfortable.  I'm not -- I don't know how

25     to say it.  I just don't want to see it.
```

1          THE COURT:  Nobody does, right?

2          JUROR:  Obviously.

3          THE COURT:  You know, the question is how much do you

4    not want to see it?  Is it going to affect your ability to be

5    fair and impartial?  Can you sit as a fair juror in this case?

6          JUROR:  That was my question.  I'm pretty sure I can.

7          THE COURT:  Pretty sure you can't or can be?

8          JUROR:  I can.

9          THE COURT:  I mean, the man is entitled to a fair

10:52 10   trial, and the jury may determine that this is pornography;

11   they may not.  There also needs to be a determination whether

12   he had anything to do with it or not.

13         JUROR:  Sure.

14         THE COURT:  He's entitled to a fair trial.

15         JUROR:  So we have to define if this is pornography

16   first, and then we have to --

17         THE COURT:  Yes.  You go through the elements of the

18   offense, but the elements are like, is it pornography, is it a

19   minor, prepubescent.  You sort march through this.  You have to

10:52 20   see enough of it to be able to make those determinations.  And

21   I define for you what constitutes child pornography.  And then

22   you take the law, legal definition that I give you, and you

23   have to look at it long enough to be able to make that

24   determination.

25         But what I wrestle with is nobody really wants to see

```
 1   it, right?  I don't want a jury of only people that do want to
 2   see it, right, because then you're not talking about a balanced
 3   cross-section of the population.  So there's nothing wrong with
 4   not loving child pornography or what's alleged to be child
 5   pornography, right?  But the question is whether you can look
 6   at it fairly and make a reasoned decision about whether or not
 7   the government has made its case against this man.
 8              JUROR:  I understand.  Okay.  That's what I wanted to
 9   clarify.
10  THE COURT:  Okay.  And I'm going to be clear that you
11   don't have to love child pornography to be on this jury.
12   Questions, Mr. Tobin?
13              MR. TOBIN:  No, Your Honor.
14              MR. SIMONS:  Just following up, are you confident as
15   you stand here that you could be fair and impartial and listen
16   to the evidence with an open mind?
17              JUROR:  Yes.
18              THE COURT:  Okay.  Thanks very much.  You can take
19   your seat.
20  COURTROOM CLERK:  35.
21              (Juror enters.)
22              THE COURT:  Ms. Murphy.
23              JUROR:  Yes.
24              THE COURT:  How are you?
25              JUROR:  Good.  How are you.
```

1          THE COURT:  You raised your hand to you or someone you

2    know being the subject of a criminal investigation, arrested,

3    charged, or convicted for something other than a minor traffic

4    violation.

5          JUROR:  It was a DUI, and it was continued without a

6    finding.

7          THE COURT:  Was that you or someone you know?

8          JUROR:  It was me.

9          THE COURT:  How long ago?

10:54  10          JUROR:  Maybe 15 years ago.

11          THE COURT:  Is there anything about your experience

12    with law enforcement or the criminal justice system that you

13    think would affect your ability to be fair and impartial in

14    this case?

15          JUROR:  No.

16          THE COURT:  I ask this to everybody when I see they

17    have a book.  What are you reading?

18          JUROR:  It's called Thief On The Cross.  It's a

19    templar sort of mystery kind of archeological book.

10:55  20          THE COURT:  Like a Dan Brown?

21          JUROR:  A little bit like that, yeah, same idea.

22          THE COURT:  Because I see you're a scientist, so you

23    probably read all day long too, but I read all day long and I

24    go home and I read trash.  So I applaud you for reading at

25    least a step above what I read.  Thanks very much.  You can

```
 1    take your seat.
 2               (Juror exits.)
 3               (Juror enters.)
 4               THE COURT:  You raised your hand for you or someone
 5    you know being the subject of a criminal investigation,
 6    arrested, charged, or convicted for something other than a
 7    minor traffic violation.
 8               JUROR:  Yeah.  I don't know how it stands now, but 20
 9    years ago, for larceny over 250.
10    THE COURT:  Who, you or someone --
11               JUROR:  Me, myself, yeah.
12               THE COURT:  And convicted, not convicted?
13               JUROR:  Oh, yeah, guilty.  Drug addiction.  It's been
14    over 20 years.  That's how old it is.  I don't think it's a
15    felony anymore.  It's a state crime -- I barely know the
16    federal crimes --
17               THE COURT:  Was there anything about that experience
18    with law enforcement or the criminal justice system or anything
19    that you think would affect your ability to be fair in this
20    case?
21               JUROR:  No.
22               THE COURT:  Thanks very much.  You can take your seat.
23               JUROR:  Thank you.
24               (Juror exits.)
25               COURTROOM CLERK:  Can I let these five go, 26, 28, 29,
```

 1    31 and 33?

 2              THE COURT:  Yeah.  16, I see no problems with --

 3              LAW CLERK:  We just didn't have it written down over

 4    here.

 5              COURTROOM CLERK:  We have 22 so far.

 6              THE COURT:  We're up to 37.

 7              The next three are going to be tough after 37.

 8              (Juror enters.)

 9              THE COURT:  Ms. Gabel or Gabel?

10:58 10          JUROR:  Gabel.

11              THE COURT:  Gabel.  Never know.  You raised your hand

12    on you or someone you know being the subject of a criminal

13    investigation or arrested, charged, or convicted of something

14    other than a minor traffic violation.

15              JUROR:  Well, that's where I was unclear about the

16    question.  So I work at a high school as a school counselor,

17    and one of my very good friends and colleagues was charged with

18    -- well, basically is being -- was accused of being negligent

19    for a student's death, a suicide.

10:59 20          THE COURT:  So the question is, is there anything

21    about that experience that you think would affect your ability

22    to be fair and impartial in this case?

23              JUROR:  No.

24              THE COURT:  Okay.  Thanks very much.  You can take

25    your seat.

```
 1              JUROR:  Okay.

 2              (Juror exits.)

 3              THE COURT:  Next ones are going to be a challenge.

 4              (Juror enters.)

 5              THE COURT:  Mr. Callahan.

 6              JUROR:  Yes.

 7              THE COURT:  How are you?

 8              JUROR:  Good.  How are you.

 9              THE COURT:  You raised your hand on a number of things

11:00 10   here.

11              JUROR:  Correct.  So two separate things.  One, I grew

12   up in Brookline.  I don't know if you recall a couple of years

13   ago, a teacher from Heath School was arrested for sexual

14   assaulting a minor.  That minor is my niece.  Brian Sullivan is

15   the lead detective of Brookline cops.  I grew up with Brian.

16   You asked if I know people on the Brookline Police Department.

17   So this case has some -- I'm not going to lie.  I have some

18   very strong views on this.  I also have multiple families in

19   law enforcement.

11:01 20              THE COURT:  Okay.  So none of those things disqualify

21   you, right?  The question is whether -- let's start with your

22   niece.  So if somebody assaulted your niece, you have a right

23   to hate that person, right?

