# United States Court of Appeals
## For the First Circuit

———————————

No. 25-1056

UNITED STATES,

Appellee,

v.

PATRICK BAXTER,

Defendant, Appellant.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

———————————

Before

Gelpí, Thompson, and Montecalvo,
Circuit Judges.

———————————

Michael Pabian for appellant.

Alexia R. De Vincentis, Assistant United States Attorney,
with whom Leah B. Foley, United States Attorney, was on brief, for
appellee.

———————————

June 8, 2026

———————————

GELPÍ, **Circuit Judge**.  Patrick Baxter ("Baxter") appeals from his jury convictions for receipt, possession, and production of child pornography.  He challenges the denial of his pre-trial motion to suppress evidence, the sufficiency of the evidence supporting his conviction for production of child pornography under 18 U.S.C. § 2251(a), the constitutionality of that same statute as applied to him, the admission of certain testimonial evidence, and the enhancements applied to his sentence.  For the reasons that follow, we reject his claims and **affirm** his conviction and sentence.

**I. BACKGROUND**

**A. Facts**

"With respect to suppression, our account gives credence to the facts supportably found by the district court."  United States v. Rivera-Morales, 961 F.3d 1, 5 (1st Cir. 2020).  Regarding the sufficiency challenge, we recite "the facts in the light most favorable to the verdict."  United States v. Buoi, 84 F.4th 31, 34 (1st Cir. 2023) (quoting United States v. Paz-Alvarez, 799 F.3d 12, 18 (1st Cir. 2015)).  Lastly, when reviewing the challenges of sentencing error, "we take the facts from the trial record, the undisputed portions of the presentence investigation report, and the transcript of the sentencing hearing."  United States v. Brown, 26 F.4th 48, 53 n.1 (1st Cir. 2022).  We begin by summarizing the

relevant facts, adding more detail as needed throughout our discussion.

On October 29, 2021, the Federal Bureau of Investigation (FBI) applied for a warrant to search Baxter's residence in Melrose, Massachusetts, for evidence of illegal possession and receipt of child pornography. The FBI attached an affidavit from Special Agent Bryce Montoya ("S.A. Montoya") that described the basis for probable cause.

In the affidavit, S.A. Montoya explained that the FBI monitored "Freenet," which is "an Internet-based peer-to-peer (P2P) network that allows users to anonymously share files," and gathered information revealing that a user sent requests for child pornography from an IP address that was later identified as Baxter's. Because the showing of probable cause relied on information derived from Freenet, he described the network's mechanics and the investigative techniques used by the FBI. We reiterate that explication here.

Freenet users agree to provide the network with a portion of storage space on their hard drives. When a user uploads a file onto Freenet, the software breaks it into pieces and encrypts each piece. These pieces are then randomly distributed and stored throughout the network of peers. The software generates an index listing all the file's pieces as well as a unique key -- consisting of letters, numbers, and special characters -- that can be used to

- 3 -

download the file.  Freenet users share these keys on online platforms, such as message boards or websites.

Once a user obtains a key, to download a file, a user must input the key into Freenet.  If the correct key is entered, Freenet requests the individual pieces of the file from that user's peers.  If one of those peers does not have those pieces in its storage, that peer will "divide up and ask its peers for the pieces, and so on."  This means, for example, that:

> if User "A" has 10 peers and requests 1000 pieces of a file, roughly 100 pieces are requested from each one of User A's peers[. . . .]If Peer "B" receives User A's request for 100 pieces of the file, but does not have any of those pieces in its storage, Peer B forwards on the request for those pieces to Peer B's peers.  If Peer B has 10 peers of its own, roughly 10 pieces are requested from each one of Peer B's peers.

For its investigative purposes, law enforcement uses a modified version of Freenet that allows it, once it has inserted itself in the Freenet universe, to view information about requests for file pieces, including the number of peers those peers report to have, and the remaining number of times a request for a piece may be forwarded.  And although the Freenet software "attempts to hide the identity of [a file] requestor," a Freenet user's IP address is visible to other users when they request a file or relay another's request.  Thus, regardless of whether a law enforcement officer employs its modified version of Freenet or uses the normal,

publicly-available version, the officer can view a requestor's IP address.

Law enforcement investigates Freenet users who request file pieces that it suspects to be associated with child pornography files.  When a peer sends a request to a law enforcement computer, officers apply a mathematical formula that allows them to "determine the probability of whether the number of requests received for pieces of a file is significantly more than one would expect if the peer were merely forwarding the request of another" user.  The methodology relies on the following premise: "Because a peer that is merely routing another peer's request would ask its peers for a significantly smaller portion of the pieces of a file than an original requester," the request recipient can determine whether a request "is significantly more likely than not from an original requestor."

After explaining Freenet's mechanics and the FBI's investigative techniques, S.A. Montoya stated that he reviewed information gathered from a Freenet user's requests for pieces of child pornography files from a law enforcement computer.  S.A. Montoya analyzed the number of requested file pieces, the total number of file pieces required to assemble the files, and the number of peers the user had.  He then concluded that the Freenet user was the original requestor of three child pornography files.

- 5 -

To reveal the subscriber information for the IP address attached to the request, law enforcement subpoenaed its servicer. The subpoenaed information revealed that the IP address was associated with Baxter's home address.

The warrant to search Baxter's home issued on October 29, 2021. Investigators executed the search warrant on November 2, 2021, and seized eight electronic devices, including an Apple MacBook laptop computer and a Samsung solid state drive ("SSD"). Agents conducted an on-site search of the MacBook and found no child pornography on that device. The SSD, however, was encrypted and required the expertise of a specialized FBI unit to determine the password. After gaining access, the agents found two profiles on the SSD: "Baxter" and "Backup" (the "Backup account"). The email associated with the Backup account was "pwbaxter@gmail.com," which matched the Apple ID on Baxter's cell phone.

The Backup account contained internet search history related to Freenet and the AliExpress Flying Train Store ("AliExpress"), listed Freenet as a favorited bookmark within Safari, and contained hundreds of messages from Freenet's messaging board system, where users can share the keys needed to download child pornography files. It also included a "Freenet" folder and, within that, a "downloads" subfolder with over ninety child pornography files. An additional 420 child pornography

videos were stored in folders with titles such as "PTHC" (a known acronym for "preteen hardcore"); "PTSC" (a known acronym for "preteen softcore"); and "spy cams."