24              JUROR:  Sure.

25              THE COURT:  But the question is, this defendant is
```

```
 1   entitled to a fair trial.  So it is the jury's duty to decide
 2   whether or not the government has proved their case beyond a
 3   reasonable doubt or not.  So at the moment, he's accused, but
 4   there's been no proof that he is the one that committed it.
 5            JUROR:  You also asked if I had a bias towards law
 6   enforcement.  I do.
 7            THE COURT:  That's another thing.  Let's deal with
 8   your niece first, then we'll go on to law enforcement.  So do
 9   you think that you can fairly listen to the testimony in this
10   kind of trial?
11            JUROR:  No.
12            THE COURT:  All right.  Thanks very much.  You can
13   take your seat.
14            (Juror exits.)
15            COURTROOM CLERK:  39.
16            (Juror enters.)
17            THE COURT:  Ms. Woodworth.
18            JUROR:  Yes.
19            THE COURT:  How are you?
20            JUROR:  Good.  How are you.
21            THE COURT:  You raised your hand on a number of things
22   here.  We're going to march through them.  The first one was
23   that you or someone you know has been a witness in a criminal
24   case or a victim of a crime.
25            JUROR:  I put that down, and I think that was in
```

1    conjunction, I had a lawsuit against the police department in

2    Connecticut.

3             THE COURT:  What was that about?

4             JUROR:  It was a car accident.  I got T-boned by a

5    cop.  He was going through a red light.

6             THE COURT:  And is there anything about that

7    experience that you think would affect your ability to be fair

8    in this case?

9             JUROR:  I think just going through that with the

11:03 10   police department and their testimony against what I think

11   really happened just sways my thoughts.

12             THE COURT:  I mean, you know, there's police officers

13   like everybody else, right?  Some of them are going to be super

14   truthful and some of them are not going to be super truthful.

15   The law enforcement witnesses, they'd be on the witness stand,

16   and you'd have the chance to observe them, and it would be your

17   job to decide whether you thought they were credible or not,

18   just like any other witness.

19             Do you think you could do that with a law enforcement

11:04 20   witness or you start off --

21             JUROR:  I would try to, of course, be impartial.

22             THE COURT:  You say you would try.  Do you have

23   reservations about your ability to be impartial?

24             JUROR:  No.  I would -- the best of my ability.

25   Again, my experiences weren't great in that instance.  I've had

1    other experiences in the past with law enforcement.  My husband

2    getting pulled over, saying he doesn't have his insurance up to

3    date.  He does.  His car gets towed.  He has to pay cash for

4    it.  Different things like that.  That's my own town that I

5    have to deal with.  Just weird things.

6              THE COURT:  Well, I'm going to go back to the fact,

7    like, I presume there's good judges and bad judges and good

8    lawyers and bad lawyers.  And so the question is can you listen

9    to the law enforcement witness and judge their credibility

11:04 10    without coming into it already biased one way or the other?

11             JUROR:  Yes, I believe I can.

12             THE COURT:  Okay.  The next question was you -- so we

13    already discussed suing someone.  We've already talked about

14    that.

15             JUROR:  Yes.

16             THE COURT:  And then the next one after that was

17    feelings about law enforcement personnel.  We've hit that one

18    too.

19             JUROR:  Yes.

11:05 20             THE COURT:  Next one was something about the nature of

21    the charges that could affect you.  And also I think you

22    answered yes to someone you know has been involved in a sexual

23    assault or child pornography.

24             JUROR:  Yes.  Myself.

25             THE COURT:  Tell me about that.

          1           JUROR:  I was sexually molested when I was seven years

          2    old.  Actually this past year I trying to overcome that

          3    mentally as I prepare to get to see this person upcoming in the

          4    future.

          5           THE COURT:  So what do you think about this case with

          6    regards to that?

          7           JUROR:  I don't know.  I think maybe it could bring up

          8    some feelings.

          9           THE COURT:  I'm going to leave this to you.  It's okay

11:06 10    for it to bring up feelings.  The question is whether you can

         11    listen to the evidence and be fair to this defendant or whether

         12    you can listen to the factual evidence.  Maybe this is so

         13    upsetting that you can't concentrate on the evidence or maybe

         14    you --

         15           JUROR:  Yeah.  I don't think that this would be the

         16    right case for me to sit on.

         17           THE COURT:  Thanks very much.  You can take your seat.

         18           JUROR:  Thank you.

         19           (Juror exits.)

11:06 20           COURTROOM CLERK:  40.

         21           (Juror enters.)

         22           THE COURT:  Ms. Corcoran.  How are you?

         23           JUROR:  I'm doing okay.  How are you.

         24           THE COURT:  I'm good.  Under "employment" it says

         25    "disabled."

| | |
|---|---|
| 1 | JUROR:  I am. |
| 2 | THE COURT:  I'm not going to pry unduly, but is there |
| 3 | anything about your disability that could affect your ability |
| 4 | to sit through a trial and pay attention? |
| 5 | JUROR:  This trial, 100 percent. |
| 6 | THE COURT:  Related to the disability or -- |
| 7 | JUROR:  Related to the disability. |
| 8 | THE COURT:  Can you flesh that out. |
| 9 | JUROR:  I can.  You asked if I witnessed a crime.  My |
| 11:07 10 | father -- my uncle stabbed my father and I witnessed it.  I'm |
| 11 | also a victim of sexual abuse and physical abuse. |
| 12 | THE COURT:  Okay. |
| 13 | JUROR:  As an adolescent. |
| 14 | THE COURT:  You think that would affect your ability |
| 15 | to be -- |
| 16 | JUROR:  To be impartial, 100 percent, yeah. |
| 17 | THE COURT:  Thanks very much.  You can take your seat. |
| 18 | (Juror exits.) |
| 19 | COURTROOM CLERK:  41. |
| 11:08 20 | THE COURT:  Mr. O'Connell. |
| 21 | JUROR:  Hi. |
| 22 | THE COURT:  How are you? |
| 23 | JUROR:  Good.  How are you. |
| 24 | THE COURT:  Good, thank you.  I see that your |
| 25 | significant other is a physical therapist. |

```
  1              JUROR:  She is.

  2              THE COURT:  There's a lot of physical therapist

  3    spouses out there today.  I feel like there's sometimes

  4    patterns.

  5              You raised your hand for you or someone you know being

  6    the subject of a criminal investigation or arrested, charged,

  7    or convicted for something other than a traffic, misdemeanor.

  8              JUROR:  Yes.  My son.

  9              THE COURT:  Can you tell us about it.

11:08 10         JUROR:  Check forgery, under the influence.

 11              THE COURT:  How long ago was that?

 12              JUROR:  15, maybe 15 years ago.

 13              THE COURT:  Is there anything about that experience

 14    that you think would affect your ability to be fair and

 15    impartial in this case?

 16              JUROR:  No.

 17              THE COURT:  Thanks very much.  You can take your seat.

 18              JUROR:  Thanks.

 19              (Juror exits.)

11:09 20         THE COURT:  42.

 21              (Juror enters.)

 22              THE COURT:  Mr. Bryan.

 23              JUROR:  Yes.

 24              THE COURT:  How are you?

 25              JUROR:  I'm good.  How are you.
```

1          THE COURT:  I'm good, thank you.  You raised your hand

2     to you or someone you know being a witness in a criminal case

3     or a victim of a crime.

4          JUROR:  Yeah.  I was a witness in a case.

5          THE COURT:  Tell us.

6          JUROR:  It was an assault thing, where, sort of like a

7     family thing, but someone came in and went to talk to someone.

8     They attacked them.  And I had to testify.

9          THE COURT:  How long ago?

11:10 10          JUROR:  Quite a while.  Probably 15 years ago maybe.

11          THE COURT:  What does that say?

12          JUROR:  Lowell High School.

13          THE COURT:  How are you supposed to be able to figure

14     out what it is?  I guess if you're in Lowell, you know what it

15     is.

16          Is there anything about that experience that you think

17     would affect your ability to be fair and impartial in this

18     case?

19          JUROR:  No.

11:10 20          THE COURT:  Okay.  I see you're a retired correctional

21     officer.  Anything about that that would affect your ability to

22     be fair and impartial in this case?

23          JUROR:  No.

24          THE COURT:  Thanks very much.  You can take your seat.

25          (Juror exits.)

```
 1              COURTROOM CLERK:  43.

 2              (Juror enters.)

 3              THE COURT:  Ms. O'Donnell.  How are you?

 4              JUROR:  Good, thanks.

 5              THE COURT:  You raised your hand on the fact that

 6    someone has been indicted could affect you.

 7              JUROR:  Yes.  Hearing the case I just start getting

 8    disturbed thinking a child's involved.  And like, a child looks

 9    up to an adult as their protector, as someone who is supposed
```
11:11 10    to be leading them in a path of good.  And hearing charges,
```
11    hearing what I will possibly watching, I'm disturbed by it and

12    saddened.

13              THE COURT:  So those are perfectly legitimate

14    responses to this, right?  And if the jury decides that this

15    man committed the crimes that he's been accused of, you may

16    view him in a certain way.  But the job of the jury is to

17    decide whether or not the government has proven their charges

18    beyond a reasonable doubt.  They may not be able to do that.