The SSD also contained photographs and videos of a minor (the "minor") in various states of undress, taken at Baxter's home in July 2019 using an iPhone XS. In two of these photographs, the minor appears standing naked in a bathroom doorway (the "bathroom photographs"). In one image, she is removing her top, which largely covers her face, and her naked body, including her pubic area, is visible. The other image depicts a closer view of the minor's naked lower body, including her pubic area. In a series of photographs taken in a bedroom (the "bedroom photographs"), the same minor is wearing a shirt with no pants or underwear as she sits, stands, and crawls on a bed. And in two videos, the same minor appears fully nude in the same bedroom (the "bedroom videos"). In the first video, the minor, her brother, and Baxter's son are running, and Baxter is heard calling out that it is bathtime. The camera later pivots to focus on the minor "as she jumps onto a bed and, lying on her back, spreads her legs and lifts her buttocks to expose her vagina and anus." As the government describes in its briefing, in the second video, Baxter is heard speaking, while the camera focuses on the minor "lying and rolling on a bed" with her pubic area exposed.

### B. Procedural History

The United States filed a criminal complaint against Baxter on December 7, 2022. On January 5, 2023, a grand jury returned a two-count indictment for (1) possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (the "possession count") and (2) receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1) (the "receipt count"). On August 1, 2024, a grand jury issued a superseding indictment with the initial two counts and an additional count for sexual exploitation of children in violation of 18 U.S.C. § 2251(a) and (e) (the "production count"). Baxter then moved to suppress the evidence obtained from the search of his home, arguing that law enforcement illegally seized his devices in violation of the Fourth Amendment. The district court denied the motion.

On October 9, 2024, a jury convicted Baxter of all three charges. At the sentencing hearing on January 29, 2025, the district court found that Baxter's base offense level was twenty-two, pursuant to U.S.S.G. § 2G2.2(a)(2). The district court then added the following enhancements: a two-level enhancement for depictions of prepubescent minors pursuant to U.S.S.G. § 2G2.2(b)(2); a four-level enhancement for sadistic or masochistic images pursuant to U.S.S.G. § 2G2.2(b)(4); a five-level enhancement for a pattern of activity involving the sexual exploitation of a minor pursuant to U.S.S.G. § 2G2.2(b)(5);

- 8 -

a two-level enhancement for the use of a computer pursuant to U.S.S.G. § 2G2.2(b)(6); a five-level enhancement for the possession of more than 600 child pornography images pursuant to U.S.S.G. § 2G2.2(b)(7)(D); a two-level vulnerable victim enhancement pursuant to U.S.S.G. § 3A1.1(b)(1); and a two-level obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1.

The district court calculated a total offense level of forty-four, which it then reduced to forty-three per the sentencing guidelines' requirements. See U.S.S.G. Ch. 5, Pt. A, cmt. n.2 ("An offense level of more than [forty-three] is to be treated as an offense level of [forty-three]."). Baxter's total offense level and criminal history category of I resulted in a guidelines range of life imprisonment, which was capped at 840 months by the statutory maximum sentences for the three counts. See 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), 2252A(a)(2)(A), 2252A(b)(1), 2251(a), 2251(e).

The district court sentenced Baxter to 240 months' imprisonment. While it essentially imposed a "guideline[s] sentence" for the receipt and possession counts, it considered other factors for the production count, including the nature and repetition of Baxter's conduct and whether his conduct traumatized the minor at the time it occurred. Accordingly, the court imposed a term of fourteen years for each of the possession and receipt

counts and a term of twenty years for the production count, to be served concurrently.

## II. DISCUSSION

Baxter asserts a slew of challenges on appeal, namely that: (1) the district court erred in denying his motion to suppress; (2) there was insufficient evidence to support his conviction for production of child pornography under 18 U.S.C. § 2251(a); (3) § 2251(a) is unconstitutional as applied to him; (4) the district court admitted testimony in violation of Rules 602 (lack of personal knowledge), 802 (hearsay), and 1002 (best evidence rule) of the Federal Rules of Evidence; and (5) the district court erred in applying three sentencing enhancements. We address each claim of error *seriatim*.

## A. Motion to Suppress

When reviewing a district court's denial of a motion to suppress, "we examine [its] factual findings for clear error and its legal conclusions, including its ultimate constitutional determinations, de novo." United States v. Rodriguez, 115 F.4th 24, 36-37 (1st Cir. 2024) (citation modified). "We may uphold a suppression ruling on any ground made manifest in the record." United States v. Sheehan, 70 F.4th 36, 43 (1st Cir. 2023).

Baxter puts forth a number of reasons as to why S.A. Montoya's affidavit to support the search warrant was insufficient to demonstrate probable cause and thus, the evidence of child

pornography seized during that search should have been suppressed. He maintains that the facts alleged in S.A. Montoya's affidavit did not "prove" that the identified Freenet user attempted to download child pornography, rather than merely forward another user's request. According to Baxter, S.A. Montoya's description of the information he reviewed was insufficient to establish that the Freenet user was the original requestor of the file.[1]   He suggests that S.A. Montoya should have explained why the requests were not consistent with merely forwarding another user's request as well as how many pieces would be requested if that were the case. This allegedly "deprived [the magistrate judge] of the necessary information to conduct her own probable cause analysis."

The Fourth Amendment provides, in relevant part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

---

[1] With this argument, Baxter takes issue with S.A. Montoya's reliance on an "unspecified" academic paper that describes a "method to determine whether it is significantly more probable than not that . . . a given Freenet computer is the original requestor of a file." (Omission in original.) Baxter also deems insufficient S.A. Montoya's conclusion that "the number of requests for file pieces [wa]s significantly more than one would expect to see if the user of [the] IP address . . . were merely routing the request of another user." (Alterations in original). To reach this conclusion, S.A. Montoya considered "the number of requested file pieces, the total number of file pieces required to assemble the file, and the number of peers the user had." And he proceeded to list in the affidavit "the number of pieces requested by the IP address, the total number of pieces needed to assemble the file, and the average number of peers for several requests relating to alleged child pornography."

searched, and the persons or things to be seized."  U.S. Const. amend. IV.  A finding of probable cause "does not require proof of guilt beyond a reasonable doubt."  Jordan v. Town of Waldoboro, 943 F.3d 532, 542 (1st Cir. 2019), abrogated on other grounds by Thompson v. Clark, 596 U.S. 36 (2022).  Rather, it "demands proof sufficient to support a fair probability that a crime has been committed and that evidence of that crime is likely to be found within the objects to be searched."  Sheehan, 70 F.4th at 44 (quoting United States v. Coombs, 857 F.3d 439, 446 (1st Cir. 2017)).  Probable cause "is not a high bar, as it requires only the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act."  United States v. Cortez, 108 F.4th 1, 8 (1st Cir. 2024) (alteration in original) (internal citations and quotation marks omitted).  When assessing whether a finding of probable cause is justified, "we look to the totality of the circumstances as they are set forth in the warrant application and its accompanying affidavit."  Sheehan, 70 F.4th at 44.  Contrary to Baxter's argument, we conclude that a "fair probability" existed here.  Cortez, 108 F.4th at 8.