19    He may be found not guilty of these charges, or he may be found
```
11:12 20    guilty of them.
```
21              But the question is can you listen to the evidence

22    fairly, listen to that, or are you so swayed by the fact that

23    he's been charged --

24              JUROR:  I can't give you 100 percent yes.  I think I'm

25    too emotional of a person, and especially hearing, like, a
```

1    child is involved in this.

2        THE COURT:  All right.  You're young and I think you

3    have a lot of life ahead of you, and I'm going to tell you, and

4    I think Mr. Tobin would back me up on this, you can indict a

5    ham sandwich.  It is not hard to charge someone with a crime.

6    And one day it may be someone that's close to you that's

7    charged with a crime maybe they didn't commit.

8        So our system very fundamentally presumes people to be

9    innocent unless they're convicted of a crime.  And so I'm going

11:12 10   to dismiss you from this case, but I think you should really do

11    some thinking about kind of like what the presumption of

12    innocence means and how easy it is for someone to be accused of

13    something.

14        I have two teenage boys and I worry all the time that

15    somebody can accuse them of something.  And I did criminal

16    defense work for a long time, and kids were accused all the

17    time on a he said/she said.  So you have to be super careful

18    about believing that just because somebody's been charged with

19    something that they're actually guilty of it.  You never know

11:13 20   who is going to be charged.  Just a cautionary note on that.

21        There's another trial going on.  It's a civil trial.

22    You may be a better fit for that.  I come out a lot stronger

23    with people who are old enough to have lived enough life to

24    know that shit happens, so I'm not going to yell at you, but I

25    want you to kind of think about it.

```
 1              JUROR:  I appreciate your wisdom.

 2              THE COURT:  I get it.  But you never know; you could

 3      be accused of something.  So anyway, I'm going to have you sit

 4      down for a minute, and when we dismiss the next group, you'll

 5      go back downstairs.

 6              JUROR:  Thank you.

 7              (Juror exits.)

 8              COURTROOM CLERK:  44.

 9              (Juror enters.)

11:14 10        THE COURT:  Ms. Ho.  How are you?

11              JUROR:  Good.  How are you.

12              THE COURT:  You raised your hand about the nature of

13      the charges possibly affecting your ability to be fair.  Can

14      you tell us about that.

15              JUROR:  I have a four-year-old daughter.

16              THE COURT:  I have a son.  We all have kids.  Like,

17      the job is, you know -- people with children react to child

18      pornography in a certain way, and that is often and that is

19      legitimate.  But this man has only been accused of it.  It's

11:15 20        the job of the juror to decide whether or not the government

21      has proved its case beyond a reasonable doubt.  So what do you

22      think?

23              JUROR:  I'm not sure.  I also want to let you know, I

24      don't know if I missed the question.  I had a stroke five years

25      ago, so it's taking me a little bit of time to process things,
```

```
 1   a new situation.  So I don't know if that will --

 2           THE COURT:  Okay.  All right.  Thanks very much.  Why

 3   don't you step out.

 4           JUROR:  Thanks.

 5           (Juror exits.)

 6           THE COURT:  Do you want me to press her, or do you

 7   want me to let her go?

 8           MR. SIMONS:  No need, Your Honor.

 9           MR. TOBIN:  No, Your Honor.

10           THE COURT:  Okay.  Karen, she's excused.

11           COURTROOM CLERK:  Okay.  45.

12           (Juror enters.)

13           THE COURT:  Ms. Lopes.

14           JUROR:  Yes.

15           THE COURT:  How are you?

16           JUROR:  Good.  How are you.

17           THE COURT:  I'm good, thank you.  You raised your hand

18   on hardship and disability.

19           JUROR:  Yes.  I'm on disability right now.  I'm out of

20   work, it's been a year, and in treatment for my lower back.

21           THE COURT:  So is the disability that you're afraid

22   you can't sit?

23           JUROR:  Yeah, yeah, my lower back.

24           THE COURT:  You can stand.  We can have you stand.

25           JUROR:  I can stand but not too long.  I can't sit.
```

```
 1            It bothers me with everything.

 2                    THE COURT:  Okay.  Why don't you step out.

 3                    JUROR:  Okay.

 4                    (Juror exits.)

 5                    THE COURT:  Want me to press her on that?

 6                    MR. SIMONS:  No, Your Honor.

 7                    MR. TOBIN:  No, Your Honor.

 8                    THE COURT:  46, please.

 9                    COURTROOM CLERK:  I don't have them down.

11:17 10               THE COURT:  Why do I have two 45s?  There's a typo on

11       here.  It's 46, sorry.

12                    COURTROOM CLERK:  He's fine, right?  I don't have any

13       questions on him.

14                    THE COURT:  He can be fine.  He'll be 26.

15                    COURTROOM CLERK:  47 I have as fine too.

16                    THE COURT:  47 is fine.  That's 27.  48.

17                    MR. TOBIN:  May I ask, Judge, how long is your

18       preliminary charge?

19                    THE COURT:  Like 20 minutes.

11:18 20               (Juror enters.)

21                    THE COURT:  You are Ms. McDonald?

22                    JUROR:  Jacqueline, yes.

23                    THE COURT:  We have the right person.  You raised your

24       hand about the nature of the charges bothering you.

25                    JUROR:  Just, I'm a mom.  I'm a mom of three.
```

```
 1            THE COURT:  So I think a lot of us have kids, and I
 2   think a lot of us probably have strong views about child
 3   pornography, which is perfectly legitimate.  You don't have to
 4   start neutral on the idea of child pornography.  But what you
 5   do have to be able to do is, without being biased by the nature
 6   of the charges, be able to listen to the evidence and decide
 7   whether the government has proved its case beyond a reasonable
 8   doubt.  What do you think?
 9            JUROR:  That's fine, yeah.  I just raised it because I
11:19 10   was a mom and the topic in general --
11            THE COURT:  I get it, it's a difficult topic.  As I
12   tell people in other kinds of cases, like it's okay to hate
13   drug dealers, but you're supposed to decide the guy is a drug
14   dealer before you decide to hate him.
15            JUROR:  Right.
16            THE COURT:  Thanks very much.
17            JUROR:  No worries, thank you.
18            (Juror exits.)
19            MR. TOBIN:  Your Honor, with regard to the preliminary
11:19 20   instructions, which I'm sure will be no more than 20 minutes,
21   whatever the court wants to do.
22            THE COURT:  Let's see how far we get.
23            COURTROOM CLERK:  That's 28, right?
24            THE COURT:  48 was 28.
25            COURTROOM CLERK:  49.
```

```
 1              (Juror enters.)

 2              THE COURT:  Ms. Parisi.

 3              JUROR:  Right here.  I'm so sorry.

 4              THE COURT:  Welcome to our little den.  How are you?

 5              JUROR:  I'm good.  How about you.

 6              THE COURT:  Good.  You raised your hand -- I'm going

 7    to run through these one at a time.  You raised your hand to

 8    you or someone you know being the subject of a criminal

 9    investigation or arrested, charged, or convicted for something
```
11:21 10    other than a minor traffic thing.
```
11              JUROR:  So it was a DUI.

12              THE COURT:  That counts.  Let's hear it.

13              JUROR:  My kid.

14              THE COURT:  How long ago?

15              JUROR:  Well, one was -- I have four kids.  One was an

16    OUI and one was DUI, two different kids.

17              THE COURT:  Youthful indiscretions.

18              JUROR:  Stupid.

19              THE COURT:  Anything about that, your experience with
```
11:22 20    that that you think would affect your ability to be fair and
```
21    impartial in this case?

22              JUROR:  No.

23              THE COURT:  Okay.  Then you also raised your hand

24    about having an issue with the nature of the charges.

25              JUROR:  Yeah.  So I'm a teacher, schoolteacher, and I
```

1     did foster care for 20 years.

2              THE COURT:  You were what?

3              JUROR:  I did foster care for 20 years through DSS.  I

4     just feel like -- I don't know what to tell you, but I don't

5     feel comfortable.

6              THE COURT:  Well, comfortable about what?

7              JUROR:  I mean, I've had these children in my house.

8     I'm not saying he's guilty, but I just, I don't know what to

9     tell you.

11:22  10              THE COURT:  I mean, you know, you don't have to like

11     pornography or child pornography or anything like that to be a

12     juror in this case, right?

13              JUROR:  But I don't want to watch it either.

14              THE COURT:  It's about a minute's worth of watching

15     it.

16              JUROR:  I don't want to.  Sorry.

17              THE COURT:  I'm going to let you go in this case.  Let

18     me just ask you this.  Do you want this jury to be comprised of

19     people that all like to watch it?  Is that who you want to make

11:23  20     these decisions?

21              JUROR:  No.

22              THE COURT:  That's where you leave it.

23              JUROR:  I'm sorry.  I will stay if you want me to

24     stay.

25              THE COURT:  No.  It's important to me that he have a

```
 1    fair jury, and you don't sound like you feel like you can be a
 2    fair juror.  It's like when people say to me, "I hate drug
 3    dealers," so we want a jury of a bunch of people who do like
 4    drug dealers?
 5            JUROR:  No, we do not.
 6            THE COURT:  You're voting with your feet probably not
 7    in the direction you need to vote.
 8            JUROR:  You're right.  I'm sorry.
 9            THE COURT:  It's okay.  We'll send you down.  You may
10    be a better fit for the next trial.
11            JUROR:  I'm sorry.
12            THE COURT:  Don't be sorry.  I appreciate your
13    honesty.
14            (Juror exits.)
15            THE COURT:  So number 50 will be 29.  51 will be 30.
16    We need 52, please.
17            COURTROOM CLERK:  Okay.
18            (Juror enters.)
19            THE COURT:  Ms. Doody.  How are you?
20            JUROR:  Good, thank you.
21            THE COURT:  You're probably wondering why you're here
22    since you did not raise your hand at all.  It says N/A for your
23    occupation and your significant other's occupation.
24            JUROR:  No significant other.  And I was laid off in
25    July, so I'm looking -- was looking for a new job.
```

11:23 (line 10)
11:24 (line 20)

```
 1              THE COURT:  Laid of from what?