In his affidavit, S.A. Montoya described the operation of the Freenet software and gave a detailed explanation of how requests and transfers are made among peers.  He stated that he studied "a peer-reviewed, publicly-available academic paper describing the methodology of [the] mathematical formula" used by

- 12 -

law enforcement to determine whether a Freenet user is likely the original requestor of a file and offered to provide the paper to the court upon request. "The academic paper's detailed evaluation," he explained, "finds that a formal mathematical formula based on [the] reasoning [used by law enforcement] is highly accurate" in that it "has a high true positive rate and a low false positive rate." S.A. Montoya then asserted that he analyzed the requests made from Baxter's IP address and concluded that they likely came from an original requestor.

While S.A. Montoya did not explain why the user's actions were incompatible with the mere forwarding of other users' requests, that level of detail was not required to support a finding of probable cause. See United States v. Bosyk, 933 F.3d 319, 332 (4th Cir. 2019) ("A warrant application is 'judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added.'" (quoting United States v. Allen, 211 F.3d 970, 975 (6th Cir. 2000) (en banc))). S.A. Montoya's description of (1) the information gathered from Freenet, (2) the mathematical formula applied, and (3) the conclusion he drew therefrom established a fair probability that the user of Baxter's IP address attempted to download child pornography files. See Sheehan, 70 F.4th at 44. The affidavit included more than sufficient information to clear the relatively low bar that is probable cause. Baxter's argument therefore fails.

- 13 -

### B. Production of Child Pornography

### i. Sufficiency of Evidence

Next, Baxter argues that the evidence at trial was insufficient to support his conviction for production of child pornography under § 2251(a) because the images underlying the production charge do not constitute "lascivious exhibitions" within the meaning of § 2256(2)(A).

Baxter's preserved sufficiency challenge is subject to de novo review.[2]  <u>United States</u> v. <u>Charriez-Rolón</u>, 923 F.3d 45, 51 (1st Cir. 2019).  We note, however, that the standard of review ultimately has no bearing on our resolution of this issue.

Section 2251(a) provides for the punishment of "[a]ny person who . . . uses . . . any minor to engage in . . . any sexually explicit conduct for the purpose of producing <u>any</u> visual depiction of such conduct . . . ."  18 U.S.C. § 2251(a) (emphasis added).  And as relevant here, § 2256(2)(A), in turn, defines "sexually explicit conduct" to include the "lascivious exhibition of the anus, genitals, or pubic area of any person."[3]

---

[2] Notwithstanding Baxter's failure to renew his motion for judgment of acquittal at the close of all evidence, the government agreed below that, under the unique circumstances of this case, his sufficiency claims over the production count were preserved.

[3] As part of Baxter's sufficiency challenges, he raises two arguments that are foreclosed by circuit precedent.  First, he invites us to redefine the term "use" under § 2251(a) to require a defendant to "play an active part, not only in the taking of the image, but in the minor's conduct depicted in the image."  This court, however, has already established that this term "is met

Baxter argues that no reasonable jury could have determined that the bathroom photographs and bedroom videos were "lascivious" under the so-called Dost factors.[4]  See United States

when," as here, "a defendant personally films or photographs a minor engaged in sexually explicit conduct if the defendant intends to make such a depiction."  Ortiz-Graulau v. United States, 756 F.3d 12, 18 (1st Cir. 2014).  Second, Baxter urges us to deviate from our previous interpretation of the term "lascivious" and instead adopt an out-of-circuit interpretation which holds that an image must display a minor's "anus, genitalia, or pubic area in a manner connoting that the minor . . . exhibits sexual desire or an inclination to engage in any type of sexual activity" for it to be considered "lascivious" under § 2256(2)(A).  United States v. Hillie, 39 F.4th 674, 685 (D.C. Cir. 2022).  But this court flatly rejected this reading of "lascivious exhibition" in United States v. Frabizio, 459 F.3d 80 (1st Cir. 2006).  See id. at 89 ("The absence of a sexual come-on . . . does not mean that an image is not lascivious," for "[c]hildren do not characteristically have countenances inviting sexual activity, and [§ 2256(2)(A)] does not presume that they do.").  Because we are bound by these controlling precedents, we do not consider these arguments further.  See United States v. Bowers, 27 F.4th 130, 134-35 (1st Cir. 2022).

[4] In determining whether a material depicts a "lascivious" exhibition, juries are often instructed to look to the following factors:

> (1) whether the genitals or pubic area are the focal point of the image; (2) whether the setting of the image is sexually suggestive (i.e., a location generally associated with sexual activity); (3) whether the child is depicted in an unnatural pose or inappropriate attire considering her age; (4) whether the child is fully or partially clothed, or nude; (5) whether the image suggests sexual coyness or willingness to engage in sexual activity; and (6) whether the image is intended or designed to elicit a sexual response in the viewer.

Frabizio, 459 F.3d at 87 (quoting United States v. Amirault, 173 F.3d 28, 31 (1st Cir. 1999)).  These factors need not all be

v. Dost, 636 F. Supp. 828 (S.D. Cal. 1986). Accordingly, Baxter contends that his production conviction should not stand. We reject this argument as flawed because Baxter concedes that the bedroom photographs may constitute "lascivious" exhibitions under the Dost factors. See id.

Under § 2251(a), a single lascivious exhibition of a minor is enough to support a conviction for production of child pornography. Cf. United States v. Smith, 919 F.3d 1, 16 (1st Cir. 2019) (holding that defendant's six convictions for violations of § 2251(a) were not multiplicitous because he had produced six separate visual depictions of a minor engaged in sexually explicit conduct); see also United States v. Wells, 843 F.3d 1251, 1256 (10th Cir. 2016). Whether a material depicts a "lascivious" exhibition "is a question of fact for the jury" that must be analyzed under the Dost factors. United States v. Frabizio, 459 F.3d 80, 85 (1st Cir. 2006).