 2              JUROR:  Wolverine Worldwide.  I was in demand

 3     planning.

 4              THE COURT:  What are you reading?

 5              JUROR:  One Perfect Couple.

 6              THE COURT:  Thanks.  You can take your seat.

 7              (Juror exits.)

 8              THE COURT:  53, please, Karen.

 9              (Juror enters.)

10              THE COURT:  Mr. Desiva.

11              JUROR:  My name is actually spelled wrong on this.

12              THE COURT:  It is?  Is it Desilva?

13              JUROR:  Desilva, yeah.

14              THE COURT:  How about that for a good guess,

15     impressed?  You raised your hand about the nature of the

16     charges bothering you.

17              JUROR:  Yeah.  I don't know.  I think it's just a

18     little messed up.  Also too, I didn't -- you said like severe

19     hardships.  But I'm in school Monday and Wednesday.  It's at

20     4:30, it's in South Boston.  So I could maybe get there if we

21     get out at 3:00.

22              THE COURT:  We won't go past 3:30.

23              JUROR:  Okay.  100 percent?

24              THE COURT:  100 percent.

25              JUROR:  Okay.  That should be fine.
```

```
 1              THE COURT:  So the nature of the charges being a
 2   little messed up, so let's say we agree that child pornography
 3   is a little messed up, okay?  The question is whether the
 4   government has proven, can prove or proves to the jury beyond a
 5   reasonable doubt that this defendant did those things.  Do you
 6   think you can listen to the evidence fairly?
 7              JUROR:  Probably, maybe.
 8              THE COURT:  Do you have a reservation about it?
 9              JUROR:  No.
10              THE COURT:  You're sure?
11              JUROR:  Mm-hmm.
12              THE COURT:  Follow-up, Mr. Tobin?
13              MR. TOBIN:  No, Your Honor.
14              MR. SIMONS:  You just seem a little bit unsure.  Is
15   there anything else that you want to tell us that's relevant to
16   this question?
17              JUROR:  No.  I don't know.  Just hearing a lot about
18   it in the news and stuff.  Not with obviously this guy but, you
19   know, celebrities and everything.
20              THE COURT:  So as I say, you don't have to be in favor
21   of child pornography to be a good juror in this case, right?
22   You just have to be willing to listen and make an objective
23   decision.
24              JUROR:  Yeah, I think that's fine.
25              THE COURT:  You can do that?
```

1          JUROR:  Mm-hmm.

2          THE COURT:  Thanks very much.  You can take your seat.

3          (Juror exits.)

4          THE COURT:  All right.  I'm going to make a proposal

5     here.  We have our 32.  I would like to let number 54 go and

6     keep 55 in the room in case something goes wrong.

7          We don't have to.  I can stop here and let them all

8     go.  But 54 has a bunch of questions that I'm not sure I can

9     get by, and 55 has nothing.  So I'm keeping 55 in as a spare --

11:28 10          MR. TOBIN:  I have no objection to that.

11          MR. SIMONS:  No objection.

12          THE COURT:  So Karen, did you get that?  So 54 can go.

13          COURTROOM CLERK:  Are we going to get rid of all the

14     rest of them?

15          THE COURT:  Get rid of 54, but you're going to keep

16     55, and then get rid of the rest of them.

17          Now, just a little primer here.  You have ten, you

18     have six, okay?  So we're going to alternate, beginning with

19     the government, and going to the defendant.  When it is the

11:28 20     government's turn, they get one, and when it's the defendant's

21     turn, they get two.  You each get one additional on the

22     alternates.  And because the government goes first on the

23     regular jurors, the defense will go forward on the alternates.

24          So we do it, it's done, there's 32 qualified.  You can

25     use your peremptories in any order that you want.  You can

1   backstrike and however you want to do it.  I don't care about

2   the order.  We'll come up to sidebar, and you'll give your one,

3   you'll give your two, back and forth.  Then the alternates will

4   be struck out of the last four, whoever that happens to be.  If

5   you used up all the peremptories, the alternates will be struck

6   out of 28 -- 29, 30, 31, 32.

7         MR. SIMONS:  Okay.  So we get one for the alternates?

8         THE COURT:  Juror number 1, if he's still in here,

9   juror number 1 is not going to be your alternate, right?

11:29 10       MR. SIMONS:  We won't know yet, but obviously it won't

11  be the first --

12        THE COURT:  It won't be someone in the beginning.  It

13  will be someone at the end.  But other than that, if you want

14  to strike 32 or whoever the last one is -- who is our last one?

15  If you want to strike -- first of all, you don't want to strike

16  55 unless something goes wrong because we're never going to get

17  through 55.  If you strike 53 -- first of all, we may never get

18  to 53 if someone doesn't use up all their challenges.  But

19  you're striking, your prophylactically striking someone who

11:30 20  could only be an alternate, so you probably don't want to do

21  that on the first.  Assuming everybody uses their peremptories,

22  the alternates will be two of the last four.  Okay?

23        MR. SIMONS:  Thank you.  That helps.

24        THE COURT:  Karen is going to dismiss them.  I'll give

25  you a guys a few minutes, then we'll come up.  I'd like to get

1    through the preliminary charge today if we can.

2            COURTROOM CLERK:  Do you want to make sure have all of

3    them?

4            THE COURT:  Yes, let's make sure we all have the same

5    ones.  Read the ones that are staying.

6            COURTROOM CLERK:  2, 3, 5, 6, 7, 10, 12, 14, 16, 18,

7    19, 20, 21, 22, 23, 25, 27, 30, 32, 34, 35, 36, 37, 41, 42, 46,

8    47, 48, 50, 51, 52, 53 and 55.  Is that what everyone has?

9            THE COURT:  Yes.

11:31  10        MR. SIMONS:  That sounds good to us.

11           MS. SOTO:  Yes.

12           THE COURT:  When I go out, I'll read the ones that are

13   staying.

14       **OPEN COURT:**

15           COURTROOM CLERK:  I'm going to call out a group of

16   numbers.  If your number is called, you're going to stay here.

17   If your number isn't called, you're going to bring your card

18   down to the second floor jury room and let them know you've

19   been excused.  So if your number is called stay.  2, 3, 5, 6,

11:33  20   7, 10, 12, 14, 16, 18, 19, 20, 21, 22, 23, 25, 27, 30, 32, 34,

21   35, 36, 37, 41, 42, 46, 47, 48, 50, 51, 52, 53, and 55.

22           So if I just called your number, stay in your seat.

23   The others, bring your card down to the second floor jury room.

24   Let them know you've been excused from this case.

25           Is anyone here that I didn't call your number?  So