Baxter does not dispute that a reasonable jury could have found that the bedroom photographs constituted "lascivious exhibitions" under the Dost factors. See Dost, 636 F. Supp. at 832. This concession alone dooms his argument because the jury's finding to this effect was enough to sustain the production

_____

present for a depiction to be considered lascivious. See id. at 89.

- 16 -

conviction.  With that said, we need not explore Baxter's attacks on the sufficiency of the evidence any further.

We next turn to Baxter's related contention that "it is impossible to tell whether the jury relied" on the alleged "non-lascivious images" -- the bedroom videos and the bathroom photographs -- or on the bedroom photographs in returning its verdict.  He argues that this case presents the very scenario contemplated by Yates v. United States, 354 U.S. 298 (1957) overruled on other grounds by Burks v. United States, 437 U.S. 1 (1978), where a "verdict is supportable on one ground, but not on another," and because "it is impossible to tell which ground the jury selected," such verdict "[must] be set aside."  Id. at 312. Baxter misunderstands the caselaw he seeks to apply.

Reversal may be warranted under Yates only where the jury has "been left the option of relying upon a legally inadequate theory."  Griffin v. United States, 502 U.S. 46, 59 (1991) (emphasis added) (discussing Yates).  But that is not the case where the jury has instead "been left the option of relying upon a factually inadequate theory, since jurors are well equipped to analyze the evidence."  United States v. Mehanna, 735 F.3d 32, 51 (1st Cir. 2013) (emphasis omitted) (quoting Griffin, 502 U.S. at 59).  Thus, Yates merely contemplates reversal based on the jury's reliance on improper legal grounds, and not factual grounds, as Baxter seems to argue.  See Griffin, 502 U.S. at 59.

- 17 -

No erroneous legal theory was presented to the jury here. Rather, it was properly instructed to consider the Dost factors in determining whether the depictions were lascivious. As the finders of fact, the jurors were entitled to evaluate whether the depictions constituted lascivious exhibitions. And, as Baxter does not seem to dispute, there was a factual basis for the jury's conviction on the production count -- the bedroom photographs. Baxter's challenge on the sufficiency of the evidence, and his related Yates argument, therefore fail.[5]

### ii. As-Applied Challenge to § 2251(a)

Baxter brings an as-applied challenge to the constitutionality of § 2251(a). Before turning to the merits of his argument, we first consider the parties' dispute regarding the applicable standard of review for this issue. The government contends that Baxter did not raise this issue below, and thus plain-error review applies. Baxter argues that he preserved this

---

[5] Baxter also makes a First Amendment argument, which rests on the assumption that a reasonable jury should have found the bathroom photographs and bedroom videos to be "non-lascivious." See United States v. Hilton, 386 F.3d 13, 16 (1st Cir. 2004) ("The First Amendment does not protect obscenity, or the possession of child pornography produced using children." (internal citations omitted)). We have already rejected this assumption above. Further, because this argument implicates the jury's fact-finding task, and not the application of a legally erroneous theory, Yates is again inapplicable. See Mehanna, 735 F.3d at 50-51 ("[J]urors are endowed with expertise in factfinding. That presumed expertise is not vitiated even when performing the factfinding task requires them to separate constitutionally protected conduct from illegal conduct." (internal citations omitted)).

challenge through his Rule 29 motion for acquittal, and thus de novo review applies.

In United States v. Facteau, 89 F.4th 1 (1st Cir. 2023), we explained that a Rule 29 motion that "assert[s] a general challenge to the sufficiency of the [g]overnment's evidence on all counts" is "adequate to generally preserve the issue of sufficiency of the evidence" on those counts, "whether stated or unstated." Id. at 39 n.26 (internal quotations omitted).  If, however, "a defendant 'give[s] specific grounds for a Rule 29 motion,'" then "all grounds not specified" are deemed waived. Id. (alteration in original) (quoting United States v. Marston, 694 F.3d 131, 134 (1st Cir. 2012)).  Baxter's appeal involves both a general challenge and a specific challenge.

During trial, Baxter moved for a general judgment of acquittal as to all three counts.  Post-trial, Baxter filed another motion for judgment of acquittal with specific grounds related to the production count.  Neither of them raised the as-applied challenge now brought on appeal.

This circuit has not yet decided whether a general Rule 29 motion preserves arguments not raised in a subsequently filed Rule 29 motion that identifies specific grounds for acquittal. Compare Marston, 694 F.4th at 135 (suggesting in dictum that when a general sufficiency claim is accompanied by specific claims, the general claim may preserve all potential objections), with United

States v. Sorensen, 134 F.4th 493, 499 (7th Cir. 2025) (holding that general motions may "preserve for appeal specific arguments not raised in the more narrowly focused motion"). And we need not do so today. Because Baxter's claim fails regardless of the standard applied, we assume instead, favorably to him, that the claim was preserved. See United States v. Teganya, 997 F.3d 424, 433 (1st Cir. 2021).

Baxter argues that § 2251(a) is unconstitutional as applied to him because his conduct is "not within the sphere of activity identified by Congress as the basis for its exercise of power under the Commerce Clause." To support this argument, he states that all the images were taken at his home and stored on a drive maintained at that location. Further, he explains that "[t]here was no evidence that [he] or anyone else distributed or intended to distribute the images."

We begin our analysis with the text of § 2251(a). This provision criminalizes the production of child pornography (1) "if such person knows or has reason to know that such visual depiction will be transported or transmitted" in interstate commerce; (2) "if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate . . . commerce"; or (3) "if such visual depiction has actually been transported or transmitted using any

means or facility of interstate . . . commerce or in or affecting interstate . . . commerce." 18 U.S.C. § 2251(a) (emphasis added).

In enacting § 2251(a), Congress chose to "regulate[] a class of activities that substantially affects interstate commerce." United States v. Morales-De Jesús, 372 F.3d 6, 17 (1st Cir. 2004). So "a defendant's claim that his personal activities did not affect interstate commerce fails if his activity is within that class." Id. To satisfy the interstate-commerce element of § 2251(a), "the government is not required to prove that the defendant's actions, standing alone, had an effect on interstate commerce" nor that the defendant distributed the depictions. Id. at 17. A showing that the materials used to produce the depiction were moved in interstate or foreign commerce suffices. 18 U.S.C. § 2251(a). Here, the government made this showing through S.A. Montoya's testimony that the iPhone at issue in the production count was manufactured outside of Massachusetts. As such, Baxter's conduct clearly falls under § 2251(a)'s jurisdictional hook. We therefore reject Baxter's as-applied challenge.