```
 1    we're missing one.  She's in the restroom.
 2           THE COURT:  What number are we missing?
 3           COURTROOM CLERK:  36.
 4           THE COURT:  With the understanding that 36 is missing,
 5    so you can't eyeball that juror right now, let's get started.
 6    We're going to give them a few minutes to go through the list
 7    and then we'll forge forward.
 8           Everyone is back now, okay.
 9     SIDEBAR:
10           THE COURT:  Government, are you guys ready?
11           MR. TOBIN:  Yes, Your Honor.
12           MR. SIMONS:  Yes, Your Honor.
13           MR. TOBIN:  Your Honor, before we begin -- and if
14    you've already covered this, I apologize.  Can we put on the
15    record that the defendant knew he had the right to be present
16    in the jury selection and opted out of that.
17           THE COURT:  Yes.  So Mr. Baxter, you have the right to
18    be out there at jury selection.  You were not out there, so I
19    assume you chose not to be out there, which is fine.  But is
20    that correct?
21           THE DEFENDANT:  Yes, that's correct.
22           THE COURT:  You spoke to him about it, Mr. Simons?  He
23    was spoken to about it?
24           MR. SIMONS:  Yes.
25           THE COURT:  People are more candid when the defendant
```

11:41 (line 10)
11:42 (line 20)

 1    is not standing there, so I appreciate that.  So I wanted to

 2    make sure you knew had that right.

 3              Government first, G1.

 4              MR. TOBIN:  Juror number 7 in seat number 5.

 5              THE COURT:  Okay.  You got to give --

 6              COURTROOM CLERK:  Just give us the number.

 7              MR. TOBIN:  7.

 8              MR. SIMONS:  Juror number 2.

 9              THE COURT:  You've got to give me one more.

11:43 10          MR. SIMONS:  Sorry.  Juror number 10.

 11             THE COURT:  Government?

 12             MR. TOBIN:  Juror number 23.

 13             THE COURT:  23 is G2.

 14             MR. SIMONS:  Juror number 18.

 15             THE COURT:  18 is D3.

 16             MR. SIMONS:  And my second is juror number 27.

 17             THE COURT:  Second is D4.

 18             Mr. Tobin?

 19             MR. TOBIN:  Yes.  This is our next one.  Juror number

11:44 20    36.

 21             THE COURT:  36 is G3.

 22             MR. SIMONS:  Juror number 30.

 23             THE COURT:  D5.

 24             MR. SIMONS:  Juror number 34.

 25             THE COURT:  34 is D6.

1            MR. TOBIN:  Government is content.

2            THE COURT:  So they're going to waive four.  They'll

3    get another shot at five.  Okay.  Your next two?

4            MR. SIMONS:  Juror number 37.

5            THE COURT:  37 is -- what number is that?  D7.  What

6    was that, 37?

7            COURTROOM CLERK:  37.

8            MR. SIMONS:  And juror number 42.

9            THE COURT:  42 will be D8.

11:45 10            Government?

11            MR. TOBIN:  Juror number 12.

12            THE COURT:  12 is G5.

13            MR. SIMONS:  Juror number 48.

14            THE COURT:  48 is D9.

15            MR. SIMONS:  I have one more for now, right?  Juror

16    number 47.

17            THE COURT:  47, D10.  Government, you have one more if

18    you want to exercise it.

19            MR. TOBIN:  I just want to make sure I understand

11:46 20    we're not dealing with alternates now or are we?

21            THE COURT:  The alternates, because you passed on one,

22    right now excluding that last juror I kept in as an extra.  The

23    one before him is not in the running, and the alternates would

24    come out of the four before that.

25            MR. TOBIN:  Okay.  We're content at this time.

                    THE COURT:  Okay.  So let's figure out who the jury is

1    here.  So, Karen, juror number 3 is going to be 1, right?  And

2    then do you want to read this off?

3    

4                    COURTROOM CLERK:  Sure.

5                    THE COURT:  Juror 5 is going to be 2.

6                    COURTROOM CLERK:  So 5 is 2; 6 is 3; 14 is 4; 16 is 5;

7    19 is 6; 20 is 7; 21, 8; 22, 9; 25, 10; 35, 11 --

8                    THE COURT:  What about 32?

9                    COURTROOM CLERK:  Sorry.  32 is 11, sorry.  And 35,

11:48 10  12.

11                    THE COURT:  Okay.  So now the alternates are going to

12    come out of --

13                    COURTROOM CLERK:  41 and 46.

14                    THE COURT:  I want to make sure we got these right.

15    So the alternates that are going to be alternates now are 24 --

16    I'm sorry, 41, 46, 50 or 51.  So defendant, you strike first.

17    So right now the two alternates are going to be 41 and 46,

18    unless you strike one of them.

19                    MR. SIMONS:  Okay.  Sorry, we go first or the

11:49 20  government?

21                    THE COURT:  You go first this time.

22                    MR. SIMONS:  Okay.  So 41 or 46.  If we're content,

23    does that then waive --

24                    THE COURT:  So if you're content, then they can knock

25    out one of those same two.  So you're dealing with four

1    potential jurors, right, depending on how many you knock out.

2          MR. SIMONS:  46.

3          THE COURT:  So you're going to knock out 46.  That's

4    going to be DA1.

5          Right now the alternates are 41 and 50.  If you knock

6    out one of those two, it will be 51.

7          MR. TOBIN:  I have no issues with any of them.  I

8    think we're content.  Yes, we're content, Your Honor.

9          THE COURT:  So the two alternates are going to be 41

11:50 10   and 50.  Right?

11          COURTROOM CLERK:  Yes.

12          THE COURT:  Let's get them seated, please.

13    (End of sidebar.)

14          COURTROOM CLERK:  I'm going to call another group of

15    numbers.  If I call your number, stay in the courtroom, okay?

16    Then the others can go down to the second floor jury room and

17    let them know you've been excused.

18          So when I call your number stay.  3, 5, 6, 14, 16, 19,

19    20, 21, 22, 25, 32, 35, 41 and 50.  So if I called your number,

11:51 20   stay.  The rest can go down to the second floor and let them

21    know you've been excused.

22          Juror number 3 take seat number 2; 5 take seat number

23    2; juror number 6, seat 3; juror number 14, take seat number 4;

24    16, seat number 5; juror number 19, you can take seat number 6;

25    20, seat number 7.  Juror number 21, you can take seat number 8

1    in the back row, that first seat in the back row.  Juror number

2    22, you will be in the back row, second seat in the back row.

3    25, 32, 35, 41, and 50.

4         COURTROOM CLERK:  So I'm going to swear you in.  Can

5    you please stand and raise your right hand.

6         (Jury duly sworn.)

7         THE COURT:  Welcome aboard, gang.  You are our jury.

8    I know it's been a long day, but I'm trying to use your time as

9    efficiently as I possibly can.  So the next thing that I have

11:53 10    are your preliminary instructions, and they are generally about

11    15 or 20 minutes.  I would love to get through them today and

12    then we go right to opening statements tomorrow morning.  But

13    if anybody is so starving or so done that they can't sit

14    another 20 minutes, let me know, and I'll give you the

15    preliminary charge tomorrow.  Any views?

16         Let me ask a different way.  Can everyone make it

17    another 15 or 20 minutes?  Then we'll release you for the day.

18    And then tomorrow we'll start at 9:30.  We'll have a morning

19    break.  We'll give you lunch.  And we'll sit until about 3:30.

11:54 20    And that should get the bulk evidence in this case done.  Okay?

21    So the more I get done today, the less we have to do in the

22    days that remain.

23         All right.  So I'm going to give you some preliminary

24    instructions today.  Before we get to opening statements and

25    the evidence in this case, I want to take a few minutes to talk

to you about your duties as jurors. I should say before I even

start that a lot of what I say to you is negotiated with the

parties where they signed off on it at least before I give it,

so I kind of have to read it because they've signed off on it,

so I'm going to try and read it in as animated and interesting

way as I possibly can, but I am going to be largely reading.

I'm going to give you some preliminary instructions on

the law that you're to follow. At the end of the trial I'll

give you more complete and more detailed instructions on the

law. Those instructions will be in writing, and each of you

will have your own copy in the jury room.

The reason I'm giving you some instructions now

instead of waiting until the end is to give you a little bit of

a framework in considering the evidence and to help you

understand it. I don't want you to think that these

preliminary instructions are the only ones that matter or that

they're somehow more important than the ones that come later.

You must apply the instructions that I give you at the end as a

whole.

It is your duty to decide from the evidence what the

facts are. You and you alone are the judges of the facts. You

will hear the evidence, decide what the facts are and then

apply those fact to the law. You must follow the law as I

explain it, whether you agree with it or not. You must decide

this case based solely on the evidence before you and the law

1   as I explain it to you.

2          Sometimes jurors are curious about what I think, for

3   example, how I think a case should turn out or whether I think

4   a particular witness is believable.  My opinion, if I have one,

5   and I certainly do not have one now, is not relevant.  It is

6   your role, not mine, to decide those issues.  You should not

7   interpret anything I may say or do during the trial as

8   indicating what I think about a witness or what I think your

9   verdict ought to be.

12:55 10        This is a criminal case, as you probably know by now.

11  It's been brought by the United States government.  I'll

12  sometimes refer to the government as the prosecution.  The

13  government is represented at this trial by Dave Tobin and

14  Jessica Soto.  The defendant in this case is Patrick Baxter,

15  who is represented by Joseph Simons and Natalie Sreca.