### C. Evidentiary Errors

Baxter contends that the district court admitted testimony in violation of the rule requiring personal knowledge, the rule against hearsay, and the best evidence rule. See Fed. R. Evid. 602, 801(c), 802, 1002. He concedes that he raised none of his evidentiary challenges in the district court and that, as a

result, our review is for plain error.  See, e.g., United States v. Mulero-Díaz, 812 F.3d 92, 96 (1st Cir. 2016) (reviewing an unpreserved evidentiary challenge under the plain error standard). To prevail under this standard, he "must show that (1) an error occurred; (2) the error was plain; (3) the error affected [his] substantial rights; and (4) the error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'"  Id. (second alteration in original) (quoting United States v. Ortiz-García, 665 F.3d 279, 285 (1st Cir. 2011)).

### i. Personal Knowledge

Baxter first challenges the admission of certain testimony by S.A. Montoya relating to the Freenet investigation. At trial, S.A. Montoya testified that he "received a lead from an FBI headquarters unit" that an IP address associated with Baxter's residence "was attempting to download child pornography."  Baxter argues that this testimony impermissibly relied on the insight of other investigators, rather than S.A. Montoya's personal observations.  See Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Even if we accept Baxter's contention that this testimony constituted error, his claim fails under the third prong of plain error review.  Prong three requires Baxter to show that the error affected his substantial rights.  United States v.

Duarte, 246 F.3d 56, 60 (1st Cir. 2001).    An error affects substantial rights when there is "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different."  United States v. Velázquez-Aponte, 940 F.3d 785, 800 (1st Cir. 2019) (citation modified).    He cannot make that showing here.

Baxter contends that the third prong is met because "[t]he government's case against [him] was a circumstantial one." "While there was evidence that Baxter used the [SSD]," he asserts, "there was no direct evidence that he was responsible for downloading child pornography onto it."    Baxter's argument, as we understand it, is that the evidence against him would have been insufficient to convict absent S.A. Montoya's testimony that a Freenet user attempted to download child pornography from Baxter's IP address.

As an initial matter, "we place 'no premium . . . upon direct as opposed to circumstantial evidence; both types of proof can adequately ground a conviction.'"  United States v. Oliver, 19 F.4th 512, 516 (1st Cir. 2021) (omission in original) (quoting United States v. Ortiz, 966 F.2d 707, 711 (1st Cir. 1992)).    With this rule in mind, we now review the circumstantial evidence presented at trial.

The Backup account on the SSD was associated with Baxter's personal email.  This account had Freenet bookmarked in

- 23 -

Safari, contained hundreds of messages from Freenet's messaging board, and included a "Freenet/downloads" folder with over ninety child pornography files.  Perhaps most importantly, Baxter opted to testify at trial and, in doing so, he indicated that he alone used it.  Moreover, Baxter's wife also testified to this effect. The jury could have reasonably inferred from this evidence that Baxter downloaded the child pornography on the SSD.  See United States v. Maymí-Maysonet, 812 F.3d 233, 236 (1st Cir. 2016) ("[C]ircumstantial evidence and the inferences drawn from it may be sufficient to sustain a conviction."); see also Charriez-Rolón, 923 F.3d at 51 (the relevant question in reviewing a sufficiency of the evidence claim is whether a "rational jury could have found [the defendant] guilty beyond a reasonable doubt").  On this record, we conclude that it is highly improbable that, but for S.A. Montoya's testimony, the jury would not have convicted Baxter of all three counts.

Baxter also contends that the government failed to lay a sufficient foundation for S.A. Montoya's personal knowledge that "to obtain child pornography files, [Freenet] users have to identify a key for that file."  (Alteration in original.).  See Fed. R. Evid. 602.  Rather, Baxter explains, S.A. Montoya's knowledge of Freenet comes from observations he made in his training.  And according to Baxter, this testimony improperly supported the government's claim that he "knowingly" committed the

receipt and possession offenses, as required for conviction under the relevant statutes. See 18 U.S.C. § 2252A(a)(2)(A), 2252A(a)(5)(B).

To support his argument, Baxter relies on United States v. O'Donovan, 126 F.4th 17 (1st Cir. 2025). In O'Donovan, an FBI examiner testified that his knowledge about the transmission of iMessages was based on FBI training classes and his general experience with mobile devices. Id. at 36. On cross-examination, however, he admitted that his knowledge on the matter was "based solely on what an FBI instructor had told him and, even when pressed, he could not provide any more detail about how iMessages [were] transmitted." Id. (emphasis added). We thus concluded that the FBI examiner lacked personal knowledge of how iMessages were transmitted, so he could not offer lay testimony on that matter. Id.

O'Donovan is clearly distinguishable from the instant case. Here, S.A. Montoya testified that he "observed Freenet in [his] training" and, when asked, provided detailed testimony about how it worked. Therefore, we see no error, let alone plain error, in the admission of this testimony.

**ii. Jurisdictional Element of the Receipt and Possession Counts**

Baxter argues that the district court erred in admitting hearsay evidence to establish the jurisdictional element of the receipt and possession counts. See 18 U.S.C. § 2252A(a)(2)(B); 18

U.S.C. § 2252A(a)(5)(B).  He asserts that the government failed to establish a proper foundation for S.A. Montoya's personal knowledge of the SSD's place of manufacture and hence this testimony was excludable on hearsay grounds.  See Fed. R. Evid. 602, 802.

Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing" and "a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  With certain exceptions, hearsay is inadmissible.  Fed. R. Evid. 802.  Ultimately, statements that are not based upon a declarant's personal knowledge, and are instead based on inadmissible hearsay, are not admissible at trial.  See Fed. R. Evid. 602, 802.

Section 2252A(a)(2)(B) criminalizes the receipt of child pornography "using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer."  18 U.S.C. § 2252A(a)(2)(B).  Section 2252A(a)(5)(B) punishes the possession of child pornography which "has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means" or which "was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any

means."  18 U.S.C. § 2252A(a)(5)(B).  This element, the district court explained, could be satisfied for both counts if either (1) the image or video had been transmitted over the internet or (2) the device used to store the image or video was manufactured outside of Massachusetts.  <u>See</u>  18  U.S.C.  § 2252A(a)(2), 2252A(a)(5)(B).