16         The defendant has been charged with one count of

17  possessing child pornography, one count of receiving child

18  pornography, and one count of producing child pornography.  And

19  that statute, producing child pornography, will sometimes be

12:55 20  referred to as, the statute's name is the exploitation of

21  children.

22         The defendant denies committing the crimes with which

23  he's been charged.  The charges against the defendant are

24  contained in a document called an indictment.  The indictment

25  is just a description of the charges against the defendant.

The indictment is not evidence of anything.  The defendant has pled not guilty to the charges pending against him.  It is a bedrock principle of our system of justice that every person accused of a crime is presumed to be innocent unless and until his guilt is established beyond a reasonable doubt.  This presumption of innocence is critically important.  The defendant has the benefit of that presumption throughout the trial, and you are not to convict him of any charge unless you are persuaded that the government has proved his guilt on that charge beyond a reasonable doubt.

The defendant does not have to prove his innocence. He does not have to put on any evidence.  He does not have to testify.  It is always the government's burden to establish guilt by proving each element of any crime charged beyond a reasonable doubt.  The defendant, Mr. Baxter, has the right to rely upon the failure or inability of the government to establish beyond a reasonable doubt any essential element of an offense charged against him.  That said, the law does not require that the government prove guilt beyond all possible doubt.  Proof beyond a reasonable doubt is sufficient to convict.

At the end of the trial, you'll be asked to render a verdict of guilty or not guilty as to the defendant on each offense charged against him.  Your verdict must be unanimous. That is, you may convict a defendant of a charged offense only

1    if every one of you agrees that he is guilty of that offense

2    beyond a reasonable doubt.  You must give separate

3    consideration to each charge charged against the defendant.

4         You are to perform the duty of finding the facts

5    without bias or prejudice as to any party with complete

6    fairness and impartiality.  The fact that the prosecution is

7    being brought in the name of the United States of America

8    entitles the government to no greater consideration than that

9    accorded to any other party to a investigation.  By that same

12:57 10    token, it is entitled to no less consideration.  All parties,

11    whether a government or an individual, stand as equals at the

12    bar of justice.

13         In order to help you follow the evidence, I'm going to

14    give you a brief summary of the crimes charged, each of which

15    the government must prove beyond a reasonable doubt to make its

16    case.  I will instruct you in more detail on the elements of

17    the crimes charged at the end of the case.  Again, the

18    instructions I give you at the end of the case, much more

19    detailed, will govern your deliberations.

12:57 20         But for present purposes, first, the defendant is

21    charged with knowingly possessing child pornography.  The

22    elements of this crime, each of which must be proven beyond a

23    reasonable doubt are that; one, the defendant knowingly

24    possessed an electronic device; two, the electronic device

25    contained at least one image of child pornography; three, the

defendant knew that the electronic device contained an image of child pornography; four, the image of child pornography had been mailed or moved through interstate or foreign commerce; and five, that at least one of the images involved a prepubescent minor or a minor under the age of 12 years old.

Second, the defendant is charged with knowingly receiving child pornography.  The elements of this crime, each of which must be proved beyond a reasonable doubt, are that; one, the defendant knowingly received the material; two, the material contained at least one image of child pornography; three, the defendant knew that the material contained an image of child pornography; and four, the image of child pornography had been mailed or moved in interstate or foreign commerce.

Lastly, the defendant is charged with sexual exploitation of children, which is also sometimes referred to as producing child pornography, or production.  The elements of this crime, each of which must be proven beyond a reasonable doubt, are that; one, the defendant employed, used, persuaded, induced, enticed, or coerced a minor child to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; two, that the minor child was in fact a minor at the time; and three, that the defendant knew or had reason to know that the visual depiction would be transmitted or transported in interstate commerce, or the visual depiction was produced or transmitted using materials

1   that had moved in or affected interstate commerce, or that the

2   visual depiction had actually itself been transported or

3   transmitted using interstate commerce or in a way that affected

4   interstate commerce.

5          Obviously what I've just given you is a preliminary

6   outline of the elements of the charges.  At the end you'll get

7   much more detailed instructions, including some definitions.

8   If there's any difference between what I just said and what I

9   tell you in the instructions at the end, the instructions at

12:59 10   the end will govern.  These instructions are just to give you a

11   framework for helping you understand what the issues are that

12   we're going to be talking about.

13          I mentioned the word "evidence."  The evidence in this

14   case will probably include the testimony of witnesses, any

15   documents, documents includes photographs and videos, objects

16   or other things received as exhibits, and any facts on which

17   the parties have agreed.  The evidence consists of all of the

18   witnesses' testimony both on direct and cross-examination and

19   all of the exhibits, regardless of which side introduces them.

01:00 20          There are rules that control what you may consider as

21   evidence.  When a lawyer asks a question and the lawyer on the

22   other side thinks the question is not permitted by the rules,

23   that lawyer may object.  The same thing may happen when a

24   lawyer offers something into evidence.  The other side may

25   object.  When a lawyer makes an objection, it might be

1    necessary for me to discuss the issue with the lawyers outside

2    of the hearing of the jury.  That's either a conference at

3    sidebar, or very rarely, I'll call a recess and send the jury

4    out of the room.

5          The purpose of is a conference is so that I can get

6    enough information to make a proper ruling.  Like you, I have

7    not seen the evidence in this case, so I am making these

8    rulings as we go, and sometimes I need more information to make

9    the ruling.  I do everything I can to keep these conferences to

01:01 10   a minimum.

11         One of the very first cases I tried as a trial judge,

12   I realized at the end when I went back and talked to the jury

13   they counted every sidebar.  It was very humbling, and I

14   decided to try to keep it to a duller roar.

15         So certain things are not evidence.  Statements and

16   arguments by the lawyers are not evidence.  The lawyers are not

17   witnesses.  Questions by the lawyers standing alone are not

18   evidence.  Again, the lawyers are not witnesses.  So it's the

19   question and the answer taken together that are the evidence.

01:01 20   Objections are not evidence.  As I said, lawyers have a duty to

21   clients to object when they believe something is improper.

22         Under the rules of evidence, if I sustain an

23   objection, in other words I agree with the lawyer making the

24   objection, that means I'm not allowing the question to be

25   answered or the exhibit to come into evidence, and you should

1    ignore the question and exhibit and should not try and guess

2    what the answer might have been or what the exhibit might have

3    contained.

4        If I tell to you disregard something or I strike it

5    from the record, it is not evidence and you cannot consider it.

6    Sometimes the particular piece of evidence may be received for

7    only a limited purpose, some purposes but not others.  When

8    that happens, I will tell you and I will instruct you on

9    purposes for which either can or cannot be used.

01:02 10        Anything you hear or see about this case outside of

11   the courtroom is not evidence.  I sincerely hope there is

12   nothing like that.  It's one of the reasons I give you lunch

13   out back, not a lot of interaction in the cafeteria.  But you

14   must decide the case based only on what you see and hear in

15   this courtroom.  The indictment is not evidence of anything.

16   It's just the way a person is charged with a crime.

17        Finally, some of you may have heard the terms "direct

18   evidence" and "circumstantial evidence."  Direct evidence is

19   testimony by a witness about what that witness personally saw

01:02 20   or heard or did.  Circumstantial evidence is indirect evidence.

21   That is proof of one or more facts from which one can infer or

22   find another fact.

23        You may consider both direct and circumstantial

24   evidence if the law permits you to give equal wait to both, but

25   it is for you to decide how much weight to give to any piece of

1    evidence.

2          A quick example, if you walk into the room and you see

3    your kid eating a chocolate chip cookie, that is direct

4    evidence that your kid has eaten a chocolate chip cookie.  You

5    saw it with your own eyes.  Circumstantial evidence, you walk

6    in the room, your kid is sitting on the floor, there's crumbs

7    all around him, face is covered in chocolate, the cookie jar is

8    empty.  You have not seen the kid eat the cookie, but you have

9    pretty good circumstantial evidence that the kid did in fact

01:03 10    eat the cookie.

11          In deciding what the facts are, you may have to decide

12    what testimony you believe and what testimony you do not