To establish the jurisdictional element for the receipt and possession counts, the government offered S.A. Montoya's testimony that his "research indicated that Samsung SSDs are manufactured in Korea."  Absent this "clear error," the argument goes, the jury would have found the jurisdictional element of both counts unproven.  The government counterargues that even if this admission was erroneous, it did not affect Baxter's substantial rights because other evidence, which Baxter does not challenge on appeal, satisfied the first method of proving jurisdiction.  We conclude that the government's argument is sound.

At trial, the jury heard evidence that the investigation of this case started when S.A. Montoya received a lead that an IP address associated with Baxter's residence was attempting to download child pornography.  In his testimony, S.A. Montoya defined an IP address as "a unique string of numbers" that "identifies specific devices connected to the <u>internet</u> and their locations." (Emphasis added.).  Later, when asked about Freenet, S.A. Montoya defined it as an "<u>internet-based</u> peer-to-peer network" that

- 27 -

"allows users to anonymously share files, to chat on message boards, and to access websites within Freenet, which are also known as freesites." (Emphasis added.). Baxter argues that the government did not pose transmission over the internet as an alternative ground to establish the jurisdictional element to the jury and that S.A. Montoya's "training did not provide a sufficient basis in personal knowledge for his testimony on [that] point" either, again citing O'Donovan.

Having already made a determination regarding S.A. Montoya's personal knowledge of Freenet, see supra Section II.C.i, and because the jury was free to draw its own inferences and conclusions from the evidence, regardless of what the government argued at trial, United States v. Condron, 98 F.4th 1, 21 n.27 (1st Cir. 2024), we find Baxter's argument unavailing. The record permitted the jury to find that Freenet required the use of the internet for the transmission of files. As such, Baxter again loses on the third prong of the plain error test.

### iii. Jurisdictional Element of the Production Count

With regard to the production count, § 2251(a) required the government to prove that the depiction was produced or transmitted using materials that had been "mailed, shipped, or transported in or affecting interstate or foreign commerce." 18 U.S.C. § 2251(a). In his testimony, S.A. Montoya testified that the iPhone at issue was manufactured outside of Massachusetts. On

appeal, Baxter argues that the government failed to lay a sufficient foundation for S.A. Montoya's personal knowledge of this point.  We take Baxter's argument to be that the district court erred in admitting S.A. Montoya's testimony on this matter.

Federal Rule of Evidence 602 provides that "[e]vidence to prove personal knowledge may consist of the witness's own testimony."  Fed. R. Evid. 602.  This knowledge may include "inferences and opinions," so long as the witness acquires it through "personal observations and experiences." United States v. Flores-Rivera, 787 F.3d 1, 28 (1st Cir. 2015) (quoting United States v. Rodriguez, 162 F.3d 135, 144 (1st Cir. 1998)).  "The test is 'whether a reasonable trier of fact could believe the witness had personal knowledge.'" United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992) (quoting Folio Impressions, Inc. v. Byer Cal., 937 F.2d 759, 764 (2d Cir. 1991)).  Although a district court may not "do away with the foundation requirement of Rule 602 or [] allow testimony that is shown to be without adequate basis in personal knowledge," it does have "some discretion in evaluating such an initial showing." United States v. Davis, 792 F.2d 1299, 1304 (5th Cir. 1986).

S.A. Montoya testified that he had been a member of the FBI Boston Child Exploitation -- Human Trafficking Task Force for six years, where his primary duties included investigating the possession, receipt, distribution, and production of child

- 29 -

pornography. He also stated that he had been involved in at least one hundred child exploitation cases while working in that role. As to the iPhone XS, S.A. Montoya testified that he gathered information on the device through a subpoena served upon Apple. After testifying as to his familiarity with the records that Apple provided, he described several pieces of information contained therein.

We think that a factfinder could have reasonably inferred from S.A. Montoya's testimony that he had personal knowledge on the iPhone's place of manufacture. His exposure to information relating to the device, coupled with his previous experience in conducting child exploitation investigations, could reasonably support a finding of his firsthand knowledge on the matter. And, in any event, Baxter fails to provide any specific reason to question such personal knowledge. Cf. Davis, 792 F.2d at 1304 (holding that the district court did not abuse its discretion by admitting a witness's testimony on his personal knowledge when record evidence indicated that he had "personal connection to the subject matter," nothing suggested that he did not have such knowledge, and opposing counsel made no showing of his lack of personal knowledge). Thus, we are not persuaded by Baxter's challenge to the admissibility of S.A. Montoya's testimony regarding the iPhone's place of manufacture.

- 30 -

Baxter's challenges to the evidence regarding the jurisdictional elements of his convictions therefore fail.

### iv. Additional Hearsay Challenges

Baxter asserts additional hearsay challenges on appeal. First, he contends that S.A. Montoya's testimony that "AliExpress is an online marketplace," which, according to his research, "appears" to "sell[] lingerie, to include thongs, in children's sizes" constituted hearsay. Second, he argues that Detective Yu Kajita's[6] ("Detective Kajita") testimony that, based on "[a] simple Google search," he found that the password for the SSD "had to do with a four-cylinder engine that was used in the Nissans in the '90s," was also inadmissible hearsay. These arguments, however, are wholly conclusory. Baxter fails to address the four prongs of plain error review on both issues and cite any applicable caselaw. Accordingly, both claims are waived for lack of development. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

### v. The Best Evidence Rule

Baxter attacks S.A. Montoya's testimony from another angle: the "best evidence rule." See Fed. R. Evid. 1002. S.A. Montoya testified that the SSD's Backup account included internet

---

[6] Detective Kajita is a detective with the Brookline Police Department, who testified for the government.

search history for Freenet and AliExpress, bookmarked Freenet in the Safari browser, and contained messages from Freenet's messaging board system. Because the government did not enter the SSD's "underlying data" into evidence, Baxter argues that the evidence regarding the content of the SSD violated Federal Rule of Evidence 1002, commonly known as "the best evidence rule." And because this testimony undermined Baxter's assertion that he did not "intentionally use[] Freenet," he argues that "it was prejudicial."

Federal Rule of Evidence 1002 requires the production of "[a]n original writing, recording, or photograph . . . in order to prove its content." Fed. R. Evid. 1002. While S.A. Montoya's testimony about the contents of the SSD might not be the "best evidence" of the data, see United States v. Bennett, 363 F.3d 947, 953 (9th Cir. 2004), Baxter's claim once again falters on the third prong of the plain error test.