13    believe.  You may believe everything a witness says, only part

14    of it, or none of it; it's entirely up to you.

15          I want to talk to you briefly about what we call

16    implicit bias.  Implicit bias refers to the fact that everyone

17    has feelings, assumptions, perceptions, fears, stereotypes.

18    Those are implicit biases, things that you may not even be

19    aware of.  An example.  Some people might look at an older

01:03 20    person and think, "A lot of wisdom there."  Others may look at

21    that same person and think, "I wonder if they still have all

22    their marbles."  That's an implicit bias one way or the other

23    about age.  Some people might meet a doctor and assume that

24    she's caring and smart, while others might wonder if she's in

25    it for the money.

1          Other biases go to race or religion or gender.  These

2     hidden or not so hidden thoughts can impact what we see and

3     hear, how we remember what we see and hear, and how we make

4     important decisions.  Because you will be making important

5     decisions in this case, I strongly encourage you to listen to

6     the evidence carefully and to resist jumping to conclusions

7     based on personal likes or dislikes, generalizations, gut

8     feelings, prejudices, sympathies, stereotypes, or biases.

9          The law demands that you return a just verdict based

01:04 10     solely on the evidence, your individual evaluation of that

11     evidence, your reason and common sense, and the instructions

12     that I will give you at the end of the trial once you've heard

13     all the evidence.

14          Some strategies that may be useful to you in doing

15     this include the following:  First, keep an open mind.  Avoid

16     drawing conclusions until the end of the case when you and your

17     fellow jurors deliberate; second, listen closely to each of the

18     witnesses; third, as you listen to the testimony about people

19     involved in this case, consider each person as an individual

01:04 20     rather than as a member of a particular group.

21          Next, many people watch television shows or movies

22     about courts or lawyers or the justice system, and sometimes

23     people can be affected by that when they serve as jurors.

24     Television shows and movies can create false expectations about

25     real life, for example, how the trial is going to proceed or

1    what the evidence might look like.  Don't expect this trial to

2    look like it does on TV.  You must decide this case based on

3    the evidence before you and the law as I give it to you.  Do

4    not decide this case, even in part, based on something you saw

5    in a TV show and that made you think you're going to see it

6    here.

7            Okay.  I'm now going to turn to the conduct of the

8    jury.  There are rules the jurors must follow to ensure that

9    it's a fair trial.  We just went through a lot of trouble, as

01:05 10    you've seen, to impanel a fair jury, and now we want to keep

11    you that way.

12            So, first, do not talk amongst yourselves about the

13    case until the end of the case when you go to the jury room to

14    decide your verdict.  You should feel free to get to know one

15    another.  You can talk about the Patriots, if you can bear it,

16    your favorite Thanksgiving side dish, the weather, your

17    families.  Anything except this case.

18            It's particularly important that jurors not start to

19    pair off and have side discussions with each other outside of

01:06 20    the hearing of the rest of the group.  Whether you intend it or

21    not, you may start to influence each other's opinions and

22    affect each other's thoughts, even if the conversation seems

23    super casual.  So it's important that you wait and make sure

24    everyone hears everything that anyone has to say about the case

25    all at the same time.

Second, do not make up your mind what the verdict should be until after you've gone to the jury room to decide the case and you and your fellow jurors have had a chance to discuss the evidence.  The evidence has to come in one piece at a time.  Something comes first, something's comes last, and it may be the very last question and answer that are the most important in the whole trial, so you have to keep an open mind until then.

Third, don't talk with anyone else about the case until the trial has ended and you've been discharged.  Anyone else, that's family members, friends.  You can tell them you're a juror.  You can tell them it's a criminal case.  But do not tell them anything beyond that until after the case is over and you've been discharged as jurors.

Super predictable, natural, when you get home, someone is going to say, Hey, what is the case about; do you think he's guilty; do you think he's not guilty?  And I know it can feel super awkward, but you cannot have that conversation or answer those questions while this trial is going on.  Again, you may not realize it, but your family and your friends and your loved ones can all have a strong influence on your opinions.  They don't mean any harm, but they haven't been here, they haven't seen the evidence, they haven't listened to the testimony, they haven't heard my instructions.  So you can go ahead and blame it on me if you want, but you have to tell them that the judge

1    ordered you not to talk about the case until it's over.

2         Fourth, no mention of this case or discussion in any

3    way on any social network or any electronic form.  No emails,

4    no text messages, no Twitter, no meta -- whatever they're

5    calling themselves today, no Facebook, nothing on social media

6    or any other online forum.  It's super important.  Nowadays

7    people post all kinds of things on Facebook or Tweet about

8    things that happen to them, but you can't do that here until

9    the case is over.

01:07 10        Fifth, don't let anyone talk to you about the case.

11   If someone should approach you or reach out to you on social

12   media or even in this courthouse, don't talk to them.  Let me

13   know what happened, and I'll take care of it.

14        Sixth, during the trial don't talk to any of the

15   parties, lawyers, witnesses involved in this case.  Don't even

16   say hello to any of them.  It's important that you do justice

17   in this case, but it is also important that you give the

18   appearance of doing justice.  If someone sees you talking to

19   someone on the elevator, even if you're just waiting for the

01:08 20   elevator and you're trying to be polite, it can arouse

21   suspicion, so don't it.  If one of the lawyers or parties or

22   witnesses don't speak to you in the hallway, they are not rude

23   people.  It is because they also understand the rules and know

24   they're not supposed to have any interaction with you.

25        Seventh, I don't expect there to be media coverage of

1    this case.  Should I be wrong about that, you should not read

2    any news stories or articles about the case or anyone involved

3    with it.  Don't listen to any radio stories, television

4    reports, anything like that.  Turn the page, turn off the

5    radio, whatever it takes, although I don't expect there to be

6    any media coverage.

7         No extracurricular research on your own.  No

8    investigation about the case.  Don't look up anything on the

9    internet.  If you think something is missing, you're not

01:08 10  allowed to find that information on your own, even if you think

11   it's harmless or it's just curious or you're frustrated because

12   you think they should have told you something that they

13   haven't.  You must decide the case based solely on the evidence

14   you receive about this case in this courtroom.

15        Lastly, if during the course of the trial you have a

16   problem of any kind, raise your hand.  We'll stop the

17   proceeding.  We'll try to take care of the problem.  If a

18   lawyer steps between you and a witness and you can't see, raise

19   your hand and we'll have the lawyer move.  If you can't hear a

01:09 20  witness, raise your hand.  We'll make sure that the witness

21   repeats the answer and speaks right into the microphone.  If

22   you want water, let us know.  We generally keep it on the ends

23   of the jury box.  I'm okay with you bringing coffee in here

24   too, as long as you promise not to spill it.

25        If you need a break for any reason, let us know and

1    we'll take a break.  If you need to communicate with me and

2    we're not in court, you want to give a note to either the court

3    security officer who will sometimes be outside your door or

4    give it to Karen.

5        The rules are important.  They're intended to make

6    sure that the trial is fair.  So you should please follow them

7    and let me know if you're having any difficulty following them

8    for whatever the reason and we'll address it.

9        I'm going to let you take notes in this case.  Karen

01:10 10   is going to give you a notebook as soon as we are done here.

11   There will be a number on the cover of the notebook that

12   corresponds to your seat number.  Just a couple of warnings

13   about notes.  You don't have to take notes.  You can choose not

14   to take notes.  If you do take notes, don't let the note-taking

15   distract you from listening to the testimony, which is the most

16   important thing.  You want to be able to observe and listen to

17   the witnesses.  Some people like to take a lot of notes, some

18   take none, some people some take some.  It's all fine.  But

19   remember when you go back to deliberate that not everything

01:10 20   that ends up in somebody's notebook is necessarily accurate.

21        So when you return to the jury room to discuss the

22   case, don't assume that just because it's in someone's notes

23   that it actually happened.  Sometimes people write down a part

24   of a question or the question but not the answer or the answer

25   but not the question.  So notes are an aid to recollection.

1    The fact that it's written down does not mean that it

2    accurately reflects what was said.  It will be your collective

3    memory of the evidence that will govern during your