The jury saw substantial corroborating evidence from which it could conclude that Baxter intentionally used Freenet to download child pornography. The government, for instance, entered into evidence an image of the "Freenet/downloads" folder stored in the SSD's Backup account. Detective Kajita testified that the folder included files that were downloaded from Freenet and saved on the SSD. This testimony, coupled with Baxter's own testimony that he was the sole owner and user of the SSD, makes Baxter's

argument weak.  Because we find it unlikely that the outcome of Baxter's case would have been different had this testimony been excluded, his argument fails.

### D. Sentencing Enhancements

Baxter lastly challenges the procedural reasonableness of his twenty-year sentence.  He chiefly argues that the district court erred in enhancing his sentence (1) "for a 'pattern' of § 2251(a) violations where the images in question did not violate that statute"; (2) "for a duplicative vulnerable victim enhancement"; and (3) "for obstruction based on the mere fact that the jury rejected [his] testimony."

We review preserved sentencing challenges for abuse of discretion.  United States v. Iwuanyanwu, 69 F.4th 17, 21 (1st Cir. 2023).  Under this standard, we afford "clear error review of factual findings, de novo review of interpretations and applications of the [g]uidelines, and abuse of discretion review of judgment calls."  Id. (citation modified).

Where a defendant fails to object to an enhancement below, however, our review is for plain error.  United States v. Rivera, 51 F.4th 47, 51 (1st Cir. 2022).

### i. Pattern of Sexual Exploitation of a Minor Enhancement

Baxter asserts that the district court incorrectly applied a five-level enhancement under U.S.S.G. § 2G2.2(b)(5) for "engag[ing] in a pattern of activity involving the sexual abuse or

exploitation of a minor."  He argues that even if one subset of images could amount to "sexual exploitation of a minor" under § 2251(a), there were no additional instances that could amount to a pattern of such activity.

Before considering the merits of this argument, we consider whether Baxter properly preserved this challenge for appeal.  The government posits that Baxter objects to the enhancement on the grounds that his conduct was outside the scope of § 2251(a) for the first time on appeal and therefore his challenge is unpreserved.  We agree with the government's position.

The initial Pre-Sentence Investigation Report ("PSR") included a five-level enhancement pursuant to U.S.S.G. § 4B1.5, which covers "repeat and dangerous sex offender[s]" that "engage[] in a pattern of activity involving prohibited sexual conduct."  In his sentencing memorandum, Baxter argued that he did not engage in a "pattern of activity" under § 4B1.5 because the bathroom photographs, bedroom photographs, and bedroom videos "constitute[d] a single occasion," as they "were taken close in time and during a single on-going visit" from the minor.  Three days after he filed this memorandum, and two days prior to sentencing, the United States Probation Office ("Probation") issued a revised PSR, which added another five-level enhancement pursuant to § 2G2.2(b)(5) for "engag[ing] in a pattern of activity involving the sexual . . . exploitation of a minor."  Baxter did

- 34 -

not file an additional memorandum.   Thus, prior to sentencing, Baxter had objected to the § 4B1.5 enhancement but not to the § 2G2.2(b)(5) enhancement.

At sentencing, the district court ruled that although it was not clear whether § 4B1.5(b)(1) and § 2G2.2(b)(5) were "actually double counting or duplicative math," it was "close enough."   Accordingly, the district court only applied § 2G2.2(b)(5).   Baxter thereafter objected "to all the enhancements" imposed by the court.  On appeal, Baxter argues that this general objection, as well as his sentencing memorandum objection to § 4B1.5(b)(1), which is "virtually identical" to § 2G2.2(b)(5), United States v. Gaffney-Kessel, 772 F.3d 97, 101 (1st Cir. 2014), preserved his objection to § 2G2.2(b)(5).

This court has established that "[t]o preserve a claim of error for appellate review, an objection must be sufficiently specific to call the district court's attention to the asserted error."  United States v. Ramos-Carreras, 59 F.4th 1, 5 (1st Cir. 2023) (quoting United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017)).  Although Baxter filed a written objection to § 4B1.5(b)(1) and made a general objection to "any of the enhancements" imposed at sentencing, he never objected to the particular issue now set forth on appeal -- that any of the visual depictions are outside the scope of § 2251(a).  See United States v. Ahrendt, 560 F.3d 69, 76 (1st Cir. 2009) (even if "adopt[ing]

- 35 -

a generous stance in light of [defendant]'s pro se status at sentencing, his generic objections cannot be fairly interpreted as giving notice to the court of" specific issues raised for the first time on appeal).  We therefore find Baxter's particular argument forfeited and review for plain error.  See Ramos-Carreras, 59 F.4th at 5.

Nowhere in his briefing does Baxter argue that the district's court's application of the "pattern of activity" enhancement amounted to plain error under the applicable four-part test.  Accordingly, Baxter has waived this argument on appeal, and we need not discuss it further.  See United States v. De La Cruz, 91 F.4th 550, 551 n.1 (1st Cir. 2024); United States v. Donovan, 116 F.4th 1, 7 n.3 (1st Cir. 2024).

### ii. Vulnerable Victim Enhancement

Next, Baxter contends that the district court erred in applying the two-level "vulnerable victim" enhancement under U.S.S.G. § 3A1.1(b)(1) "based on the age of the victim [of the production offense] alone" (the "vulnerable victim enhancement").  He posits that the only factor the district court considered when it imposed the § 3A1.1(b)(1) enhancement, age, was already incorporated in the § 2G2.2(b)(2) offense guideline.  Therefore, he argues it was error for the district court to apply both § 3A1.1(b)(1) and § 2G2.2(b)(2).

- 36 -

In his sentencing memorandum, Baxter objected to a two-level enhancement under U.S.S.G. § 2G2.1(b)(5) recommended by Probation, which provides for an increase "[i]f the defendant was a parent, relative, or legal guardian of the minor." He essentially argued that his relationship with the minor was "not the type of relationship" contemplated by that provision. Later, Probation submitted a revised PSR that converted the § 2G2.1(b)(5) enhancement to a vulnerable victim enhancement under § 3A1.1(b)(1). At sentencing, Baxter stated that he was "objecting to all the enhancements that Probation ha[d] requested" and noted that some of the enhancements were added to the PSR only two days prior to the sentencing hearing. The district court immediately noted that the objection would be preserved. And, shortly after the district court noted that it was applying the vulnerable victim enhancement, Baxter asserted that he was objecting to "any of the enhancements that the court [found]." None of these assertions, however, included the argument now set forth on appeal, that the vulnerable victim enhancement could not be applied based on the minor's age alone. Because he failed to raise this specific objection below, he did not preserve the claim for appellate review. Thus, we apply plain error review again. See United States v. Monson, 72 F.4th 1, 14 (1st Cir. 2023).