4    deliberations.

5           At the end of the day you leave your notebooks on your

6    chair or in the jury room.  They don't go home with you.  They

7    stay here.  At the end of the trial we destroy the notebooks.

8    No one will ever see them but you.

9           Today we have Kelly here, our court reporter.  I think

01:11  10    sometimes it will be Kelly but sometimes she may shift off with

11    someone else.  It's her job to create a record of everything

12    that happens in this trial.  Sometimes jurors see the court

13    reporter, Kelly, and think they'll be able to have a transcript

14    when they go back to the jury room if they want it.  Not going

15    to have a transcript.  Lots of reasons for that, but the main

16    one is just practical.  There's really not enough time to turn

17    her rough transcript into a final transcript in time for you to

18    look at it.  Her job is tough, it's time-consuming, especially

19    when I'm talking as far as I am right now.

01:11  20           So we're not going to be able to have a final

21    transcript.  So you want to listen carefully.  You want to

22    write down what you think you need to write down, if there's

23    something you particularly want to remember.  I'm going to give

24    one caveat to that.  If there's a little question and answer or

25    a little something you want, we can probably get you that when

1   you're deliberating, but we're not going to be able to give you

2   a transcript of everything that happens.  But if there's

3   something you really want, like one person thinks it's this and

4   one person thinks that was said, we can take care of that for

5   you.

6        Just a couple more.  Opening statements first thing

7   tomorrow.  The government in its opening statement will tell

8   you about the evidence that it intends to put before you so

9   you'll have some idea what the government's case is going to

01:12 10   be.  After the government opens, counsel for the defendant may

11   make an opening if they want to, but they don't have to.

12        Like the indictment, opening statements are not

13   evidence.  Opening statements may reference what the parties

14   think the applicable law to be, but as I mentioned earlier,

15   it's my job to tell you the law, and I'll do that at the end of

16   the trial.

17        After opening or openings, the government will present

18   its evidence which will consist of the testimony of witnesses

19   and may include documents and videos, photos, and other sorts

01:12 20   of exhibits.  After the government's evidence, the defense

21   attorneys may present evidence on behalf of Mr. Baxter, but

22   they are not required to do so.  Both the government and the

23   defense attorneys will have the opportunity to cross-examine

24   any witnesses called by the other side.

25        Again, the defendant is presumed innocent.  It is the

1    government's burden to prove his guilt beyond a reasonable

2    doubt for each element of each offense charged.  The defendant

3    does not have to prove his innocence.  He does not have to

4    cross-examine anyone.  He does not have to testify.  He does

5    not have to put on any evidence.

6          Once you've heard all the evidence, the government and

7    the defendant will be each given time for final arguments.  I

8    suspect that will be on Wednesday.  Like the indictment and

9    opening statements, closing arguments are not evidence.  In

01:13  10    their closing arguments the lawyers for each side will attempt

11    to summarize and help you understand the evidence that was

12    presented.

13          Then I will give you, I'll instruct you on the law

14    that you're to use in reaching your verdict.  Once I've

15    instructed you, you'll leave the courtroom to go back to the

16    jury room to make your decision.  You'll have a written copy of

17    my instructions with you in the jury room that you'll be able

18    to reference during the deliberations.

19          Once you've reached a verdict on each charge against

01:13  20    the defendant, you will fill out the verdict form that I will

21    give you and return your verdict here in open court.  I will

22    then discharge you.  You will never have to reveal your

23    deliberations or explain your verdict to anyone.  Very short

24    trial, but just so we're all on the same page, normal trial day

25    is about 9:30 in the morning until about 3:30 in the afternoon.

1  That will be tomorrow.  Morning break at 11:15.  Lunch break at

2  1:00.

3           When the time comes for you to deliberate, we sort of

4  presume a 9:00 to 5:00 trial day until you reach a decision.

5  But, that said, the deliberation schedule is completely yours

6  to control.  So you'll let us know if you want to knock off at

7  3:30, if you want to stay late, if you want to come in early.

8  You'll set the schedule.

9           To make this work properly and to finish the trial on

01:14 10  the schedule I outlined, we need to be disciplined about it.

11  We can't start in the morning until all of you are here.  I

12  meet with counsel in the morning before the jury comes in so

13  that we're all ready to go, but we cannot start until you are

14  all here.  So that means you should be here before 9:30, a

15  little bit before, so we're ready to go right at 9:30.  And

16  just as an enticement on that, there will be breakfast and

17  coffee in the jury room waiting for you.

18           I want you to know that counsel, all the court

19  personnel, all of us have worked hard during the pretrial phase

01:15 20  of this case to ensure that we stick to the schedule that we've

21  outlined.  Sometimes of course things come up, and there might

22  be a delay.  We might not be able to bring you out until

23  quarter-of-ten or whatever.  Please be patient with us, and in

24  exchange, I will do my very best to keep you informed of the

25  reasons for any delay if we expect a delay.

1          Last instruction.  Under our Constitution, all persons

2     are equal before the law.  All persons accused of a crime are

3     entitled to a fair trial.  You should not hesitate to convict

4     if the government has met its burden of proof beyond a

5     reasonable doubt, and you should not hesitate to acquit if it

6     has not.  But you must be completely and scrupulously

7     open-minded, honest, and fair.  That's your duty and obligation

8     both as jurors in this court but also more importantly as

9     citizens of the United States.

01:15 10          As you will learn, every time I talk to you, these

11     people get a chance to tell me if I've made a mistake, an

12     omission or whatever.  Does the government want to be seen on

13     this?

14          MR. TOBIN:  No, Your Honor.

15          THE COURT:  Mr. Simons, defense?

16          MR. SIMONS:  No, thank you, Your Honor.

17          THE COURT:  All right.  So we're going to be done for

18     the day.  We'll see you at 9:30 tomorrow.  Karen is going to

19     take you out and show you how to get in and out, so you don't

01:16 20     use that door anymore.  You use the jury room.

21          I give the same instruction every night, and it's a

22     paraphrase of what I just gave you.  Keep an open mind.  No

23     communications with anybody about this case and no

24     extracurricular research.  I call that the homework rule.  I

25     want to particularly emphasize the homework rule because we

1    tried a much longer case in here, and jurors went back to

2    deliberate, and one juror asked a question of another juror,

3    and that juror said, "Oh, I looked it up on the internet.  Here

4    is the answer."  We declared a mistrial and we did the entire

5    thing over again, which is not a good use of anyone's time or

6    your tax dollars.  So I'm very emphatic about the no homework

7    rule these days.

8          Thank you, all.  I hope this will be an interesting

9    experience for you.  I really appreciable the attentiveness you

01:16 10    just gave me.  Karen is going to show you out back.  We'll see

11    you in the morning.  Thanks, everyone.

12          COURTROOM CLERK:  All rise for the jury.

13          (Jury exits the courtroom.)

14          THE COURT:  Because of the timetable we're on, I would

15    like to hear your views on the charge at least preliminarily

16    tomorrow at some point.  So they're coming at 9:30.  I'm going

17    to ask you to come at 9:00 so we can start with the charge.

18    But if you guys have other issues you want to discuss, I'll be

19    on the bench as close to 8:30 as I can humanly do it.  I should

01:17 20    be here at 8:30.  My husband is traveling this week, which has

21    its challenges, but I should be here at 8:30.

22          You do not have to be here at 8:30.  I will happily

23    sit here and work.  If, for example, you have an issue you want

24    to discuss, don't wait until like 9:25 to come in.  And if you

25    come in, make sure they know you're coming in so that we can

1    actually have a discussion.  But I will be here pretty much at

2    8:30.  Don't worry about it if you don't have anything to talk

3    about, but let's come at 9:00 and try and see if there's any

4    big issues with the charge.

5              MR. SIMONS:  Understood.

6              THE COURT:  Anything else for today?

7              MR. TOBIN:  No, Your Honor.  Thank you.

8              MR. SIMONS:  No, thank you.

9              THE COURT:  Thanks, everyone.

10             (Adjourned, 1:18 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3            I, Kelly Mortellite, Registered Professional

4    Reporter, Registered Merit Reporter and Certified Realtime

5    Reporter, in and for the United States District Court for the

6    District of Massachusetts, do hereby certify that the foregoing

7    transcript is a true and correct transcript of the

8    stenographically reported proceedings held in the

9    above-entitled matter to the best of my skill and ability.

10                   Dated this 25th day of November, 2024.

11

12                   /s/ Kelly Mortellite

13                   _____

14                   Kelly Mortellite, RPR, RMR, CRR

15                   Official Court Reporter

16

17

18

19

20

21

22

23

24

25