The commentary to § 3A1.1(b) defines "vulnerable victim" as "a person [] who is a victim of the offense of conviction and

any conduct for which the defendant is accountable under § 1B1.3 . . . and [] who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1(b) cmt. n.2. A sentencing court cannot apply § 3A1.1(b) "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline. For example, if the offense guideline provides an enhancement for the age of the victim, this subsection [cannot] be applied unless the victim [is] unusually vulnerable for reasons unrelated to age." Id.

Here, the district court based its application of the § 3A1.1(b)(1) enhancement on the minor's age. The record does not show that the district court considered other factors when applying this enhancement. Later, the court applied the § 2G2.2(b)(2) enhancement because certain images involved prepubescent minors or minors that had not yet attained twelve years of age. We hold that even if the court improperly applied the vulnerable victim enhancement, any error was harmless. See Monson, 72 F.4th at 14 (holding that the district court's error in calculating the sentencing guidelines was harmless, in that it did not affect the sentence imposed).

To succeed on plain error review, Baxter must demonstrate a reasonable likelihood that, absent the district court's error, the sentence would have been more favorable to him.

- 38 -

Id. at 14.  No reasonable probability of prejudice exists when the record shows that "the district court thought the sentence it chose was appropriate irrespective of the [g]uidelines range" or where the court's explanation "make[s] it clear that the judge based the sentence he or she selected on factors independent of the [g]uidelines."  Id. (quoting Molina-Martinez v. United States, 578 U.S. 189, 200 (2016)) (first alteration in original).

When imposing Baxter's sentence, the district court considered the receipt and possession count together and then considered the production count separately.  The court explicitly applied a "guideline sentence" for the receipt and possession counts.  But when it considered the production count, the court stated: "Congress has said that the appropriate sentence for [the production count] is between [fifteen] and [thirty] years.  So my job was to figure out where in that range it was appropriate to sentence Mr. Baxter."  See 18 U.S.C. § 2251(e).  Accordingly, the district court described the factors that guided its sentencing determination as follows.  It first stated that Baxter's conduct did not fall "totally in the heartland of what [it] view[ed] a production charge to be, or put another way, what sort of production activities would warrant a [thirty]-year sentence."  Then, it considered his repetitive conduct and the "discrete period of time" in which it occurred.  It also noted that Baxter did not "pose" or "touch" the minor nor did he "traumatize[]" the minor at

the time the conduct occurred.  Lastly, the court stated that there was no effort from Baxter to distribute the images or profit from them.  Based on these factors, the sentencing judge imposed a sentence of twenty years for the production count.

It is clear from the sentencing transcript that the district court selected Baxter's sentence after considering numerous factors independent of the guidelines.  Monson, 72 F.4th at 14.  This leads us to conclude that the district court would have imposed the same sentence regardless of the application of the vulnerable victim enhancement and, therefore, any such error is harmless.  See id.

### iii. Obstruction of Justice Enhancement

Baxter contends that the district court erred when it imposed the two-level obstruction of justice enhancement for perjury under U.S.S.G. § 3C1.1.  He argues that the district court did not make the findings necessary to establish perjury and instead relied only on the jury's finding that his testimony was false.  Because Baxter objected to this enhancement below, we review the district court's interpretation and application of U.S.S.G. § 3C1.1 de novo and its findings of fact for clear error. See Iwuanyanwu, 69 F.4th at 21-22.

The obstruction of justice enhancement for perjury "should not be applied mechanically 'merely . . . because the jury rejects the defendant's explanation of the facts and finds him

guilty.'" United States v. Nagell, 911 F.3d 23, 30 (1st Cir. 2018) (quoting United States v. Gobbi, 471 F.3d 302, 314 (1st Cir. 2006)). Rather, the sentencing judge must make findings as to all the elements of perjury -- falsity, materiality, and willfulness. United States v. Mendoza-Maisonet, 962 F.3d 1, 21 (1st Cir. 2020). The sentencing court, however, need not address each of these elements separately. Id. "Rather, we examine whether a sentencing court's findings encompass all of the factual predicates for a finding of perjury." Id. (citation modified).

As to falsity, a sentencing judge need not find directly contradictory testimony. Id. at 21. "[A] solid foundation of circumstantial evidence" may suffice. Id. (quoting Nagell, 911 F.3d at 30). A finding of materiality, which refers to "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination," id. (quoting U.S.S.G. § 3C1.1 cmt. n.6), may be inferred from the record and the issues under consideration at trial, id. at 21. Lastly, the willfulness of a false statement "can be inferred from sufficient materiality." Id.

Here, the district judge did not identify which of Baxter's statements were perjurious. The PSR, however, included various statements that supported this finding. For example, Baxter denied having ever seen the images and videos of child pornography found on the SSD and having ever heard about or used

- 41 -

Freenet.  As discussed above, this testimony was contradicted by the evidence presented at trial.  S.A. Montoya, for instance, testified that Freenet was an installed application on the SSD's Backup account.  Detective Kajita testified that the email associated with the Backup account matched the Apple ID on Baxter's iPhone.  Both S.A. Montoya and Detective Kajita testified that the Backup account contained videos downloaded from Freenet.  Further, both Baxter and his wife testified that Baxter alone used the SSD.

Granted, the district court should have made a finding encompassing all factual predicates necessary for perjury. Mendoza-Maisonet, 962 F.3d at 22.  Nonetheless, a review of the record supports the district court's decision to apply the enhancement.  The court could have afforded greater weight to S.A. Montoya's and Detective Kajita's testimonies than to Baxter's account.  Id. at 21 (holding that reviewing courts must afford sentencing judges "reasonable latitude for credibility assessments" (quoting Nagell, 911 F.3d at 30)).  As such, it could have found Baxter's testimony to be perjurious.  Accordingly, we conclude that any such error was harmless and does not warrant vacating and remanding the sentence.  See United States v. Shehadeh, 127 F.4th 1058, 1065-66 (7th Cir. 2025) (concluding that the district judge's error in failing to make explicit findings as to each element of perjury was harmless because the evidence presented at trial supported the conclusion that the defendant

lied on the stand); United States v. Chychula, 757 F.3d 615, 620-21 (7th Cir. 2014) (determining that the district judge's failure to identify which of the defendant's statements were perjurious was harmless error, as "the record [was] clear that the defendant willfully lied about material matters while testifying").

### III. CONCLUSION

For the foregoing reasons, we **affirm** Baxter's conviction and sentence.